## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 19-2514-JAR-KGG<br>) |
| CATHY PARKES, | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM & ORDER ON
## PLAINTIFF'S MOTION TO COMPEL

Now before the Court is the Motion to Compel Insurance-Related Documents (Doc. 160) filed by Plaintiff Assessment Technologies Institute ("Plaintiff" or "ATI"). Having reviewed the submissions of the parties, Plaintiffs' motion is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

**A.  General Background.**

Plaintiff ATI produces copyright protected educational resources and assessment materials used by nursing schools throughout the United States. It is uncontested in this case that "[n]ursing schools license ATI's proprietary educational content to use in their nursing program curriculum and also use ATI's

1

proprietary tests to evaluate their students' understanding of information and skills that are essential in the nursing profession." (Doc. 1, at 1; Doc. 24, at 1.)

Defendant Cathy Parkes ("Defendant") is the Chief Content Officer of Chief Digital Advisors, LLC ("CDA"). Her husband, Bill Parkes ("Mr. Parkes") is the CEO of CDA. Defendant, who graduated nursing school, contends she "decided to help nursing students master [Plaintiff's] material, first with in-person tutoring sessions, then with free videos, followed by flash cards for purchase." (Doc. 24, at 2.) Plaintiff, on the other hand, alleges that Defendant "has built a business copying [Plaintiff's] copyrighted works and providing students with answers to [Plaintiff's] proprietary tests." (Doc. 1, at 2.) Plaintiff continues that Defendant "is improperly making unauthorized use of [Plaintiff's] copyrighted exams and review materials to teach students enough of the answers on the [Plaintiff] exams so that students will score well and trick their nursing schools into believing that they have the requisite knowledge to graduate and sit for" the National Council Licensure Examination. (*Id*., at 2.) Plaintiff brings claims for breach of its terms and conditions, copyright infringement, violation of the Kansas Uniform Trade Secrets Act, violation of the Defend Trade Secrets Act, and unfair competition.

The District Court previously granted in part Plaintiff's request for a preliminary injunction, wherein Plaintiff asked the Court to enjoin Defendant "from continuing to sell nursing-education study cards and placing nursing-

education videos on YouTube or elsewhere that infringe on [Plaintiff's] copyrights and/or misappropriate [its] trade secrets in breach of its contracts with [Defendant]." (Doc. 59, sealed, at 1.) Plaintiff also sought for Defendant to "be ordered to remove certain nursing-education videos from YouTube." (*Id*.)

**B.  Facts Relevant to Present Motion.**

Defendant contacted both Hartford and Hanover to make a claim for insurance to defend this case. (Doc. 161, at 7.) Hartford denied coverage, but Hanover provided defense counsel for Defendant in this litigation under a reservation of rights while filing a declaratory judgment action in the Southern District of California to determine whether it has insurance obligations to Defendant for this litigation. (*Id*., at 7-8.)

The attorney hired by Hanover is Steven H. Schwartz. (Doc. 168-3, at 1.) Schwartz represents Defendant Cathy Parkes, her husband, and CDA with respect to their interests in this lawsuit pursuant to his firm's agreements with Hanover. (*Id.*, at ¶ 10.) Thus, Defendant contends Schwartz owes fiduciary duties to Hanover, CDA, Defendant Cathy Parkes, and her husband. (*Id*.) Schwartz contends he

> has a duty to keep all those parties apprised of
> developments in this case and to provide his independent
> evaluation of the case. Hanover, CDA, Mr. and Mrs.
> Parkes[,] and [Schwartz] all reasonably anticipate that
> [their] communications will be privileged.

3

(*Id.*)

In the present motion, Plaintiff seeks an order compelling Defendant "to produce her communications with insurance companies relating to this litigation," specifically Hartford Financial Services and Hanover Insurance. (Doc. 161, at 1.) It is undisputed that Defendant contacted both Hartford and Hanover to make a claim for insurance to defend this case.[1] (*Id.*, at 7.) According to Plaintiff, the communications with the insurance companies "are responsive at least to ATI's RFP No. 14 ("ALL COMMUNICATIONS between YOU and ANY PERSON RELATING TO ATI.") and No. 21 ("ALL DOCUMENTS supporting or refuting any of YOUR Affirmative Defenses as set forth in YOUR Answer to ATI's Complaint."). (*Id.*, at 1, n.1 (citing Doc. 162-2, at 5-6, 8); *see also* at 9, 13.)

Defendant objected to Request No. 14 as overly broad, unduly burdensome, without temporal limitation, seeking irrelevant information, and not proportionate to the needs of the case. (Doc. 162-2, at 5.) According to Defendant, Request No. 14 includes "all customer contacts mentioning ATI, including all such postings on Defendant's social media sites." (*Id*, at 5-6.) Defendant indicated that it was withholding documents pursuant to these objections. (*Id.*) "Without waiving"

---

[1] Hartford denied coverage, but Hanover provided defense counsel for Defendant in this litigation under a reservation of rights while filing a declaratory judgment action in the Southern District of California to determine whether it has insurance obligations to Defendant for this litigation. (Doc. 161, at 7-8.)

4

these objections, Defendant referred Plaintiff to "the comments and reviews on the following websites:  youtube.com/leveluprn; Instagram.com/leveluprn; Facebook.com/leveluprn; leveluprn.com/pages/testimonials."  (*Id*., at 6.)

Defendant objected to Request No. 21 as overly broad, without temporal limitation, and as failing to ""describe with reasonable particularity the item or category of items to be inspected."  (*Id*., at 8.)  Defendant indicated that it was withholding documents pursuant to these objections.  (*Id*.)

