## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 19-2514-JAR-KGG ) |
| CATHY PARKES, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

NOW BEFORE THE COURT are the following motions asserting various issues relating to discovery and the Pretrial Order:

1.  Plaintiff's "Motion for Entry of Protective Order Re: Defendant's Rule 30(b)(6) Deposition Notice" (Doc. 220);

2.  Defendant's "Motion to Strike Portions of Second Supplemental Answers" (Doc. 229);

3.  Defendant's "Motion to Compel Discovery and Request for Expenses" (Doc. 238);

4.  Plaintiff's "Motion for Leave to Amend to Add Additional Opinions to Expert Report" (Doc. 252); and

5.  Plaintiff's "Motion to Amend the Pretrial Order" (Doc. 258).

After review of the parties' submissions, Plaintiff's Motions for Protective Order (Doc. 220), Motion for Leave to Amend Expert Report (Doc. 252), and Motion to Amend (Doc. 258) are **GRANTED**.  Defendant's Motion to Compel (Doc. 238) is **GRANTED in part** and **DENIED in part** as provided herein.  Defendant's Motion to Strike (Doc. 229) is **DENIED as moot**.

## BACKGROUND

Plaintiff ATI produces copyright protected educational resources and assessment materials used by nursing schools in their nursing program curriculum. The schools also use Plaintiff's tests to evaluate their students' understanding of nursing information and skills.  Plaintiff has brought the present action against Defendant Cathy Parkes, alleging she unlawfully used information she gained from participating in ATI's educational resources in building up her own business. Plaintiff asserts claims under both federal (for copyright infringement and violation of the Defend Trade Secrets Act) and Kansas law (for breach of contract, violation of the Kansas Uniform Trade Secrets Act, and unfair competition).

Defendant Parkes is the Chief Content Officer of Chief Digital Advisors, LLC ("CDA").  Her husband, Bill Parkes, is the CEO of CDA.  Defendant, who graduated nursing school, contends she "decided to help nursing students master the material, first with in-person tutoring sessions, then with free videos, followed by flash cards for purchase." (Doc. 24, at 2.)  Plaintiff, on the other hand, alleges

that Defendant "has built a business copying ATI's copyrighted works and providing students with answers to ATI's proprietary tests." (Doc. 1, at 2.) Plaintiff continues that Defendant "is improperly making unauthorized use of ATI's copyrighted exams and review materials to teach students enough of the answers on the ATI exams so that students will score well and trick their nursing schools into believing that they have the requisite knowledge to graduate and sit for" the National Council Licensure Examination. (*Id.*, at 2.)

To date, the parties have engaged in very extensive discovery. For instance, Plaintiff has responded to 60 separate document requests, 20 interrogatories, and 270 requests for admission. (Doc. 225, at 4.) Further, seven of Plaintiff's employees have already been deposed by Defendant. (*Id.*, at 4-5.) The discovery deadline expired in this case on January 29, 2021. (Doc. 82-1, at 3.)

On February 19, 2021, the court entered the Pretrial Order (Doc. 234) detailing the specific matters in dispute in the action. Five motions are currently pending before the undersigned Magistrate Judge asserting various issues relating to discovery and the Pretrial Order. The Court will address the motions in the order they were filed.

**1. Plaintiff's Motion for Protective Order (Doc. 220).**

On January 20, 2021, nine days before the close of discovery, Defendant served a Rule 30(b)(6) deposition notice (Doc. 208) on Plaintiff ATI. Plaintiff then

moved for a protective order to avoid discovery as to ten of the topics identified in

the notice.  Specifically, Plaintiff has challenged the following topics in the notice:

     5.    The number of people employed by ATI in 2018, and in 2019.

     6.    The number of people employed by Ascend Learning, LLC that provided services to ATI in 2018, and in 2019.

     7.    An explanation of how and when an employee of ATI could access a student's login credentials to login to the ATI's site.

     8.    The security protocols and practices that ensure that all student private information is securely managed and cannot be altered by any employee of ATI or Ascend Learning.

     10.    The names, addresses and phone numbers of all students who took the RN Comprehensive Predictor proctored exams in October, November and December of 2015 at California State University San Marcos School of Nursing; and for each student, each date they took the exam and the score they obtained on each exam, and the form that was used for each exam.

     12.    The total number, and percentage, of people who obtained an adjusted percentage score of 90 or better on the RN Comprehensive Predictor proctored exam between January 1, 2010 and January 1, 2020, and the statistical distribution of those scores between 90 and 100.

     13.    The name, address and telephone number of each person who saw a test item on an ATI proctored exam that they previously heard about by watching a video posted by Cathy Parkes.

