IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CATHY PARKES d/b/a LEVEL UP RN,<br><br>        Defendant. | Case No. 19-2514-JAR-KGG |

## MEMORANDUM AND ORDER

Plaintiff Assessment Technologies Institute, LLC brings this action against Defendant Cathy Parkes d/b/a Level Up RN, alleging the following claims: (1) copyright infringement under the Copyright Act; (2) misappropriation of trade secrets under the Defend Trade Secrets Act; (3) misappropriation of trade secrets under the Kansas Uniform Trade Secrets Act ("KUTSA"); (4) unfair competition under Kansas law; and (5) breach of contract under Kansas law. This matter comes before the Court on Defendant's Motion to Exclude a Portion of the Testimony of Plaintiff's Expert, Tracy Coenen (Doc. 249). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants Defendant's motion.

**I.    Background**

Plaintiff Assessment Technologies Institute, LLC ("ATI") developed and sells a package of nursing-education products that includes review materials, assessment and remediation methodology, practice examinations, actual proctored examinations, electronic flash cards, and various types of video presentation. Plaintiff's allegations in this lawsuit include that Defendant's YouTube videos and study flash card materials infringe on its copyrights and

misappropriate its trade secrets by revealing in a coded fashion what test questions and answers students would encounter on ATI-proctored examinations.

On December 9, 2019, this Court granted Plaintiff's motion for preliminary injunction as to seven out of nine study flash card "decks" and nineteen YouTube videos.[1] The Court ruled that Plaintiff was likely to succeed on the merits of its copyright infringement claim as to the enjoined study card materials.[2] The Court further found that Plaintiff was likely to succeed on the merits its claims of copyright infringement and misappropriation of trade secrets as to the videos.[3] But the Court made clear that "Defendant is not enjoined from creating other, non-infringing nursing material."[4] Plaintiff later moved for contempt, arguing that certain new materials created and sold by Defendant violated the Court's PI Order. The Court denied that motion, finding that Plaintiff had not met its burden of showing by clear and convincing evidence that Defendant violated the Court's PI Order by creating and selling her stand-alone "Health Assessment" study deck.[5]

Plaintiff's prayer for relief includes disgorgement of Defendant's "profits resulting from her infringement of ATI's copyrights and misappropriation of trade secrets."[6] Under 17 U.S.C. § 504(b):

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and

---

[1] Doc. 59 ("PI Order").

[2] *Id.* at 23–30; *see, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

[3] Docs. 59, 75.

[4] Doc. 59 at 43.

[5] Doc. 159.

[6] Doc. 293 at 19.

>are not taken into account in computing the actual damages. In
>establishing the infringer's profits, the copyright owner is required
>to present proof only of the infringer's gross revenue, and the
>infringer is required to prove his or her deductible expenses and
>the elements of profit attributable to factors other than the
>copyrighted work.

Plaintiff designated Tracy L. Coenen as an expert in this case "to evaluate financial information . . . and render opinions relating to the disgorgement of profits obtained by [D]efendant . . . as a result of her infringement of ATI's copyrights and misappropriation of trade secrets."[7] Coenen is a certified public accountant ("CPA"); she is also certified in financial forensics ("CFF") and is a master analyst in financial forensics. In her first expert report submitted on November 2, 2020, Coenen offered her calculation of the net profits generated by Defendant from the sale of study cards and video advertising revenue in 2018 and 2019. She "was asked to assume that the study card and advertising revenues earned by Parkes were a result of her infringement of ATI's copyrights and misappropriation of trade secrets."[8] Because "[t]he financial data provided by the defendant does not show revenue and costs by study deck or by YouTube video, . . . there [was] no way for [her] to apportion the numbers to certain sets of study cards or certain videos."[9]

Coenen supplemented this report on December 21, 2020, as a result of new documents she received from Defendant. This supplement contains two updates to her previous opinion. First, she updated the calculation of net profits from the first report based on additional information. Second, she added an opinion that:

>Parkes should not only be disgorged of the profits in Opinion 1
>above. The company should also be disgorged of the profits of
>non-infringing products because these *indirect profits* are

---

[7] Doc. 257 at 1.

[8] *Id.*

[9] *Id.* at 2.

