IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, L.L.C.<br><br>   Plaintiff,<br><br> v.<br><br>CATHY PARKES d/b/a LEVEL UP RN<br><br>   Defendant. | Case No. 2:19-cv-02514-JAR |

**<u>PLAINTIFF ASSESSMENT TECHNOLOGIES INSTITUTE, LLC'S OPPOSITION TO
DEFENDANT CATHY PARKES' MOTION FOR SUMMARY JUDGEMENT
ON FIRST, THIRD, FOURTH AND FIFTH CLAIMS FOR RELIEF</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ........................................................................................................1

II.     ATI'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED
        FACTS. .....................................................................................................................3

III.    ARGUMENT. ............................................................................................................8

        A.     Defendant's Summary Judgment Motion Directed To ATI's Trade Secret
               Misappropriation Claims Should Be Denied. .......................................................8

               1.     Defendant's Motion directed to the ATI Practice Exams should be
                      denied. ..................................................................................................8

               2.     Defendant's Motion directed to the ATI Proctored Exams should
                      be denied. ...........................................................................................14

        B.     Defendant's Motion Directed To ATI's Breach of Contract Claim Should
               Be Denied. ........................................................................................................28

        C.     Defendant's Motion Directed To ATI's Unfair Competition Should Be
               Denied. .............................................................................................................29

IV.     CONCLUSION. ......................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Registry of Radiologic Technologists v. Bennett*,
939 F. Supp. 2d 695 (W.D. Tex. 2013) .................................................................. 16, 17, 26

*API Americas Inc. v. Miller*,
380 F. Supp. 3d 1141 (D. Kan. 2019) ...................................................................... 9, 17, 28

*Bison Advisors LLC v. Kessler*,
No. 14-3121(DSD/SER), 2016 WL 4361517 (D. Minn. Aug. 12, 2016) ........................ 10, 11

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*,
No. C-11-06268 JCS, 2012 WL 1670163 (N.D. Cal. May 14, 2012) .................................. 10

*Centrifugal Acquisition Corp. v. Moon*,
849 F. Supp. 2d 814 (E.D. Wis. 2012) ................................................................................ 11

*Digital Ally, Inc. v. Util. Assocs., Inc.*,
No. 14-2262-CM, 2017 WL 1197561 (D. Kan. Mar. 30, 2017) ........................................... 19

*Electro-Craft Corp. v. Controlled Motion, Inc.*,
332 N.W. 2d 890 (1983) ..................................................................................................... 11

*Fire 'Em Up, Inc. v. Technocarb Equipment Ltd.*,
799 F. Supp. 2d 846 (N.D. Ill. 2011) .................................................................................. 11

*In re Frye*,
No. CC-08-1055-PaMkK, 2008 WL 8444822 (B.A.P. 9th Cir. 2008) ................................. 17

*Gates Rubber Co. v. Bando Chem. Indus. Ltd.*,
9 F.3d 823 (10th Cir. 1993) ............................................................................................... 30

*In re Hardesty*,
190 B.R. 653 (D. Kan. 1995) ............................................................................................. 18

*Kane v. Nace Int'l*,
117 F.Supp.2d 592 (S.D. Tex. 2000) ................................................................................... 30

*Kindergartners Count, Inc. v. Demoulin*,
171 F. Supp. 2d 1183 (D. Kan. 2001) ........................................................................... 29, 30

*Koch Eng'g Co. v. Faulconer*,
227 Kan. 813 (1980) .......................................................................................................... 31

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993) ...................................................................................................30

*Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*,
    130 F.3d 950 (10th Cir. 1997) ............................................................................................29

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*,
    No. 17 C 923, 2018 WL 1156246 (N.D. Ill. Mar. 5, 2018)...................................................11

*PaySys Int'l, Inc. v. Atos Se*,
    No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016) ...............................12

*Perry v. Saint Francis Hospital and Medical Ctr., Inc.*,
    886 F. Supp. 1551 (D. Kan. 1995) .......................................................................................29

*Pre-Paid Legal Servs., Inc. v. Harrell*,
    No. CIV.06-019JHP, 2008 WL 111319 (E.D. Okla. Jan. 8, 2008).....................................9, 10

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    923 F. Supp. 1231 (N.D. Cal. 1995) ...................................................................................10

*RING Computer Sys. Inc. v. Paradata Computer Networks, Inc.*,
    No. C4-90-889, 1990 WL 132615 (Minn. Ct. App. 1990)...................................................11

*Rubin v. Brooks/Cole Publ'g Co.*,
    836 F.Supp. 909 (D. Mass. 1993) .......................................................................................30

*SmokEnders, Inc. v. Smoke No More, Inc.*,
    No. 73-1637, 1974 WL 20234 (S.D. Fla. Oct. 21, 1974) ....................................................10

*State Regulatory Registry, LLC v. Bartholomew*,
    No. 17-CV-01834-PAB-NRN, 2019 WL 7290934 (D. Colo. Sept. 27, 2019)......................17

*Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*,
    309 F. Supp. 3d 1022 (D. Kan. 2018) ..................................................................................29

**Statutes**

18 U.S.C. § 1839................................................................................................... 16, 17, 18

Kan. Stat. Ann. § 60-3320 ................................................................................ 14, 16, 17, 18

**Other Authorities**

37 C.F.R. § 202.20..................................................................................................... 12, 13

Fed. R. Evid. 801, 802.....................................................................................................5, 19

I.   **INTRODUCTION.**

Defendant Cathy Parkes d/b/a LevelUpRN seeks partial summary judgment in her favor (the "Motion") on Plaintiff Assessment Technologies Institute, LLC's ("ATI's") trade secret misappropriation, breach of contract, and unfair competition claims.

As to the trade secret misappropriation claims, Defendant incorrectly argues that the ATI Practice Exams are not trade secrets on the basis that:  (i) "they were marketed to the public on the Internet"; (ii) they have been seen by many people; and (iii) they were improperly deposited at the U.S. Copyright Office.  *See* Defendant's Motion for Summary Judgment ("Mot.") at 8–13. As to (i), Defendant plays fast and loose with the record.  The undisputed fact is that the *only* way to access the ATI Practice Exams is through the ATI online portal, using access credentials issued only after a user creates an ATI account and agrees to the ATI Terms and Conditions. Among other things, those ATI Terms and Conditions required students accessing the ATI Practice Exams to maintain the confidentiality of those materials.  Here, Defendant admits that she accessed the ATI Practice Exams using her ATI login credentials, after agreeing to the ATI Terms and Conditions on several occasions, and improperly used those ATI Practice Exams to make her for-profit videos—a clear violation of the ATI Terms and Conditions.  On (ii), the fact that over the years many students of ATI's clients had accessed those exams through the ATI online portal does not defeat their status as trade secrets under applicable law.  And on (iii), Defendant does not dispute that ATI took reasonable measures to keep such information secret by depositing the ATI Practice Exams using the U.S. Copyright Office's secure test procedures when applying for copyright protection for the ATI Practice Exams.  Defendant's argument that ATI should not have been able to use the secure deposit procedure is both wrong and irrelevant for purposes of trade secret protection.  *See* discussion at Section III.A.1., *infra*.