As a result of Plaintiff's motion, Defendant contends that CDA "has now produced all its communications with Hartford relating to [Plaintiff], and all its communications with Hanover related to [Plaintiff] that did not involve counsel, except for five documents identified in a privilege log … ."  (Doc. 168, at 2.)  Defendant argues that Plaintiff's motion "is now moot as to all documents except for the documents on the privilege log and communications involving counsel."[2]  (*Id*.)  Defendant continues that

> the documents listed on the privilege log are
> protected by the work product and attorney client
> privileges.  The documents include a chronology of
> events prepared by [Defendant's husband] for his lawyer
> and forwarded to Stephen Colville, the Hanover adjuster
> supervising this case.  The documents also include fee
> bills from Parkes' lawyer that disclose attorney-client

---

[2] Defendant does not include communications with counsel on the privilege log "because they were all created after the lawsuit was filed and this Court's order provided that we did not need to list those documents on a privilege log."  (Doc. 168, at 2 (citing Doc. No. 83, at ¶ 2(g)(iv)).)

5

> communications and work product information which is
> irrelevant to this case.  The privileges were not waived by
> forwarding the documents to Hanover because Hanover
> and Parkes/CDA have a common interest and are in a
> joint defense relationship.

(*Id.*, at 2-3.)

Based on the language in Plaintiff's reply brief, the issues presented in the underlying motion have been significantly narrowed.  Plaintiff indicates that as a result of "the production that Defendant made after [Plaintiff] filed this motion, there are at least two more documents that Defendant is still wrongfully withholding and that she should be required to produce."  These documents at issue are 1) a February 24, 2020, email and 2) a March 2, 2020, email – both of which were from Defendant's husband to Stephen Colville at Hanover and both of which were included in Defendant's privilege log.  (*Id.*, at 4-5; Doc. 168-1.)

## ANALYSIS

**I.      Standards for Discovery.**

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this

> scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face. ***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000). Relevance is to be "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D. Kan. 1991). It is well established that the "party objecting to discovery on grounds of privilege has the burden to establish the privilege." ***Berroth v. Kansas Farm Bureau Mut. Ins. Co.***, 205 F.R.D. 586, 589 (D. Kan. 2002) (citing ***Motley v. Marathon Oil Co.***, 71 F.3d 1547, 1550 (10th Cir. 1995)). Within this legal framework, the Court will address the February 24, 2020, and March 2, 2020, emails sent by Defendant's husband to Stephen Colville at Hanover.

## II. February 24, 2020, Email.

According to Defendant, this document "consist[s] of a February 24, 2020[,] email Mr. Parkes sent to Mr. Colville at Hanover seeking reimbursement of two attached invoices" from defense counsel. (Doc. 168, at 16.) Plaintiff has indicated

it does not seek the invoices, merely the email. (Doc. 176, at 5.) Plaintiff contends that the actual email forwarding the invoices is discoverable, however, because "there are no lawyers involved, and Defendant has not established that either Mr. Parkes or Mr. Colville was acting at the direction of counsel." (*Id*.)

Defendant's response brief only discusses how privilege arguably attaches to the legal invoices sent with the February email, and does not address the email itself. (*See* Doc. 168, at 16.)

> The attorneys' invoices showing the attorney's billed work and time are irrelevant to the claims and defenses of the instant case. The invoices contain privileged communications and work product information about the defense of the case. The privileges were not waived by forwarding the information to Hanover to seek reimbursement based on the common interest and joint defense privileges discussed above, and because Hanover is an agent of CDA and Parkes.

(*Id*.) There is no indication that the email between these two non-lawyers includes information shielded by the attorney-client privilege or work product doctrine. Defendant has failed to address – let alone meet – her burden of establishing the privilege in regard to the February 24, 2020, email. ***Berroth***, 205 F.R.D. at 589 (D. Kan. 2002). As such, this portion of Plaintiff's motion is **GRANTED**.

### III. March 2, 2020, Email.

Defendant's discussion of the March email in the response brief is substantively different. Defendant indicates that this email, also from Mr. Parkes

to Stephen Colville at Hanover, "discussed payment of MTO's invoices and strategy for how to defend the case moving forward." (Doc. 168, at 17.) Defendant contends that the email is both irrelevant and protected by the work product doctrine. (*Id.*) According to Defendant, this email "qualifies as work product because it was prepared by a representative of a party (by Bill Parkes on behalf of Cathy Parkes) specifically for ongoing litigation" and "contains references to legal bills and litigation strategy." (*Id.*) Defendant argues that it did not waive work product protection because the email "was disclosed to an agent of CDA and Parkes who had a common interest in defending the lawsuit and who was not an adversary." (*Id.*)

Plaintiff, on the other hand, contends that the information is not protected by the work product doctrine because "[n]either Mr. Parkes nor Mr. Colville is an attorney, and Defendant has not established that either individual was acting at the direction of counsel when communicating with each other[.]" (Doc. 176, at 4-5 (citing *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)).) The Court finds, however, that it is reasonable to infer that Mr. Parkes was acting at the direction of counsel when forwarding legal invoices to the insurer for payment of said invoices. Given Defendant's indication that the email contains counsel's legal defense strategy, the Court finds the document to be protected from disclosure by the work product doctrine. Further, Plaintiff has not

9

established how the document is relevant to the claims and defenses in the case. As such, this portion of Plaintiff's motion is **DENIED**.

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 160) is **GRANTED in part** and **DENIED in part**.

      IT IS SO ORDERED.

      Dated this 13th day of January, 2020, at Wichita, Kansas.

                              s/ KENNETH G. GALE
                              HON. KENNETH G. GALE
                              U.S. MAGISTRATE JUDGE