17.    An explanation of the reason that Cathy Parkes received the attached email on December 22, 2020.

19.    An explanation of why the spreadsheet with Bates No. ATI012427 shows that someone logged into ATI's secured portal with Cathy Parkes' credentials on August 19, 2019, after Cathy Parkes' access was disabled.

21.    An explanation of whether Cathy Parkes had to agree to any terms and conditions on ATI's website in order to get paperback copies of the ATI modules.

(Doc. 222-2, at 5-11.)

Plaintiff objected to Topics 5-8, 17, 19 and 21 as irrelevant.  It also objected that Topics 5-8 are overly broad, unduly burdensome, and oppressive, that Topic 10 seeks information it is prohibited from disclosing pursuant to the Family Educational Rights and Privacy Act (FERPA), that Topic 12 is not temporally limited, that Topic 13 sought information outside its control, and that Topics 17 and 19 seek information protected by privilege.  More generally, Plaintiff argues that a protective order is appropriate because the topics are inconsistent with the purpose of a 30(b)(6) deposition, and that other discovery methods were more appropriate.

Protective Orders are governed by Fed.R.Civ.P. 26(c), "which confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  ***Layne Christensen Co. v. Purolite Co.***,

271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984)).  *See also Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995);

*Terry v. Unified Gov't of Wyandotte Co.*, No. 09-2094-EFM-KGG, 2011 WL

795816 (D. Kan. March 1, 2011).  Rule 26(c)(1) provides, in relevant part:

> A party or any person from whom discovery is sought
> may move for a protective order in the court where the
> action is pending … . The motion must include a
> certification that the movant has in good faith conferred
> or attempted to confer with other affected parties in an
> effort to resolve the dispute without court action. The
> court may, for good cause, issue an order to protect a
> party or person from annoyance, embarrassment,
> oppression, or undue burden or expense, including one or
> more of the following:
>
> > (A)   forbidding the disclosure or discovery;
> >
> > (B)   specifying terms, including time and place,
> > for the disclosure or discovery;
> > …
> >
> > (D)   forbidding inquiry into certain matters, or
> > limiting the scope of disclosure or discovery
> > to certain matters….

The court finds that the notice is not inconsistent with the purpose of a Rule

30(b)(6) deposition.  In a Rule 30(b)(6) deposition, there is no distinction between

the corporate representative and the corporation.

> 'The Rule 30(b)(6) designee does not give his personal
> opinion.  Rather, he presents the corporation's 'position'
> on the topic.'  The designee testifies on behalf of the
> corporation and thus holds it accountable.

***Sprint Comm'ns Co., L.P. v. Theglobe.com, Inc.***, 236 F.R.D. 524, (D. Kan. 2006) (citations omitted).

Plaintiff argues that in many respects Defendant "not only knows who those individuals are but in fact has deposed them as well." (Doc. 225, sealed, at 10.) Of course, that some of the information sought in the Rule 30(b)(6) notice was also sought (or could have been sought) in earlier discovery does not *automatically* justify a protective order.

> Parties may choose the manner and method in which they conduct discovery. The Federal Rules provide several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices.

***McCloud v. Board of Geary County Comm'rs***, No. 06-1002-MLB, 2008 WL 3502436, at *2 (D.Kan. Aug. 11, 2008) (citing ***Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.***, No. 9402395–GTV, 1995 WL 625962, at *5 (D.Kan. Oct. 5, 1995)). "[T]he various methods of discovery … are clearly intended to be cumulative, as opposed to alternative or mutually exclusive." ***Starlight Intern. Inc. v. Herlihy***, 186 F.R.D. 626, 641 (*quoting* ***Richlin v. Sigma Design W., Ltd.***, 88 F.R.D. 634, 637 (E.D.Ca.1980)).

"That a particular deponent may furnish some information that will answer a particular interrogatory, moreover, by no means assures that the information as furnished constitutes a complete answer." *Id.* (citing ***Sendi v. Prudential–Bache***

*Sec.*, 100 F.R.D. 21, 23 (D.D.C.1983)).  Nonetheless, the Court can and should consider the extent of prior discovery in addressing an eleventh hour Rule 30(b)(6) notice seeking broad and extensive discovery, as well as the general timeliness of the notice.  *See **Funk v. Pinnacle Health Facilities XXXII, LP***, No. 17-1099-JTM-KGG, 2019 WL 280950, at *3 (D. Kan. Jan. 22, 2019), *on reconsideration in part*, No. 17-1099-JTM-KGG, 2019 WL 858718 (D. Kan. Feb. 22, 2019) (considering timing of notice).