3

> attributable to the infringing products. . . . I do not have complete information from Parkes to calculate this item of disgorgement, but if ATI is successful on this claim, it would also be entitled to disgorgement of the net profits Parkes made on
>
> - Lab Values study deck noted above
> - Other study card and video revenue that has not been disclosed by Parkes . . . .
>
> The disgorgement of profits should continue for a reasonable period into the future, as future revenues and profits are also a result of the following and business that were both built largely because of the infringement on ATI's copyrights.[10]

Coenen submitted a second supplemental report on February 18, 2021, which rebuts Defendant's expert, James Herrington, also a CPA and CFF. Coenen responded to Herrington's criticism that her opinion that indirect profits should be disgorged is unduly speculative. Coenen states that she spoke with Dr. Karen Becker, an Associate Professor of Marketing and Interdisciplinary Business at the College of New Jersey, who teaches courses on consumer behavior and researches branding, consumer behavior, and marketing strategy. Coenen asserts in the second supplemental opinion that Becker "confirmed" her opinion that "[h]ad Parkes not used the ATI name and materials, . . . it is very unlikely that Parkes could have built the following she has today, which continues to generate revenue for Level Up RN."[11]

## II.  Standard

The Court has broad discretion in deciding whether to admit expert testimony.[12] The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[13]

---

[10] Doc. 257-1 at 4 (footnote omitted).

[11] Doc. 257-2 at 5.

[12] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996).

[13] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

4

Fed. R. Evid. 702 imposes a gatekeeping function on the district courts to admit expert testimony only where "(1) the expert is qualified and the testimony would be helpful to the trier of fact, (2) the testimony is based on sufficient facts or data, (3) it is further based on reliable principles and methods, and (4) the expert has reliably applied the principles and methods to the facts and data."[14]

It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[15] The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[16] In this case, neither party requests a *Daubert* hearing to resolve the motion. The Court has carefully reviewed the submissions filed with the motion, which include deposition testimony by the challenged expert, and believes this review is sufficient to render a decision.

## III.   Discussion

Defendant asks the Court to exclude Coenen's testimony that Plaintiff is entitled to disgorgement of profits derived from Defendant's sale of non-infringing products on the following grounds: (1) she is not qualified to render an opinion on the recoverability of indirect profits; (2) her opinion is not reliable; and (3) her opinion is not helpful to the trier of fact because it does not include a calculation. Because the Court finds that the challenged testimony should be excluded on the first two grounds asserted by Defendant, it need not address whether it would be helpful to the trier of fact.

---

[14] *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 657 (10th Cir. 2018) (first citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); and then citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

[15] *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[16] *Id.*

### A. Qualification

Defendant does not challenge Coenen's qualifications to calculate the amount of profits that should be disgorged by Defendant if she is found liable on the copyright infringement claim. Instead, Defendant challenges her qualifications to render "Opinion 2" asserted in her supplemental report, and reasserted in her second supplemental report, that Defendant should be liable for profits earned from the sale of non-infringing material because such profits were made possible by the sale of infringing products. Defendant argues that Coenen is not qualified to render this opinion, which relies on marketing and not accounting expertise. Plaintiff responds that Coenen's qualifications to opine on disgorgement of profits from infringing products also qualify her to opine on disgorgement of profits from non-infringing products. Plaintiff also points to Coenen's deposition testimony that her knowledge, training, and experience in economic damages and forensic accounting qualify her to opine on this topic.

The Court must determine whether the expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion."[17] This Court has "'wide discretion' in determining whether a witness's experience is sufficient to qualify him as an expert."[18] "As long as an expert stays 'within the reasonable confines of his subject area,' [Tenth Circuit] case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'"[19] The Court is unpersuaded that the same expertise that qualifies Coenen to calculate Defendant's profits from the sale of infringing products qualifies her to opine that

---

[17] *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)).

[18] *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 513 (10th Cir. 2009) (citing *United States v. Arney,* 248 F.3d 984, 991 (10th Cir. 2001)).

[19] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1519–20 (10th Cir. 1996)).

disgorgement of profits from the sale of non-infringing products is appropriate, a question of *causation*.[20]  This is not an issue of specialization—Coenen's causation opinion is wholly outside the realm of what she was retained by Plaintiff to do: "evaluate *financial information* in [this] case and render opinions relating to the disgorgement of profits."[21]  Her opinion that disgorgement of profits from non-infringing products in the past and "for a reasonable period into the future" was only made possible by the sale of infringing products is not based on financial information.  Indeed, Coenen admitted in her deposition that this opinion was about marketing; it was not an accounting opinion.  She admitted that she is not a marketing expert.  And, importantly, Coenen admitted that she lacked the necessary information to calculate such profits.

The fact that Coenen testified in a conclusory fashion that she is qualified by her experience and training in economic damages and forensic accounting is not sufficient.  She pointed to nothing about her expertise that qualifies her to testify about causation, as opposed to damages.[22]  The Court finds that Coenen's causation opinion—that Defendant would not have earned profits from the sale of non-infringing material but for her sale of infringing material—is outside the bounds of her qualifications as an economic damages expert.