Nor is Defendant entitled to summary judgment on ATI's trade secret misappropriation claim with respect to the ATI Proctored Exams.  *See* Mot. at 13–27.  Her argument that those exams cover nothing more than "nursing facts" was rejected by this Court at the preliminary injunction stage, and Defendant has adduced no evidence since then to undermine that finding.  Further, Defendant intentionally mischaracterizes ATI's position with respect to the ATI Proctored Exams.  ATI has never claimed nursing facts are its trade secrets.  Instead, ATI has consistently maintained throughout this litigation that its trade secrets are the specific test items on the ATI Proctored Exams—*i.e.*, the specific question and answer sets, and the presentation of those test items—not the nursing facts.  Substantial case law, discussed below, supports ATI's entitlement to trade secret protection in the test items on the ATI Proctored Exams.  *See* discussion at Section III.A.2., *infra*.

Defendant's argument that ATI's breach of contract claim fails because ATI cannot recover restitutionary or disgorgement damages misstates the law.  *See* Mot. at 27–29.  ATI is seeking injunctive relief, which is an allowable remedy under the law for Defendant's **undisputed** and blatant breach of contract.  *See* discussion at Section III.B., *infra*.

Finally, Defendant's argument that ATI's unfair competition claim is preempted by its copyright and trade secret claims fails as a matter of law.  *See* Mot. at 29–30.  Defendant overlooks the fact that under established Kansas law, unfair competition claims based on copyright infringement and trade secret misappropriation are not preempted if they include the "extra element" of a confidential relationship between ATI and Defendant.  Here, the undisputed evidence establishes a confidential relationship between ATI and Defendant and, therefore, Defendant's preemption argument fails.  *See* discussion at Section III.C., *infra*.

For these and the reasons further discussed below, Defendant's Motion should be denied in its entirety.

## II.   ATI'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS.[1]

1.      Disputed.  The ATI Practice Exams are not available "online."  They are accessible only through ATI's secure online portal.  *See* Dkt. No. 14-9 (Declaration of Dr. Jerry Gorham in Support of ATI's Motion for Preliminary Injunction) ¶¶ 13–15.  To access the ATI online portal, students must first create an ATI account.  *Id.* ¶ 13.  Thereafter, students must log into the ATI online portal using his or her individual login credentials to access the ATI Practice Exams.  *Id.*; *see also* Dkt. No. 14-10 (ATI Terms and Conditions) at 1–15.[2]  When students create their ATI account, they must review, acknowledge, and agree to the ATI Terms and Conditions.  Dkt. No. 14–9 ¶ 15.  Among other things, the ATI Terms and Conditions require students to maintain the confidentiality of ATI Products, including the ATI Practice Exams.  Dkt. No. 14-10 at 1–15.

2.      Undisputed.

3.      Undisputed.

4.      Disputed as to the phrase, "other members of the public."  The ATI Practice Exams are only available via ATI's secure online portal, and only to students after they log into that online portal using their individual login credentials.  Dkt. No. 14-9 ¶¶ 13–15.  Before accessing the ATI Practice Exams, students must review, acknowledge, and agree to the ATI

---

[1] The arguments presented in this brief will refer back to the disputed facts discussed in this Section II, and the evidence in support thereof.  For ease of the Court, where ATI's arguments cite to the facts and evidence in this Section II, ATI will use the shorthand, "SODF ¶ [___]," or Statement of Disputed Facts.

[2] Unless where otherwise noted, page numbers to docket cites refer to the CM/ECF pagination.

Terms and Conditions which require students to maintain the confidentiality of ATI Products, including the ATI Practice Exams. *Id.*; Dkt. No. 14-10 at 1–15.

5.      Disputed.  The ATI Practice Exams identified herein are only accessible to students through ATI's secure online portal, and only after they log into that online portal using their individual login credentials.  Dkt. No. 14-9 ¶¶ 13–15.  Before accessing the ATI Practice Exams, students must review, acknowledge, and agree to the ATI Terms and Conditions which require students to maintain the confidentiality of ATI Products, including the ATI Practice Exams. *Id.*; Dkt. No. 14-10 at 1–15.

6.      Undisputed that Dr. Jerry Gorham testified that:

█████████████████████████████████████████████████

Dkt. No. 299-3 (Transcript Excerpts of the Dec. 10, 2020 Deposition of Dr. Jerry Gorham) at 132:19–25.  Disputed as to the remainder of this paragraph, insofar as it mischaracterizes Dr. Gorham's deposition testimony.  *See, e.g.*, *id.* at 133:10–16 (the ATI Practice Exams and ATI Proctored Exams are different); 182:23–183:12 (ATI Practice Exams may highlight subcontent area topics that a student should study, but the questions in a practice exam will differ from an ATI Proctored Exam and may not test the exact same nursing fact); 184:15–185:5 (same).

7.      Undisputed.

8.      Undisputed that Defendant accessed ATI Proctored Exams during the administration of proctored exams while a student at the California State University—San Marcos ("CSUSM") nursing program in October, November, and December of 2015.  Schuman Decl., Exh. 1 (Transcript of Dec. 17, 2020 Deposition of Cathy Parkes) at 47:19–48:8; 54:1–10.

Disputed that Defendant did not have access to ATI Proctored Exams "through any other means." Defendant acquired ATI Proctored Exam and ATI Practice Exam trade secrets, even after she graduated from CSUSM, from ATI students who passed information on to her about test items they saw on their tests, and posted that information on Defendant's LevelUpRN YouTube channel. *See id.* at 266:17–275:23; Schuman Decl., Exh. 2 (Exhibit 40 to Parkes' Deposition). Defendant maintained a working list of that information, which Defendant *admits* she used to create additional YouTube videos. Schuman Decl., Exh. 1 at 274:12–275:23.

9.       Undisputed that Defendant was not permitted to take notes about, or make copies of, the ATI Proctored Exams she took during nursing school. Otherwise disputed as hearsay, and therefore inadmissible as evidence under Federal Rules of Evidence 801 and 802; Defendant references her own self-serving statement in her declaration that she did not remember information from ATI Proctored Exams she took while at CSUSM.

10.       Disputed. As set forth in the Amended Pretrial Order, ATI's trade secret claim includes Defendant's misappropriation of trade secrets on the ATI Practice Exams. Dkt. No. 293 (Amended Pretrial Order) at 7, 10, and 18. In addition, as further set forth in the Amended Pretrial Order, ATI claims that Defendant misappropriated ATI's trade secrets beyond the video clips listed in Dr. Jerry Gorham's Reply Declaration in Support of ATI's Motion for Preliminary Injunction Order (Dkt. No. 34-28 (Exhibit 19 to Gorham Reply Declaration)), as including misappropriation that occurred in 2018. *See* Dkt. No. 293 at 7–8, 10.