Topics 5 and 6, seeking information about the number of employees, are potentially relevant to the argument that Plaintiff's Test Security Department was understaffed and lacked resources to effectively check on Defendant's actions or otherwise protect Plaintiff's confidential information.  However, Plaintiff raised the subject of a Rule 30(b)(6) deposition in communications with Defendant in October 2020, before the deposition of fact witnesses.  Rather than accepting the offer, Defendant undertook extensive fact discovery of ATI's witnesses, and waited to file its Rule 30(b)(6) notice mere weeks before the close of discovery. The number of employees was addressed during the intervening period.

Defendant submitted written discovery on the same subjects, and in the deposition of ATI's Dr. Jerry Gorham, specifically asked about Plaintiff's employees.  Gorham testified under oath that ATI had "[s]everal hundred" employees.  Dr. Gorham also provided testimony on ATI's test security team.

Plaintiff disavows any argument that its security team was understaffed. (Doc. 275, at 6.)  Considering all the circumstances of the case, including the lack of direct relevance to any issue in the case, the extent of prior discovery, and the timing of the Rule 30(b)(6) notice, the Court **GRANTS** the motion for protective order as to Topics 5 and 6.

Topic 7 and 8 all seek extensive information relating to persons accessing ATI materials on its website, and the security associated with those materials.  The information is apparently sought in relation to whether and when Defendant accessed the ATI internet portal after her graduation from CSUSM in December 2015, and in particular, the question of who accessed Defendant's ATI account on August 19, 2020.  That information, however, has no substantial relevance to the issues remaining in the action.  Defendant herself acknowledged in her deposition that, using the ATI website, she "took about two dozen practice exams" after nursing school.  Rather than denying such access in her response to Requests for Admission, Defendant stated only that she "cannot recall if she accessed the portal in August 2019."  (Doc. 222-5, at 3.)  In addition, and unchallenged by Defendant, records reveal two logins to her account on April 8, 2019.

Moreover, the information bears no substantial relevance to the claims in the action, which do not asset any claim for unauthorized access to Plaintiff's website, and no claim at all for conduct after March 2019.  Rather, Plaintiff's claims are

grounded on Defendant's use of information derived from her access before that time.  Defendant's receipt of an account password change notice in December 2020 has no relevance at all to the issues remaining in the case. Given the lack of any showing of actual or potential relevance to the issues in the case, the Court **GRANTS** the motion for protective order as to topics 7 and 8.

Topic 10 asks for the identity of "all students who took the RN Comprehensive Predictor proctored exams in October, November and December of 2015 at California State University San Marcos School of Nursing," including the date of the exam, score achieved, and form used for each exam.   In her response brief, Defendant states she no longer seeks information regarding the identity of the particular students who took the test and merely seeks "the date, score and form" of the test on those dates at that location.   (Doc. 270, at 10.) Topic 12 asks for the number of students who scored 90 or better on the RN Comprehensive Predictor proctored exam for the last ten years.

Plaintiff argues that the identity of other students who took the exams and how they scored is irrelevant to the specific claims advanced in the case, that Defendant previously sought this information through other discovery methods, and that the time period sought is overbroad.  Defendant argues that the information relates to students she tutored, and contends that Plaintiff conducted substantial discovery on the issue, seeking the names of tutored students and

deposing one.  She argues that the form of the exam is relevant to show that these students all had the same information about what was on the exams, and Defendant was not simply telling people what would be on the exams.

The information sought in Topics 10 and 12 is also included in Defendant's motion to compel discovery responses.  Defendant sought the same information in Interrogatory Nos. 18 and 19, and Request for Production Nos. 58 and 59.  (Doc. 239-1, at 2-3; Doc. 239-2, at 5.)  As discussed below, the Court finds the information is potentially relevant, and grants Defendant's motion to compel discovery responses on these subjects.  Given the requirement that Plaintiff respond in writing to Defendant's discovery requests, the demand for a Rule 30(b)(6) deposition addressing the same issues is superfluous.  The Rule 30(b)(6) deposition on the topics would not serve any constructive purpose, and the motion for protective order is **GRANTED** as to Topics 10 and 12.

Topic 13 asks for the name, address and telephone number of any person who saw an item on an ATI proctored exam that they had seen in one of the Defendant's videos.  Plaintiff argues that it has no idea who watched Defendant's videos, and that in any event disclosing any personally identifiable information about the examinees would violate FERPA.  (Doc. 225, sealed, at 17.)

The court will **GRANT** the motion for protective order as to Topic 13. Again, the matter was explicitly addressed in prior discovery, as Defendant has

acknowledged in its response to the motion for protective order. (Doc. 267-1, at 13 n. 1.) Specifically, Defendant submitted an interrogatory on the issue, and Plaintiff timely responded. As noted earlier, while discovery is intended to be cumulative, in weighing the need for a Rule 30(b)(6) deposition, the Court may appropriately consider the extent of prior discovery and the timing of the Rule 30(b)(6) deposition. If Defendant was dissatisfied with the response to its interrogatory, it could have submitted a timely motion to compel a further response. The last minute Rule 30(b)(6) deposition notice must be considered in context of the entire case, and the court finds that the discovery will not substantially advance the resolution of the action.