**B.     Reliability**

To be reliable, the "expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual

---

[20] *See, e.g.*, *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799 (8th Cir. 2003) (discussing standards of causation for recovering indirect profits under the Copyright Act); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 715 (9th Cir. 2004) (same).

[21] Doc. 257 (emphasis added).

[22] *See Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009).

7

knowledge, not mere 'subjective belief or unsupported speculation.'"[23] In *Daubert*, the Supreme Court listed four non-exhaustive factors that the Court may consider in determining reliability:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.[24]

Assuming Coenen was qualified to render an opinion about causation for indirect profits, the Court finds that this part of her opinion is not reliable under Rule 702 and *Daubert*. As stated above, this portion of Coenen's opinion does not include a calculation of "profits of the infringer that are attributable to the infringement," as required by the Copyright Act.[25] Instead, Coenen offers the conclusory opinion that "all profits from the Parkes business should be disgorged," because they are attributable to the infringement.[26] If Coenen had been asked to assume the recoverability of indirect profits and merely offered a damages calculation based on this assumption, the Court's analysis may have been different.[27] Instead, she purports to opine on the

---

[23] *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)).

[24] *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002) (citing *Daubert*, 509 U.S. at 590).

[25] 17 U.S.C. § 504(b).

[26] Doc. 257-1 at 4. To be clear, the Court does not rule at this time whether or not Plaintiff has met its burden of showing that Defendant's indirect profits are recoverable. *See Andreas*, 336 F.3d at 799 ("We agree that in an indirect profits case the profits 'attributable' to the infringement are more difficult to quantify. But that difficulty does not change the burden of proof established by the statute. The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits. '[T]he plaintiff has the "burden" to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur.'" (quoting *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002))).

[27] *Cf. TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) ("The fact that [the expert] relied upon the report in performing his calculation of lost profits did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report.").

issue of causation without showing that her reasoning or methodology is scientifically valid.[28] She states that Parkes built her following by infringing on ATI's materials; therefore, she would not have been able to build up her current business without the following that she obtained from the infringement. But this opinion is based strictly on her review of Parkes' deposition testimony and the Court's PI Order, rather than her training and knowledge as an economic damages expert. She admitted during her deposition that her conclusion is not based on any objective data. The Court agrees that Coenen's indirect profits opinion is unduly speculative.

Moreover, Coenen's reliance on a marketing expert's opinion to support this part of her opinion is problematic. In the second supplemental report, Coenen responded to Defendant's expert's criticism of her indirect profits opinion by relying on a conversation she had with Dr. Becker. Dr. Becker is not designated as an expert in this case, yet Coenen recites her opinion that "for someone like Parkes to quickly establish a following in a saturated market such as educational materials for nursing students, she would need to have a hook or gimmick," and that without the "hook" of the infringed material, Defendant could not "have built the following she has today, which continues to generate revenue for Level Up RN."[29]

It is true that an expert may rely on hearsay to formulate her opinion under Fed. R. Evid. 703, but "one expert may not rely on another expert's opinion if the first expert is unfamiliar with the methods and reasons supporting the second, . . . an expert cannot merely recite another expert's opinion, and . . . an expert cannot directly testify as to the conclusions of another

---

[28] *See, e.g.*, *Polar Bear Prods., Inc.*, 384 F.3d at 714–15 ("[N]o evidence establishes that the infringement may have actually influenced the purchasing decisions of those that bought Timex's watches at retail stores or other outlets—the decisions that lead to increased sales revenue, which is the foundation of profits recoverable under § 504(b).").

[29] Doc. 257-2 at 5.

expert."[30]  All three situations apply to Coenen's opinion: it relies on another expert in a completely separate field, she recites Dr. Becker's opinion, and if she were to testify in line with her report, it would constitute direct testimony about Dr. Becker's conclusions.  Coenen's "lack of familiarity with the methods and reasons underlying [the other expert's] projections virtually preclude[] any assessment of the validity of the projections through cross-examination of [Coenen]."[31]

For the reasons explained above, the Court grants Defendant's motion to exclude expert testimony by Coenen on the causation component of indirect profits—that Plaintiff is entitled to disgorgement of profits derived from non-infringing products because they are attributable to the infringement or misappropriation of trade secrets.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Exclude a Portion of the Testimony of Plaintiff's Expert, Tracy Coenen (Doc. 249) is **granted**.

**IT IS SO ORDERED.**

Dated: June 21, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[30] *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015) (citations omitted) (collecting cases).

[31] *TK-7 Corp.*, 993 F.2d at 732.