11.       Disputed as hearsay, and therefore inadmissible as evidence under Federal Rules of Evidence 801 and 802; Defendant references her own self-serving statement in her declaration that she does not remember "any proctored exam items when she created the videos at issue."

5

12.     Disputed as to the statement "disclose the same information."  ATI trade secrets are the test items—that is, the question and answer sets, and the presentation of those question and answer sets in ATI Practice Exams and ATI Proctored Exams.  Schuman Decl., Exh. 3 (Transcript of Nov. 12, 2019 Hearing on Proceedings for ATI's Motion for Preliminary Injunction) at 90:11–91:2; Schuman Decl., Exh. 4 (Transcript of Dec. 10, 2020 Deposition of Jerry Lee Gorham) at 171:21–172:3.  The test items are not disclosed in "quizzes in ATI's published books."  *See, e.g.*, Schuman Decl., Exh. 4 at 171:21–172:3; 185:6–186:5; 192:8–193:5.

13.     Disputed as to the statement, "disclose the same information."  ATI claims trade secrets in test items—that is, the question and answer sets, and the presentation of those question and answer sets—that are contained in ATI Practice Exams and ATI Proctored Exams.  Schuman Decl., Exh. 3 at 90:11–91:2; Schuman Decl., Exh. 4 at 171:21–172:3.  These test items are not disclosed in ATI Practice Exams, or "the rationales for the practice exams."  *See, e.g.*, Schuman Decl., Exh. 4 at 171:21–172:3; 185:6–186:5; 192:8–193:5.

14.     Disputed.  Defendant used other words that signaled to her viewers what they would see on their ATI Proctored Exams and ATI Practice Exams.  *See* Dkt. No. 34-28.  Defendant ***admits*** to telling her viewers what they would see on their ATI Practice Exams.  Schuman Decl., Exh. 1 at 150:1–23.

15.     Disputed.  Defendant used words in her videos that highlighted that a subject would be on a test or exam by using signals such as "key," "important" or "super important," among others.  *See* Dkt. No. 34-28.

16.     Undisputed that Defendant used the words "key," "important," and "super important" in LevelUpRN YouTube videos.

17.     Undisputed that the ATI Test Security Department was comprised of two ATI employees during the relevant time period, Jeff Marsh (supervisor) and Karen Wood. Undisputed that one of the functions of the Test Security Department is to investigate reports of testing irregularities on ATI Proctored Exams.

18.     Disputed as to the use of the term, "accused videos."  Karen Wood reviewed "five or six" videos by February 2019, which were posted by Defendant, and she was further in contact with the legal department by September 10, 2018.  Schuman Decl., Exh. 5 (Transcript of Jan. 13, 2021 Deposition of Karen Wood) at 82:13-20; 129:16-23.

19.     Disputed.  By February 2019, Ms. Wood reviewed "five or six" videos posted by Cathy Parkes.  *Id.* at 129:16–23.  The only video reviewed by Ms. Wood after that period was a video discussing ATI forcing Defendant to remove videos.  *Id.* at 155:13–20.  Upon review of the "five or six" videos, Ms. Wood stated in an e-mail dated April 4, 2018 that ███████████ ███████████████████████████████████████████████████████████████████████ 299-10 (Exhibit M in Support of Defendant's Motion for Summary Judgment).

20.     Disputed.  In an e-mail dated December 4, 2018, Kristi Burgess, a Client Executive at ATI, stated in an email that ██████████████████████████ Ms. Burgess also stated that ██████████████████████ ██████████ Dkt. No. 299-16 (Exhibit S in Support of Defendant's Motion for Summary Judgment).  In an e-mail dated July 22, 2019, Ms. Wood stated that ████████████ ██████████ Dkt. No. 299-19 (Exhibit V in Support of Defendant's Motion for Summary Judgment).

21.     Disputed.  Ms. Wood reviewed "five or six" of Defendant's videos; Mr. Marsh did not review Defendant's videos and instead relied on the observations of Ms. Wood, who reported to him.  Schuman Decl., Exh. 5 at 129:16-23; *see also* Schuman Decl., Exh. 6 (Transcript of Jan. 8, 2021 Deposition of Jeff Marsh) at 16:9–17:25.  In June 2018, the Test Security Department ███████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████  Schuman Decl., Exh. 6 at 43:13-47:14.

22.     Disputed and immaterial.  In an e-mail dated May 22, 2018, Ms. Wood stated that ██████████████████████████████████████  Dkt. No. 299-11 (Exhibit N in Support of Plaintiff's Motion for Summary Judgment) at 2.

## III.   ARGUMENT.

### A.   Defendant's Summary Judgment Motion Directed To ATI's Trade Secret Misappropriation Claims Should Be Denied.

#### 1.   Defendant's Motion Directed to the ATI Practice Exams Should Be Denied.

Defendant argues that the ATI Practice Exams are not trade secrets because she *has to do that* to try to avoid summary judgment against her on this issue.  Defendant has ***admitted*** to repeatedly accessing the ATI Practice Exams via her secure ATI account after graduating from nursing school and making videos telling her viewers what she saw (and what they could expect to see) on the ATI Practice Exams.  *See* SODF ¶ 14; Schuman Decl., Exh. 1 at 150:1–23, 157:17–24; Dkt. No. 297-7 (Exhibit 33 to Declaration of Brett Schuman in Support of Plaintiff's Motion for Partial Summary Judgment).

A misappropriation claim under both DTSA and KUTSA requires showing:  (1) the existence of a trade secret;  (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or

8

should have known the trade secret was acquired by improper means.  *API Americas Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019).

      With respect to the ATI Practice Exams, Defendant does not dispute that she used them to create her YouTube videos, or that she knew or should have known that the trade secrets were used improperly.  Mot. at 8–13.  Instead, Defendant argues that the ATI Practice Exams are not trade secrets because:  (i) they supposedly are "available to the public online"; (ii) many students have taken those exams; and (iii) their secure deposit with the U.S. Copyright Office was improper.  *Id.*  None of these arguments defeats the trade secret status of the ATI Practice Exams.