The Court will also **GRANT** the Motion for Protective Order as to Topics 17 and 19. Topic 17 asks for the reason Defendant received an email in December 2020 indicating a change to her ATI password. The email was sent well after the present litigation began, and there is no discernable relevance to the issue.

Topic 19 asks for an explanation of how "someone" accessed her ATI account on August 19, 2019, "after [her] access was disabled." But focusing on access to Defendant's account in April of 2019 is not relevant to any of Plaintiff's claims, which are focused on Defendant's activity before that date. Moreover, to the extent Topic 19 seeks to discover how, after Defendant's access was "disabled," someone *else* logged into Defendant's account on April 19, 2019, it

seeks create a mystery where one does not exist.  Defendant has never denied that she was the person accessing the account on that date, has never shown any "disabling" of the account in February 2019, and Defendant has never challenged that she was responsible for other logins into the account in April 2019.  The Court **GRANTS** the Motion for Protective Order as to Topics 17 and 19.

With Topic 21, Defendant asks for an "explanation of whether [she] had to agree to any terms and conditions on ATI's website in order to get paperback copies of the ATI modules."  (Doc. 222-2, at 11.)  Plaintiff objects to Topic 21 on the grounds that it seeks irrelevant information, since Defendant "has admitted that she accepted ATI's terms and condition in 2013 when she was a student at CSUSM, and does not dispute that she accepted ATI's updated terms and conditions on multiple occasions after she graduated from CSUSM."  (*Id.*) Plaintiff also asserts that the information is irrelevant because Defendant "has not raised unconscionability as an affirmative defense in her First Amended Answer. See Doc. No. 96-1."  (*Id.*)

Finally, Defendant also complains that the deposition topic is duplicative of a prior interrogatory.  That interrogatory asked Plaintiff to

> identify each and every contract, and each and every contract term that you claim Parkes breached, specify the manner in which you claim she breached the contract by identifying specific portions of documents and/or videos by specifying the study card and the location of the offending material in each video, identify the documents

> and ESI, that support your contention and identify the
> name address and telephone number of the people who
> have information about the facts that support your
> allegation.

(Doc. 226-3, sealed, at 33-34.)  Although there may be some overlap between these

topics, they are not identical, and Defendant is not prohibited from using multiple

types of discovery relating to the same categories of information.  *See **Starlight***

***Intern. Inc.***, 186 F.R.D. at 641 (citation omitted).

Nevertheless, the Court is unable to discern how the information is relevant

in light to the independent statement by Defendant that she did in fact give her

repeated agreement to ATI's terms and conditions.  Accordingly, the Motion for

Protective Order is **GRANTED** as to Topic 21.

**2.      Defendant's Motion to Strike (Doc. 229).**

Defendant moves to strike Plaintiff's Second Supplemental Answers to Nos.

5, 7, and 8 of Defendant's First Set of Interrogatories.  (Doc. 229.)  Defendant

contends the supplemental responses "seek to add new claims of copyright

infringement and trade secret misappropriation into the case that were not pled in

the Complaint" and that Plaintiff "waited until the last day of discovery to

supplement discovery based on facts that [it] knew when it filed this lawsuit over a

year ago."  (Doc. 235, sealed, at 1.)

The supplementation of discovery responses is governed by Fed.R.Civ.P.

26(e).  That rule states, in relevant part, that

> [a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>
>> (B) as ordered by the court.

*Id*.

Defendant's motion generally argues that the interrogatories seek to advance claims not presently in the action. As an initial matter, a response to an interrogatory is just that – a response to a question. Answering an interrogatory does not create a new cause of action. The motion is, however, the mirror image of another motion before the court, Plaintiff's Motion to Amend (Doc. 258), which seeks to add just these claims. As discussed below, the court finds amendment is warranted, and thus the motion to strike is **DENIED as moot**.

## 3.    Defendant's Motion to Compel (Doc. 238).

Defendant moves to compel Plaintiff to provide supplemental responses to Requests for Production 57-59 and Interrogatories Nos. 18 and 19. (Doc. 238.) Request Number 57 asks for documents "produced from [Plaintiff's] financial management program sufficient to show each expenditure by [it] to create each …

proctored exam for each year from 2010 to the present, shown by expenditure item and by year." (Doc. 239-2, at 4.) Plaintiff objected that the request was irrelevant, and that it had already produced a spreadsheet identifying internal and external costs incurred in creating, developing, and updating the ATI Proctored Exams from 2013 to the present. (*Id*., at 5.) Defendant argues that the spreadsheet lacked detail and "was prepared solely for purposes of this litigation and is not a report produced from [Plaintiff's] financial management program" and (2) "does not provide any detail for how the money was spent." (Doc. 239, at 6.)