      *First*, Defendant's argument that the ATI Practice Exams are not entitled to trade secret protection because they are "available to the public online," (*see id.* at 10), is a gross mischaracterization of the record evidence.  In fact, *only* individuals with ATI user accounts who have successfully logged into their ATI profiles may access ATI Practice Exams, and only individuals who have agreed and acknowledged the confidentiality obligations contained in the ATI Terms and Conditions can create a user account capable of accessing the ATI Practice Exams.  SODF ¶¶ 1, 4, 5.  Specifically, the ATI Terms and Conditions provide that users may not use any information contained in ATI Products, including the ATI Practice Exams, for any purpose other than those allowed under the ATI Terms and Conditions.  *Id.*  The ATI Terms and Conditions also expressly state that the information contained in ATI Practice Exams is confidential, and that users are prohibited from disclosing or using information in those exams for any unauthorized purpose not expressly permitted by the ATI Terms and Conditions.  *Id.* As a matter of law, these measures are sufficient to maintain the trade secrets in the ATI Practice Exams. *Pre-Paid Legal Servs., Inc. v. Harrell*, No. CIV.06-019JHP, 2008 WL 111319, at *11

(E.D. Okla. Jan. 8, 2008) ("Confidentiality agreements provide evidence of reasonable efforts to maintain secrecy." (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993); *Hexacomb Corp. v. GTW Enters., Inc.*, 875 F.Supp. 457, 463 (N.D. Ill. 1993))).

*Second*, the fact that ATI has many authorized users who have securely accessed the ATI Practice Exams after agreeing to the ATI Terms and Conditions does not defeat trade secret protection.  *See* Mot. at 9; *see also Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. C-11-06268 JCS, 2012 WL 1670163, at *15 (N.D. Cal. May 14, 2012) (denying challenge to trade secret claim where defendant alleged that trade secret was "widely distributed," because the trade secrets were distributed under protections of confidentiality:  the "trade secrets at issue are *not* by necessity available to the public once the software (or the equipment containing it) is placed on the market; rather they can only be accessed by authorized individuals by entering a password"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1254 n.25 (N.D. Cal. 1995) ("The notion that the Church's trade secrets are disclosed to thousands of parishioners makes this a rather unusual trade secrets case.  However, because parishioners are required to maintain the secrecy of the materials, . . . the court sees no reason why the mere fact that many people have seen the information should negate the information's trade secret status."); *SmokEnders, Inc. v. Smoke No More, Inc.*, No. 73-1637, 1974 WL 20234, at *12 (S.D. Fla. Oct. 21, 1974) ("A trade secret owner does not lose his right by communicating the results to persons; even if many, in confidential relations to itself, under a contract not to make public." (citing *Chicago Bd. of Trade v. Christie G & S Co.*, 198 U.S. 236 (1905))).

None of the cases cited by Defendant is on point here.  In *Bison Advisors LLC v. Kessler*, the District of Minnesota held that a confidentiality agreement between two individuals was not sufficient to maintain the secrecy of the alleged trade secret between those two individuals, when

the party asserting the trade secret had done nothing else to maintain its secret nature.  No. 14-
3121(DSD/SER), 2016 WL 4361517 at *4 (D. Minn. Aug. 12, 2016); *see also RING Computer
Sys. Inc. v. Paradata Computer Networks, Inc.*, No. C4-90-889, 1990 WL 132615, at *2 (Minn.
Ct. App. 1990) (where plaintiff had taken no other measures to protect its trade secrets);  *Fire
'Em Up, Inc. v. Technocarb Equipment Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) (same);
*Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 831 (E.D. Wis. 2012) (same), *Opus
Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2018 WL 1156246, at *3
(N.D. Ill. Mar. 5, 2018) (same).  In fact, in *Bison Advisors*, information related to the trade secret
was routinely shared between the parties.  2016 WL 4361517 at *1.

In contrast, ATI took specific measures beyond the ATI Terms and Conditions to
maintain the secrecy of the ATI Practice Exams.  The ATI Practice Exams were deposited
securely with the Copyright Office.  Dkt. No. 299-8 (Exhibit H in Support of Defendant's
Motion for Summary Judgment) at 4–5.  Only users with ATI access credentials are able to
access the ATI Practice Exams through logging into their ATI user accounts.  SODF ¶¶ 1, 4, 5.
Further still, ATI maintains a Test Security Department whose function includes maintaining the
integrity of the ATI Practice Exams and ATI Proctored Exams by investigating reports of testing
irregularities.  *Id.* ¶ 17.  Defendant cites to *Electro-Craft Corp. v. Controlled Motion, Inc.*, but
the facts there are readily distinguishable.  Mot. at 12.  There, the plaintiff admitted that it had no
"meaningful security provisions" and merely had an intention to keep its data and processes
secret.  332 N.W. 2d 890, 901 (1983).  But as previously established, ATI maintains meaningful
security provisions to maintain the secrecy of its practice exams by limiting their accessibility to

ATI users who have logged into their profiles after affirming the confidentiality obligations in the ATI Terms and Conditions.[3]

*Third*, Defendant's argument that the ATI Practice Exams should not have been securely deposited with the Copyright Office, *see* Mot. at 9–11, is irrelevant for present purposes.  Most importantly, Defendant does not dispute that, in fact, the ATI Practice Exams were deposited with the U.S. Copyright Office using the secure deposit procedures, (*see, e.g.*, 37 C.F.R. § 202.20)—*i.e.*, they were not deposited publicly.  *Id.*  Whether ATI was entitled to securely deposit its practice exams—ATI believes and contends that it was—does not diminish the *fact* that the ATI Practice Exams were deposited at the Copyright Office in a secure manner, thereby maintaining their confidential nature and not destroying their status as trade secrets.  *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *8 (S.D.N.Y. Dec. 5, 2016) ("Such [secure deposit] procedures provide for redactions, *inter alia*, in order to protect trade secret material.").  Defendant again mischaracterizes the ATI Practice Exams arguing that "none of ATI's practice exams meet [*sic*] the definition of a secure test because they were marketed to the public on the Internet."  *Id.* at 10.  However as demonstrated above, *supra*, the ATI Practice Exams were not "marketed to the public on the Internet."  *See also* SODF ¶¶ 1, 4, 5.  This is just Defendant playing fast and loose with the evidentiary record.  The ATI Practice Exams are *only* available to users who log into ATI's website with access credentials issued after they agree to the ATI Terms and Conditions.  *Id.*  The ATI Practice Exams were distributed and

---

[3] Defendant argues that ATI supposedly has not enforced its trade secrets in the Practice Exams and that that undermines ATI's trade secrets in the Practice Exams.  Mot. at 12–13.  The record does not support that contention; specifically, the record does not support Defendant's suggestion that anyone else has done what Defendant admits having done here, *i.e.*, taken multiple Practice Exams after graduating from nursing school specifically for the purpose of making videos telling viewers what they will see on their ATI Practice Exams.

used in such a manner that ownership and control of copies remained with ATI.  *See* 37 C.F.R. § 202.20.