Defendant contends the information sought is relevant because Plaintiff alleged in the Complaint that "it spent substantial resources to create its proctored exams that it claims are trade secrets." (Doc. 239, at 7; Doc. 1, at ¶ 100.) Also, during his deposition, Ascend Learning's Chief Product Officer Mark Williams-Abrams testified that "he could not verify the numbers on [a version of] the spreadsheet without seeing the underlying information that went into preparing the spreadsheet and he agreed that the underlying information exists." (*Id*; *see also* Doc. 240-3, at 5-7.)

Williams-Abrams was the person giving the declaration regarding the expenditures to create the proctored exams in support of Plaintiff's motion for preliminary injunction. (Doc. 14-11, sealed.) Defendant argues that it is unfair for Plaintiff to refuse to provide additional information supporting the spreadsheet

when "the person that ATI put forward at the preliminary injunction stage to testify about its expenditures for proctored exams could not verify the expenditures on the spreadsheet produced by ATI without seeing the underlying information." (Doc. 239, at 8.)

Plaintiff contends that this request is untimely because Defendant did not move to compel a supplemental response after Plaintiff answered a similar request Defendant served in February 2020. (Doc. 265, at 6-7.) While the requests are similar (*id*., at 7), they are not identical. Request No. 57 is not improper in itself, or untimely based on the prior request.

However, the Court agrees that the inquiry as written seeks irrelevant and unduly burdensome information. As set out earlier, Plaintiff may be expected to reasonably provide information as to the number of its employees or its general attempts at maintaining the security of its exam trade secrets. But the motion to compel appears to go beyond this and demand line-by-line expenditures as to various security precautions. This evidence is superfluous in light of the extensive evidence supplied by Defendant about the creation and maintenance of the exams. The Court thus **DENIES** the motion to compel as to Request No. 57.

Interrogatories Nos. 18-19 and Requests for Production 58-59 asked for information and documents identifying (by name, addresses and telephone number) the students who took the RN Comprehensive Predictor proctored exams

in October, November and December of 2015 at CSUSM and the scores received, as well as the scores of persons taking the RN Comprehensive Predictor proctored exam between January 1, 2010 and January 1, 2020.  Plaintiff objected that this information is irrelevant and that it was prohibited by federal law (FERPA) from producing.

Defendant agreed that Plaintiff need not provide information for specific students because of the potential legal prohibition on disclosure.  (Doc. 239, at 8.) Defendant anticipates that Plaintiff will contend Defendant took the exams multiple times in order to memorize the tests and disclose proprietary information about them.  Defendant contends this information is relevant to show that many students took the exam multiple times and that each student took the same exam, thus she had no more inside information about the tests than the other students. (*Id*., at 9.)

Plaintiff counters that it has never taken this position, other than a witness response to a specific inquiry by Defendant.  (Doc. 265, at 9.)  Plaintiff continues that "[t]he number of times that other students in Defendant's nursing school class took the ATI Proctored Exams has no bearing on whether Defendant misappropriated [Plaintiff's] trade secrets."  (*Id*.)

As noted earlier, the Court finds that information about student performance is at least potentially relevant to whether Defendant could have created an effective

training system based on her own skills, without dependence on misappropriated information.  Plaintiff argues that "Defendant's qualifications (or lack thereof) are irrelevant to whether she copied ATI's Review Modules to create her infringing Study Cards and Videos" and that her "ability to test well … says nothing about her qualifications to be a nurse *educator*."  (Doc. 265, at 10) (emphasis in original). This, however, is a simply a conclusion, one which may or may not be persuasive to the ultimate trier of fact.  The Court **GRANTS** the motion to compel as to these topics.

Defendant's motion also includes a request for expenses relating to brining the motion to compel.  (Doc. 239, at 11.)  Because Plaintiff's position was justified as to Interrogatory 57, and at least substantially justified as to the remainder of its arguments, its objections were reasonable and the request for expenses is **DENIED**.

## 4.    Plaintiff's Motion for Leave to Add Additional Opinions to Expert Report (Doc. 252).

Plaintiff moves to grant leave to supplement the Second Supplemental Report of its damages expert, Tracy Coenen, to include opinions on Defendant's disgorgement of profits from the sale of non-infringing products.  (Doc. 252.) Defendant opposes the motion.  (Doc. 274).