Finally, Defendant's Motion appears to take issue with the fact that, "[o]n the last day of discovery," ATI supplemented its trade secret claim to include ATI Practice Exams.  Mot. at 9. As Defendant acknowledges, after motion practice where Defendant had a full opportunity to argue her side of the issue, Judge Gale granted ATI leave to file the Amended Pretrial Order in June to include this claim.  *Id.*; Dkt. No. 289 (Memorandum and Order).  Defendant's attempt to re-argue that motion should be ignored.  Pursuant to Local Rule 72.1.4 and Fed. Civ. P. 72(a), Defendant had 14 days following the issuance of the Amended Pretrial Order to file a motion to object to any portion of the Order.  Defendant could have done so, but did not.  Now, Defendant cannot revive a complaint about the Amended Pretrial Order that Judge Gale issued when she never filed any objections to it.  In addition, ATI's original Complaint discussed the ATI Practice Exams and even attached the copyright registrations relating to those exams.  *See* Dkt. No. 1 (Complaint) ¶¶ 34, 35; *see also* Dkt. No. 1-3 (Exh. 3 to Complaint).  With full awareness of what she had done, Defendant had the entire discovery period to try to defeat the trade secret status of those ATI Practice Exams.  Indeed, she propounded discovery to do so.  *See* Schuman Decl., Exh. 7 (Defendant's Second Set of Interrogatories Directed to Plaintiff dated Oct. 9, 2020) (Interrogatory No. 11 seeking the title, date, and form identifier of the ATI Practice Exams; whether ATI Practice Exams disclosed ATI Proctored Exam answers; and the number of students who have viewed or taken the practice exam question(s)).  Therefore, Defendant's gripe about Magistrate Judge Gale's Order is badly misplaced at this stage of the case.

### 2. Defendant's Motion Directed to the ATI Proctored Exams Should Be Denied.

Defendant's Motion makes two primary arguments with respect to the ATI Proctored Exams:  (1) that the items in the ATI Proctored Exams are not trade secrets, and (2) that Defendant did not improperly disclose the ATI Proctored Exam trade secrets in her videos.  Mot. at 13–27.  Both arguments should be rejected.

### a. The ATI Proctored Exam items Are ATI's trade secrets.

Defendant's argument that the ATI Proctored Exam items are not entitled to trade secret protection because they are just "nursing facts" should be rejected.  *Id.* at 13–15.  Again, Defendant mischaracterizes ATI's claim in order to try to defeat it.  As ATI has made clear throughout this case, it is not claiming trade secret protection in any nursing fact; rather ATI is claiming—and has established—trade secrets in the specific *test items* on the ATI Proctored Exams, *i.e.*, the specific combinations of *questions and answers*, and the presentation of those question/answer sets, in the ATI Proctored Exams.  SODF ¶¶ 12, 13.  ATI's Complaint alleged as much, from day one.  *See* Dkt. No. 1 ¶ 63 ("In addition to infringing the ATI Registered Copyrights, Parkes' Videos also use ATI's trade secrets, specifically, the proprietary *questions and answers* from the ATI Proctored Exams." (emphasis added)); *id.* ¶ 102 ("Parkes misappropriated ATI's trade secrets in violation of Kan. Stat. Ann. § 60-3320, *et seq.* by improperly using the *questions and answers* in ATI Proctored Exams in her Videos without ATI's authorization or consent." (emphasis added)); *id.* ¶ 114 (same, under DTSA).

ATI's position has also been consistent throughout this litigation since it filed its Complaint.  *See* Dkt. No. 14 (Memorandum in Support of Plaintiff Assessment Technologies Institute, LLC's Motion for Preliminary Injunction) at 20 ("The questions and answers on ATI's Protected Exams are ATI trade secrets.").  For instance, Defendant cross-examined ATI's

witness, Dr. Jerry Lee Gorham, and pushed him to testify as to what ATI understood to be protectable in its ATI Proctored Exams:



Schuman Decl., Exh. 3 at 90:11–91:2) (emphasis added).  During his deposition, Dr. Gorham distinguished the test item (ATI's trade secret) from the nursing fact (no one's trade secret):



Schuman Decl., Exh. 4 at 171:21–172:3 (emphasis added).

Defendant's attempt to reframe the ATI Proctored Exam items as mere nursing facts is directly at odds with what this Court has previously—albeit preliminarily—found to be the trade secrets at issue in this case.  Dkt. No. 59 (Order on Preliminary Injunction) at 13–17.  In the Court's Order on ATI's Motion for Preliminary Injunction, the Court explained that ATI trade secrets are *not* merely nursing facts presented in its proctored exams; rather, it is the presentation of those nursing facts, as tested on ATI Proctored Exam, that is afforded trade secret protection:

The Court finds, as Dr. Gorham testified, that Parkes is not just teaching nursing facts in these videos. Rather, Parkes' videos focus on the key to a specific test item rather than the subject-matter generally. For example, with respect to ██████ Parkes points out the answer to the ATI question—████████████—rather than other information important ███████ As Dr. Gorham testified, there are other important nursing facts surrounding ████ including that a patient needs to be ████ because it allows doctors to ████████ ████████████████ While Parkes mentions ████████████ she does not discuss why it is important medically, as she does with ████████████

*Id.* at 17.

Both DTSA and KUTSA "broadly define[]" a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as: (1) the owner of the trade secret has taken "reasonable measures to keep such information secret" and (2) such information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by," another person. 18 U.S.C. § 1839(3)(B); *see also* Kan. Stat. Ann. § 60-3320(4). Consistent with this "broad" statutory definition, other courts confronted with the same set of circumstances have also held exam items are entitled to trade secret protection. For instance in *American Registry of Radiologic Technologists v. Bennett*, the plaintiff, an organization that develops and administers examinations for individuals seeking certification in several fields of medical radiologic technology, asserted trade secret protection in the particular question and answer sets presented on their licensing examinations. 939 F. Supp. 2d 695 (W.D. Tex. 2013). The defendant started a test preparation company, and created and sold test preparation materials intended to help students pass that licensing exam. *Id.* at 700. The plaintiff alleged that defendant improperly used plaintiff's exam materials to create and sell those test preparation materials. *Id.* at 710–11. In arguing otherwise, the defendant there levied the same argument that Defendant levies here:

that the plaintiff's exams were merely comprised of public information, available to anyone who

seeks to learn medical facts.  The *Bennett* Court rejected this argument:

> [Defendant] contends that Plaintiff's Examination questions are not "trade secrets" because "[p]ublic libraries, encyclopedias, the Internet, and a plethora of other sources provide identical questions . . . and not one single item that is included for testing on Plaintiff's examinations are not available to the public in one or more of these public sources." . . . [Defendant] does not provide any evidence to support this contention, and the Court finds it wholly unconvincing.  ***Although the knowledge tested on Plaintiff's Examinations may be widely available, Defendant has provided the Court with no reason to believe that the precise questions Plaintiff has expended money to formulate are in the public domain.***  The Court concludes that Plaintiff's Examination questions constitute trade secrets.