The district court has wide discretion in its regulation of pretrial matters." *Si-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990).  Federal Rule of

Civil Procedure 26(a)(2)(B)(i) requires the disclosure of an expert report, which "must contain ... a complete statement of all opinions the witness will express and the basis and reasons for them." Disclosure is required "to allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002) (internal quotation marks and citation omitted).

Under Rule 26(a)(2)(E) and 26(e), a party must supplement an expert report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." Supplemental information must be disclosed within 30 days of another party's disclosure. Fed.R.Civ.P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

In determining whether a late supplement is the product of excusable neglect, courts will look to (1) prejudice to the non-moving party; (2) the length and effect of any delay on the proceedings; (3) the reasons for the delay and whether it was within the control of the moving party; and (4) whether the moving

party acted in good faith.  ***Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.***
***P'ship***, 507 U.S. 380 (1993).

Plaintiff timely submitted Coenen's original report on November 2, 2020,
and supplemented it on December 21, 2020.  Coenen wrote that, because
Defendant had built her Level Up RN business based on her wrongful use of
Plaintiff's copyrights and trade secrets, Plaintiff should also be entitled to
disgorgement of Defendant's profits based on sales of non-infringing study card
decks and YouTube videos.

Defendant served the rebuttal report of her expert James Harrington on
January 11, 2021.  Herrington wrote that "Ms. Coenen's disgorgement claim of
future profits is speculative as it is not supported by sufficient facts and data and,
as such, cannot be relied on in this matter."  Defendant supplemented Harrington's
report on February 4, 2021, and he was deposed on February 9, 2021.

On January 28, 2021, the parties entered into a Stipulation for Discovery
(Doc. 211), which gave Plaintiff until February 18, 2021, to submit an expert
report rebutting the expense calculation included in Harrington's report.  The
Stipulation did not directly address supplementing the Coenen report as to
disgorgement for non-infringing cards and videos, but did state that "[t]his
agreement shall have no effect on [Plaintiff's] ability to seek leave from the Court

to serve an expert report beyond the scope agreed to here, and shall have no effect

on [Defendant's] ability to oppose or object to [Plaintiff's] request for leave." (*Id.*)

Plaintiff served the Second Coenen Supplemental Report on February 18,

2021, and included her rebuttal to Harrington's criticisms of her opinion on

disgorgement of Defendant's profits for sales of non-infringing products.  On

February 25, 2021, Defendant objected to the portion of the report relating to

profits from non-infringing sales on February 25, 2021 as being outside the parties'

Stipulation.

Plaintiff then moved for leave to add the additional opinion (Doc. 252),[1]

arguing that the Court in its discretion should amend the Scheduling Order to

permit its submission.  Plaintiff contends that under the circumstances of the case

any failure to fire the new supplement earlier should be considered the product of

excusable neglect.  Defendant argues that Coenen should have included the

supplementation in her original report of November 2, 2020, and it is not a true

supplemental report, as Coenen simply relied on another authority's opinion.

Defendant continues that she will be prejudiced because she has already deposed

Ms. Coenen.

---

[1] At the same time, Defendant filed a Motion to Exclude (Doc. 249) Coenen's opinion on disgorgement of profits from non-infringing product, arguing the opinion is speculative and without foundation in the evidence.  The issue is properly reserved for the United States District Judge.

Beyond the blanket assertion of prejudice, however, Defendant makes no attempt to discuss the factors set forth in **Pioneer Investment Services**, or acknowledge that the schedule is not an end in itself, but a means to achieve an end, "a fair opportunity for the parties to present their claims and defenses to the court and/or jury." **Seyfang v. DreamHome Restoration, LLC**, No. 16-00254-ABJ, 2018 WL 1701970, at *3 (D. Wyo. Apr. 6, 2018) (citing **Sil–Flow, Inc.**, 917 F.2d at 1514).

Here, the supplementation by Coenen is brief (one paragraph), presenting the citation of an additional authority, and responds to a criticism from Defendant's expert in his deposition of February 9, 2021. Trial of the matter is not scheduled until April of 2022. The proposed supplement does not advance a new theory or claim in the case, but provides further support for the disgorgement claim explicitly presented in Coenen's December 21, 2020 supplement. Further, while the Stipulation did not expressly permit Plaintiff to supplement Coenen's report as to disgorgement, its reservation of rights language clearly placed Defendant on notice that Plaintiff would seek the relief now before the Court. The delay was not substantial, with the proposed supplement being submitted within days of Harrington's report. There is no indication of any lack of good faith on the part of Plaintiff. The motion to strike is, therefore, **DENIED**.

**5.      Motion to Amend the Pretrial Order (Doc. 258).**

Plaintiff has moved to amend the Pretrial Order to expand its federal law claims, adding the claims that Defendant infringed its 2013 Review Modules and misappropriated the trade secrets in its Practice Exams.  The original August 27, 2019 complaint alleged infringement of the *2016* Review Modules and misappropriation of the *Proctored* Exams.  Plaintiff argues that the changes are warranted by the admissions made by Parkes in her December 17, 2020, deposition, as well as documents produced by Defendant in November and December of 2020.