*Id.* at 711–12 (emphasis added).  *See also In re Frye*, Adv. No. LA 07-01150-BB, 2008 WL

8444822, at *7 (B.A.P. 9th Cir. 2008) (considering matter in which defendant "misappropriated

[the plaintiff's] trade secret information, the protected nursing concept examination questions

that had been registered with the U.S. Copyright Office under special provisions for secure

tests," and affirming damages against defendant); *State Regulatory Registry, LLC v.

Bartholomew*, No. 17-CV-01834-PAB-NRN, 2019 WL 7290934, at *12 (D. Colo. Sept. 27,

2019) (examination questions on national licensing examination testing the competency of

potential mortgage loan originators subject to trade secret protection under DTSA).

### b.   Defendant misappropriated ATI's trade secrets.

Misappropriation may be shown by either improper acquisition, or improper use or

disclosure.  *See* 18 U.S.C. § 1839(5)(A);[4] Kan. Stat. Ann. § 60-3320(2)(i); *see also Miller*, 380 F.

---

[4] DTSA defines "misappropriation" as follows:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; *or*
> (B) disclosure *or* use of a trade secret of another without express or implied consent by a person who—
> > (i) used improper means to acquire knowledge of the trade secret;
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

Supp. 3d at 1148 (misappropriation requiring showing of "acquisition, use, *or* disclosure of the

trade secret without consent" (emphasis added)); *see also In re Hardesty*, 190 B.R. 653, 655 (D.

Kan. 1995) ("A disjunctive 'or' ordinarily means that the conditions stand on equal footing and

that compliance with any one condition satisfies the requirement." (citing *Kiernan v. United

States R.R. Retirement Bd.*, 698 F.2d 1067, 1072 (10th Cir. 1983))).

        Defendant argues that she did not misappropriate those trade secrets because, *first*, she

did not acquire any trade secret information through any improper means, and *second*, she did

not improperly disclose any trade secret information because that information already has been

presented on ATI Practice Exams and ATI Review Modules.  Mot. at 13, 16–27.  Both

arguments fail and should be rejected.

        *First*, with respect to improper acquisition of ATI's trade secrets, it is undisputed that

Defendant accessed the ATI's exam materials repeatedly in 2015.  Parkes Depo. Tr. at 48:4–8;

54:1–10.  Defendant has submitted a self-serving declaration asserting that she did not remember

what was on those exams when she started making her videos.  *See* Dkt. No. 300 (Declaration of

Cathy Parkes in Support of Defendant's Motion for Summary Judgment) ¶¶ 9, 13, 16, 23, 29, 31,

---

                (I) derived from or through a person who had used improper means to
                acquire the trade secret;
                (II) acquired under circumstances giving rise to a duty to maintain the
                secrecy of the trade secret or limit the use of the trade secret; *or*
                (III) derived from or through a person who owed a duty to the person
                seeking relief to maintain the secrecy of the trade secret or limit the use of
                the trade secret; *or*
           (iii) before a material change of the position of the person, knew or had reason to
           know that—
                (I) the trade secret was a trade secret; and
                (II) knowledge of the trade secret had been acquired by accident or
                mistake;

18 U.S.C. § 1839(5) (emphasis added).  KUTSA's definition is substantively identical.  *See* Kan.
Stat. Ann. § 60-3320.

33, 37.  Defendant's declaration is not competent evidence supporting her summary judgment

motion.  *See Digital Ally, Inc. v. Util. Assocs., Inc.*, No. 14-2262-CM, 2017 WL 1197561, at *11

(D. Kan. Mar. 30, 2017), *aff'd*, 882 F.3d 974 (10th Cir. 2018) (on summary judgment, self-

serving declaration offered by plaintiff's CFO in support of plaintiff's claims of liability and

damages deemed improper hearsay, and inadmissible).  The statements that Defendant has made

in her declaration are inadmissible, because they are hearsay.  Fed. R. Evid. 801–02.

Other evidence shows that Defendant obtained ATI's trade secrets after taking the ATI

Proctored Exams after graduating from nursing school.  Specifically, during Defendant's

deposition, she testified that for periods of time long after she graduated from CSUSM in

December 2015, she continued to receive ATI Proctored Exam and/or ATI Practice Exam

questions and answers from nursing students who told her what they saw when they took those

ATI exams.  SODF ¶ 8.  Defendant testified that she reviewed these tips from students, gathered

them, and copied them onto a working document that she kept for her own records.  *Id.*; *see also*

Schuman Decl., Exh. 1 at 266:23–267:7.  She further testified that she referred to this working

document when making her videos.  Schuman Decl., Exh. 1 at 267:16–21; 268:20–269:5.

For instance, one of the comments Defendant received from a viewer explained that the

viewer saw an ATI question and answer set regarding ███████████████████

███████  Schuman Decl., Exh. 2 at 1 ("████████████████████████

████████████████████████████████████████████████████

███████████████████████████").  Defendant preserved this specific

feedback in her records:

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████



Schuman Decl., Exh. 1 at 269:21–270:6.

As another example, Defendant's working document preserved another viewer's comment about ██████████████████████████████████████ ████████ Schuman Decl., Exh. 2 at 1.  Again, Defendant testified that she copied this viewer's comment in her working document, understanding that it was "█████" a question the viewer saw on an ATI exam:



Schuman Decl., Exh. 1 at 271:19–272:12.

As yet another example, another comment reflected a question that a viewer saw on their ATI exam, and again, Defendant confirmed that she preserved the viewer's comment in her

working document for use in making her YouTube videos.  Schuman Decl., Exh. 2 at 2.  The

viewer had a question regarding 

Schuman Decl., Exh. 1 at 273:6–16.  By Defendant's own admission, she knew that she was

being passed test items on ATI's exams, whether its ATI Proctored Exams or its ATI Practice

Exams.  In both instances, as explained in Sections III.A.1. and III.A.2., *supra*, they constitute

ATI trade secrets.  Nevertheless, Defendant proceeded to take note of that information and use it

to make her videos.  *Id.* at 267:2–21; 268:20–269:5; 275:20–23.  Moreover, Defendant knew or

should have known that her acquisition of ATI trade secrets was done by improper means.

Defendant registered for an ATI user account to access ATI materials, including the ATI Practice

Exams and ATI Proctored Exams.  Dkt. No. 28-1 (Declaration of Cathy Parkes in Support of

Opposition to ATI's Motion for Preliminary Injunction) ¶ 19.  To do so, Defendant agreed to the

ATI Terms and Conditions.  *Id.*  Those terms include express confidentiality provisions that

required Defendant to "not disclose any portion of ATI Products to any other person or entity,"

and to "not copy . . . or create any derivative works of or based on the ATI Products."  *See* Dkt.