Plaintiff originally attempted to add these claims to its proposed pretrial order.  Defendant objected to the addition as outside the pleadings, and, in the absence of any motion to amend, the Court sustained the objection at the February, 2021 pretrial conference.  (Doc. No. 234 at 17, n.2).  At the same time, the Court directed that any motion to amend the Pretrial Order be filed by March 5, 2021, continued the dispositive motion deadline from March 5, 2021 to June 7, 2021, and set a new trial date for April 5, 2022.

Defendant opposes the motion to amend.  She argues, first, that Plaintiff waived any right to relief when it failed to object to the exclusion of the claims at the Pretrial Conference under Fed.R.Civ.P. 72.  Second, Defendant argues that Plaintiff had sufficient information to raise a claim with respect to the 2013 Review Modules well before her deposition or the document production in

November and December of 2020.  Third, Defendant argues that she will be prejudiced by an inability to conduct discovery and, particularly with reference to the Practice Exam trade secret claim, seek to dismiss the claim based on her contention that the widely used Exams are not actual secrets.  Finally, Defendant argues that Plaintiff has acted in bad faith by waiting until now to advance these claims.

The court finds that Plaintiff has not waived the right to seek amendment. The issue was raised at the pretrial conference and the Court expressly permitted Plaintiff to file a motion to amend the Pretrial Order by a set date.  The present motion was timely filed, and no waiver occurred.

The parties dispute the exact nature of the standard for relief.  Defendant notes that both the Pretrial Order itself (Doc. 234) and D. Kan. R. 16.2(b)(2) provide that the order may be changed only "to prevent manifest injustice." Defendant also points to *U4, LLC v. Sonic Drive-In of Pittsburg, LLC*, No. 16-1269-EFM, 2019 WL 6828657, at *4 (D. Kan. Dec. 13, 2019).  In that case, the court observed that

> [a] motion to amend a pretrial order is committed to the district court's sound discretion.  The burden of demonstrating manifest injustice is on the party seeking modification.  In determining whether to allow an amendment to the pretrial order, the Court considers the following factors:  (1) prejudice or surprise to the opposing party, (2) the ability to cure that prejudice, (3) disruption to the orderly and efficient trial of the case by

> inclusion of the new issue, and (4) bad faith by the party
> seeking to modify the order.

*Id*. (citations and internal quotations omitted).

Plaintiff has cited ***Boardwalk Apartments v. State Auto Prop. & Cas. Ins.***, No. 11-2714-JAR, 2014 WL 2759570, *1 (D. Kan. June 18, 2014), which stated,

> [t]he Tenth Circuit has explained that an attempt to add a
> new claim to the pretrial order is the equivalent of asking
> leave to amend the complaint, and must be evaluated by
> the court under the standards set forth in Rule 15(a) … .
> Under Rule 15(a), leave to amend a complaint is freely
> given when justice so requires.  A party is typically
> granted leave to amend under this rule unless there is a
> showing of undue delay, undue prejudice to the opposing
> party, bad faith or dilatory motive, failure to cure
> deficiencies by amendment previously allowed, or futility
> of amendment.

(Citing ***Smith v. Aztec Well Servicing Co.****,* 462 F.3d 1274, 1285 (10th Cir.2006), internal quotations omitted). *See also **Minter v. Prime Equip. Co***., 451 F.3d 1196, 1204 (10th Cir. 2006).

Recent decisions in this District have concluded that a request to add a claim to an existing pretrial order must meet the standards of *both* Rule 15 and Rule 16. *See, e.g., **Thiongo v. Airtex Mfg**.*, No. 19-2783-EFM, 2021 WL 147981, at *2 (D. Kan. Jan. 15, 2021) (citing ***Gorsuch, Ltd. v. Wells Fargo Nat. Bank Ass'n***, 771 F.3d 1230, 1240 (10th Cir. 2014). In ***Thiongo***, the court observed:

> 'Rule 16(b)(4) is arguably more stringent than Rule 15[.]'
> ***Husky Ventures, Inc. v. B55 Invs., Ltd.***, 911 F.3d 1000,
> 1019 (10th Cir. 2018).  It provides that a scheduling

order 'may be modified only for good cause and with the judge's consent.' Fed.R.Civ.P. 16(b)(4). To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite diligent efforts. ***Husky Ventures***, 911 F.3d at 1020. Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, ... the claims are barred.' ***Gorsuch***, 771 F.3d at 1240. On the other hand, 'Rule 16's good cause requirement may be satisfied ... if a [party] learns new information through discovery or if the underlying law has changed." *Id*. If a moving party fails to demonstrate good cause, the court may deny the motion on this basis alone. *See id.*, at 1242 (declining to consider Rule 15(a) when there was not good cause under Rule 16(b)); *see also **Husky Ventures***, 911 F.3d at 1019 (affirming denial of a motion to amend for lack of good cause).