No. 14-10 at 2–3.  In addition, Defendant also knows that she had to have an authorized account

with ATI (*see* Schuman Decl., Exh. 1 at 32:8–21), that she had to log in to access ATI Proctored

Exams or ATI Practice Exams (*see* Dkt. No. 28-1 ¶ 19), and that ATI Proctored exams are

further administered under secure testing conditions precisely to guard against improper

disclosure (*see* Schuman Decl., Exh. 1 at 36:18–37:2). This evidence refutes Defendant's self-serving declaration.

*Second*, Defendant's argument that the Proctored Exam items are disclosed on Practice Exams or in other ATI Products (*i.e.*, quizzes in the Review Modules) is unsupported by the record evidence. Mot. at 15–27.

To the extent Defendant claims that ATI Proctored Exam test items are disclosed on ATI Practice Exams, for the reasons explained in Section II.A.1., *supra*, those practice exams are also trade secrets for which ATI maintains their secrecy pursuant to DTSA and KUTSA.

But, even more importantly, Defendant fails to show that any ATI Proctored Exam test items are disclosed in any other ATI Products. As support for her argument, Defendant relies principally on her Exhibit A. Mot. at 15–16; Dkt. No. 299-2 (Exhibit A to Parkes Declaration in Support of Motion for Summary Judgment). However this exhibit does not show that any ATI Proctored Exams test items are disclosed anywhere else.

For example, Defendant argues that the ATI Proctored Exam, RN Comprehensive Predictor 2010 Form C – (4C-120) tests the same information as the ATI Practice Exam, RN Capstone Content Review Adult Medical Surgical 2. *Id.* at 1. In both, Defendant points out that

████████████████████████████████████████████████████

████████████████████████  *Id.* That is the nursing fact. However, in drawing this comparison, Defendant ignores the other portions of the question/answer set that comprises the test item as a whole. For instance, Defendant ignores the other intentionally incorrect answer choices (*i.e.*, the distractors) that are presented concurrently with the correct answer.

In fact Defendant deposed ATI's witness, Dr. Gorham ***about each of the 26 test items that appear on Defendant's Exhibit A***, including this particular test item. *See generally*

Schuman Decl., Exh. 4.  As to this test item specifically, Dr. Gorham testified that it was improper for Defendant to focus myopically on the nursing fact and ignore the remainder of the test item.  *Id.* at 168:10–23.  Further, Dr. Gorham also explained that, although Defendant could have highlighted any other nursing precautions for patients preparing for ████, Defendant chose to highlight, ***first***, the fact that ██████████████ should be done in preparation for the procedure:



*Id.* at 168:10–23; 169:2–19 (emphasis added).

As further example, Defendant points to the ATI Proctored Exams, RN Comprehensive Predictor 2013 Form A – (5470798) and RN Comprehensive Predictor 2013 Form E (4B-344),

which test ███████████████████████████████████████████████

████████████████. *See* Dkt. No. 299-2 at 2.  The correct answer is "██████████████████

████" *Id.*  Defendant then draws the comparison to ATI Practice Exam, ATI Comprehensive

NCLEX-RC Review 18th Edition:  Pharmacology in Nursing, which asks the following:  "██



████████████████████████████████████████████████████" *Id.*

(emphasis in Exhibit A).  The correct answer here is ████████. *Id.*  Defendant also draws the

comparison to the ATI Practice Exam, RN Maternal Newborn Online Practice 2019 A, which

asks the following, "███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████" *Id.* (emphasis in Exhibit A).  The correct

answer, again, is ████████ *Id.*

These questions test similar nursing facts.  However, Defendant's argument that these

questions all test the same underlying nursing subject matter is misleading, and wrong.  Again,

Defendant examined ATI's witness, Dr. Gorham *on this very example*, and he testified why

Defendant's comparison fails:







Schuman Decl., Exh. 4 at 181:1–186:5 (emphasis added).  Dr. Gorham's testimony is consistent

with what ATI has claimed to be its trade secrets throughout this litigation—that is, the *test items*

that are comprised of the question and answer sets, along with the presentation of that

information.  ATI does not claim nursing facts as trade secrets.

As ATI showed at the preliminary injunction stage, and as the record evidence still

shows, Defendant tips the answers to the ATI Proctored Exam items in her videos.[5]  Defendant

---

[5] Defendant cannot avoid liability for trade secret misappropriation by arguing she does not
disclose the entirety of the trade secret test item in her videos.  Defendant is liable for trade
secret misappropriation for using any part of ATI's trade secrets in her videos.  *See Bennett*,
2013 WL 4520533, at *4 (finding the defendant liable for trade secret misappropriation, where
defendant was prohibited from "disclosing information *concerning any portion* of a future,

hints, or highlights things that are "really important for you to know," (Dkt. No. 299-2 at 2),

answers that students should select "if you see a test question with these different findings for a

patient," (*id.* at 3), answers that "I would definitely be familiar with," (*id.* at 4), what is "super

important for your test," (*id.* at 5), the things "I would definitely remember," (*id.* at 6), the

information that is "the most important," (*id.* at 7), and so on.  As Dr. Gorham explained during

his testimony, such disclosure harms ATI:



Schuman Decl., Exh. 3 at 97:3–25 (emphasis added).  Defendant's argument that she is merely

reciting nursing facts when she says these things is disingenuous and ignores her pattern and

practice of underscoring, consistently, the correct answers to items on the ATI Proctored Exams.

---

current, or previously administered examination" (emphasis added)); *see also* Dkt. No. 14-10
(ATI Terms and Conditions stating that "[y]ou agree that, except for data stored on ATI Products
which comprises your student record to which you are entitled access under applicable law, *you
will not disclose any portion of ATI Products to any other person or entity*, as ATI Products
contains the confidential and proprietary material of ATI and doing so would result in serious
financial harm to ATI, for which you may be held personally liable." (emphasis added)).

**B.  Defendant's Motion Directed To ATI's Breach of Contract Claim Should Be Denied.**

In her Motion, Defendant does not deny or dispute at all that she formed a binding contract with ATI to maintain the confidentiality of ATI's products, or that she breached that contract.  Defendant argues only that that ATI cannot recover restitutionary damages or disgorgement and, therefore according to Defendant, ATI's breach of contract claim fails.  Mot. at 27–29.

As ATI explains in its own summary judgment motion, ATI is "not required to prove monetary damages to prevail on its breach of contract claims" and "may . . . seek injunctive relief for the alleged breach" instead.  *Miller*, 380 F. Supp. 3d at 1152.  In *Miller*, this Court held that the breach of non-disclosure provisions, non-competition provisions and non-solicitation provisions entitled Plaintiff to injunctive relief.  *Id.*  This Court rejected the same argument that Defendant makes in her motion, stating that "if damages at law cannot adequately compensate the injury sustained from the breach or cannot be reasonably measured, then the remedy at law is inadequate and injunctive relief . . . may be appropriate because of irreparable injury."  *Id.* (quoting *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353–54 (10th Cir. 1989).  The harm suffered in *Miller*—much like in this case— consisted of the loss of customers, the loss of good will, and the loss of competitive advantage as customers were induced away or lost as a result of Defendant's breach.  *Id.*

The bulk of Defendant's argument centers on whether ATI is entitled to seek disgorgement of profits or restitution as a remedy for Defendant's breach of contract. Defendant's arguments are premised on an apparent misunderstanding of the relief ATI seeks. The only relief ATI seeks for Defendant's breach of contract is ***injunctive relief***, not disgorgement of profits or restitution.  *See* Dkt. No. 293 at 19-20.  The cases cited by Defendant

have nothing to do with injunctive relief.  *See, e.g.*, *Perry v. Saint Francis Hospital and Medical Ctr., Inc.*, 886 F. Supp. 1551, 1564 (D. Kan. 1995) (regarding a widow's right to her husband's deceased body); *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997) (relating to a claim for unjust enrichment, not injunctive relief); *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1039 (D. Kan. 2018) (same).

### C.  Defendant's Motion Directed To ATI's Unfair Competition Should Be Denied.

Defendant argues that ATI's unfair competition claim is preempted by both its copyright and its trade secret claims.  Mot. at 29–30.  Defendant overlooks the fact that, under Kansas law, the showing for unfair competition requires an "extra element" that is not present in either a copyright infringement claim, or a trade secret claim.  Here, because ATI has pled and proven that extra element, there is no preemption.

For the issue of copyright preemption of an unfair competition claim, *Kindergartners Count, Inc. v. Demoulin* addresses this issue squarely.  171 F. Supp. 2d 1183, 1191 (D. Kan. 2001).  There, defendants raised the same argument that Defendant raises here—to wit, they sought to dismiss an unfair competition claim, arguing that it was "premised on nothing more than allegations of unlawful taking and distribution of the same materials underlying the copyright claim."  *Id.* at 1190.  In analyzing this argument, the court explained that "[i]n deciding the preemption issue, courts must analyze the theory of unfair competition being asserted for whether it contains a qualitatively different extra element that distinguishes it from a copyright claim."  *Id.* at 1191 (citing *Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993)).  The *Demoulin* court went on to explain that "[e]xamples of extra elements in unfair competition claims that avoid preemption include:  breach of fiduciary duty,

breach of a confidential relationship, and palming off the defendant's products as those of the plaintiff's."  171 F. Supp. 2d  at 1191 (citing *Summit Mach.*, 7 F.3d at 1441; *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993); *Kane v. Nace Int'l*, 117 F.Supp.2d 592, 597–98 (S.D. Tex. 2000); *Rubin v. Brooks/Cole Publ'g Co.*, 836 F. Supp. 909, 923 (D. Mass. 1993)). In *Demoulin*, the court held that the unfair competition claim was not preempted:  "Proof of a confidential relationship and its breach are extra elements that distinguish this unfair competition claim from the copyright infringement claim."  171 F. Supp. 2d at 1192 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1165 (1st Cir. 1994); *Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993)).

So too here.  ATI's unfair competition claim is not preempted by its federal copyright claim.  ATI alleges, and has proven, the requisite "extra element"—a confidential relationship between ATI and Defendant based on Defendant's repeated acceptance of the ATI Terms and Conditions.  Defendant reviewed, and agreed, to the ATI Terms and Conditions that entrusted her with an obligation to keep confidential information she learned from ATI Products. Schuman Decl., Exh. 1 at 32:8–21; Dkt. No. 28-1 ¶ 19; SODF ¶¶ 1, 4, 5.  Defendant did so three times.  SODF ¶ 8.  She acknowledged those terms, not only when she created her ATI account and accessed ATI Products, but further also during each of the three times she took the ATI Proctored Exams in the Fall of 2015.  *Id.*  The existence of that confidential relationship with ATI, and her repeated breaches of that relationship, are the "extra elements" that preclude preemption based on ATI's copyright claims.

Defendant's preemption argument based on KUTSA fails for similar reasons.  The Kansas Supreme Court has held that unfair competition can be based on trade secret misappropriation:  "In an action to enjoin unfair competition arising by reason of the

30

unauthorized use of a trade secret, the plaintiff must establish (1) the existence of a trade secret used by plaintiff in its business or trade, (2) *a confidential relationship between the parties*, (3) disclosures made in confidence by plaintiff to defendant concerning the trade secret, and (4) an unauthorized use of those disclosures by the defendant." *Koch Eng'g Co. v. Faulconer*, 227 Kan. 813, 826 (1980) (emphasis added) (citing *Mann v. Tatge Chemical Co., Inc.*, 201 Kan. 326, 332, 440 P.2d 640 (1968); Restatement of Torts § 757 (1939)).

Applying *Koch Engineering*, ATI's unfair competition claim is not preempted by its KUTSA claim because ATI alleges and has proven the "extra element" of a confidential relationship between the parties.  As discussed above, ATI has shown that Defendant agreed to the ATI Terms and Conditions on several occasions.  SODF ¶ 8.  Those Terms and Conditions established a confidential relationship between Plaintiff and Defendant.  SODF ¶¶ 1, 4, 5.  Accordingly ATI's unfair competition claim is not preempted by KUTSA.

## IV.    <u>CONCLUSION.</u>

For the reasons set forth above, ATI respectfully requests an Order from the Court denying Defendant's Motion for Summary Judgment on First, Third, Fourth and Fifth Claims for Relief.

Dated: July 6, 2021                    Respectfully submitted,

                                      **STINSON LLP**

                                      /s/ *Robin K. Carlson*
                                      Timothy J. Feathers (KS Bar No. 13567)
                                      Robin K. Carlson (KS Bar No. 21625)
                                      1201 Walnut Street, Suite 2900
                                      Kansas City, MO 64106-2150
                                      Tel.: 816-691-2754
                                      Fax: 816-412-1134
                                      *timothy.feathers@stinson.com*

*robin.carlson@stinson.com*

and

**GOODWIN PROCTER LLP**

Brett M. Schuman *(Admitted Pro Hac Vice)*
Nicholas M. Costanza *(Admitted Pro Hac Vice)*
James Lin *(Admitted Pro Hac Vice)*
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel.: 415-733-6000
Fax: 415-677-9041
*bschuman@goodwinlaw.com*
*ncostanza@goodwinlaw.com*
*jlin@goodwinlaw.com*

I. Neel Chatterjee *(Admitted Pro Hac Vice)*
Andrew S. Ong *(Admitted Pro Hac Vice)*
601 Marshall Street
Redwood City, CA 94063
Tel.: 650-752-3100
Fax:  650-853-1038
*nchatterjee@goodwinlaw.com*
*aong@goodwinlaw.com*

*Attorneys for Plaintiff*
*ASSESSMENT TECHNOLOGIES INSTITUTE,*
*L.L.C.*