*Id.*

Applying these standards to the present action, the Court finds that amendment should be permitted. First, Plaintiff's motion was not the product of undue delay. After receiving new discovery at the end of 2020 clearly pointing to infringement of the 2013 Review Modules and misappropriation of information in the Practice Exams at the conclusion of the year, Plaintiff promptly moved to modify its own discovery responses, signaling to Defendant its intention to pursue these claims. Unlike the plaintiff in *U4*, Plaintiff also raised the issues at the time of the pretrial conference, and was (provisionally) denied relief.

As noted earlier, Defendant argues that undue delay exists because Plaintiff might have made these claims earlier. Thus, she notes that on June 1, 2020, she

produced a list of material relied upon in creating her cards and videos, a list which included reference to the 2013 Modules.  Similarly, on July 31, 2020, Defendant's answers to interrogatories included reference to the 2013 modules.  The videos, she argues, were produced at the end of July, 2020, and were always available on YouTube.  With respect to both the proposed copyright claims and trade secret claims, she argues that if Plaintiff was able to advance its original 2019 claims based on the 2016 Review Modules and the Proctored Exams, there is no reason it could not have advanced claims based on the 2013 Review Modules and the Practice Exams.

The Court finds, in the context of this case, that the delay was not undue. Although there may have been some clues that these claims might be possible, this was not directly confirmed until then end of 2020.  Any such clues must also be placed in the context of the enormous amount of information, in documents and videos, that Plaintiff was required to sift through.  Plaintiff did not receive evidence *directly* tying the 2013 Review Modules and the Practice Exams to Defendant's cards and videos until the end of 2020.

Moreover, the court cannot ignore the role that Plaintiff had in creating the delay.  Defendant had agreed to produce "all documents and materials that [she] used or relied upon to create the videos and study cards at issue" by June 1, 2020. However, Defendant's personal ATI Review Modules were not produced – and

then in part – until November 6, 2020.  The production was only completed hours before Defendant's December 17, 2020, deposition.  In the deposition, Parkes testified she used highlighted/annotated copies of both her 2013 and 2016 ATI Review Modules for her study cards and videos.  Parkes also stated in the deposition that she used ATI's Practice Examinations rather than its Proctored Exams for her preparation.

Prejudice to the Defendant is not substantial.  With respect to discovery, Plaintiff points out that Defendant, knowing all along that a substantial part of her defense to the trade secret claim would be that she used not the Proctored Exams but the Practice Exams, could have conducted discovery on the issue throughout the case, but chose not to do so.  Further, surprise cannot be fairly asserted where the claims now being raised are based on revelations from Defendant's own documents.  While Defendant complains that she has not had the chance to examine witnesses on the similarity between the 2013 Review Modules and her materials, Plaintiff points out that Defendant asked no such questions as to the 2016 Review Modules – her defense being not that the Modules and materials are dissimilar, but that the Review Modules are facts about nursing and thus not protected by copyright.  Finally, any concern about even potential prejudice is alleviated in light of Plaintiff's agreement that, if Defendant does move for a limited extension of discovery for purposes of addressing the additional claims, it

would not object on grounds of timeliness.  Further, there are no grounds for inferring bad faith on the part of the Plaintiff, which acted with reasonable promptness in raising these issues.

Finally, the Federal Rules are grounded on "the principle that the purpose of pleading is to facilitate a decision on the merits."  ***U.S. ex rel. Precision Co. v. Koch Industries***, 31 F.3d 1015, 1019 (10th Cir. 1994) (internal citations omitted).  In this context, the Court notes the existing schedule in the case does not contemplate trial until April 5, 2022.  When nearly a year remains before trial, preventing Plaintiff from presenting claims – for which colorable evidence has been produced during discovery – would result in manifest injustice.  Plaintiff's Motion to Amend the Pretrial Order (Doc. 258) is, therefore, **GRANTED**.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Protective Order (Doc. 220), Motion for Leave to Amend or Correct Expert Report (Doc. 252) and Motion to Amend (Doc. 258) are **GRANTED**; Defendant's Motion to Compel (Doc. 238) is **GRANTE in part** and **DENIED in part** as provided herein; and Defendant's Motion to Strike Supplemental Answers (Doc. 229) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 24th day of May, 2021, at Wichita, Kansas.

s/ KENNETH G. GALE
HON. KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE