IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 19-2514-JAR-KGG |
| CATHY PARKES, | ) ) | |
| Defendant. | ) | |

**DEFENDANT CATHY PARKES' RESPONSE IN OPPOSITION TO ATI'S
MOTION FOR PARTIAL SUMMARY JDUGMENT**

COMES NOW Defendant Cathy Parkes ("Ms. Parkes") and hereby submits her Response in Opposition to ATI's Motion for Partial Summary Judgment.

## RESPONSE TO ATI'S STATEMENT OF FACTS

Ms. Parkes responds to ATI's statement of facts below with corresponding numbered paragraphs:

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.

5.      Undisputed.  However, the overwhelming majority of ATI's review modules are nursing facts that would be found in any nursing textbook or resource.  (Exh. 802, C. Parkes Decl. at ¶ 9).

6.      Undisputed.

7.      Undisputed for purposes of this summary judgment motion only.

8.      Disputed.  This factual assertion was not supported by admissible evidence.  For this assertion, ATI relied on its own Interrogatory answer which was not signed under oath by anyone who is competent to testify to the facts or has personal knowledge of the facts.  It also does not show that anyone signing it is competent to testify to the matters stated.  Thus, reliance on the Interrogatory answer violates Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d) and this Court's Summary Judgment Guideline Nos. 12 and 15.  Ms. Parkes objects to ATI's use of its own Interrogatory Answer.

9.      Disputed.  This factual assertion is not supported by admissible evidence.  For this assertion, ATI relied upon a declaration Mr. Williams-Abrams filed with its motion for preliminary injunction, but that declaration did not show how the witness had personal knowledge of the facts in the paragraph relied upon for this assertion.  This assertion also relies on ATI's Exhibit 22, but that

document was not properly authenticated. Mr. Schuman signed the declaration which merely said that that document was produced in the litigation by ATI, but it did not authenticate the document. Ms. Parkes objects to the use of Exhibit 22 and the portion of Mr. Williams-Abrams' declaration that does not show how he has personal knowledge of the facts asserted.

10. Disputed. This factual assertion relies on ECF Doc. No. 14-19 which does not exist. It also relies on ECF Doc. No. 14-10, which is not authenticated.

11. Undisputed as to the first two sentences of this assertion. The other sentences are disputed because they are based on unauthenticated and inadmissible documents. Mr. Schuman signed a declaration stating that Exhibits 23, 24 and 25 were produced by ATI in this action but his declaration did not authenticate the documents.

12. Undisputed.

13. Disputed. This assertion is not supported by any admissible evidence. The exhibits cited in this assertion were not authenticated. Mr. Schuman's declaration merely says they were produced by ATI.

14. Undisputed.

15. Undisputed for purposes of this Motion only.

16. Disputed as to the first two sentences. The first sentence is conclusory and not supported by any factual basis in violation of this Court's Summary Judgment Guideline No. 14. The second sentence is not supported by the citations it relies upon. Undisputed as to the second two sentences.

17. Undisputed.

18. Undisputed as to the second sentence. Disputed as to the first sentence because the cited references refer to proctored exams only, not practice exams.

19. Disputed. The reference to similar measures is not supported by the cited document. This assertion refers to an unauthenticated document and the statement that students are required to agree to the terms and conditions before accessing any practice exam is not supported by the cited document.

20. Undisputed as to the last two sentences. Disputed as to the first two sentences because they are not supported by the cited references.

21. Undisputed for purposes of this motion only.

22. Disputed. The documents relied upon are not properly authenticated and the dates referenced in this paragraph are not supported by any admissible evidence. ECF Doc. No. 14-10 is not authenticated and there is no evidence as to the date it was used. At his deposition, Dr. Gorham testified that he thought that document was used by ATI at the time of his deposition in 2020, but he did not know how long it had been used. (Exh. 803, Gorham Dep. at 146:11-147:2 ). Exhibits 28, 29 and 30 are identified in Mr. Schuman's declaration but there is no indication that he has any personal knowledge, or is competent to testify, about the authenticity of the documents or the use of those documents. His declaration as it related to the authentication of those documents violates Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d) and this Court's Summary Judgment Guideline Nos. 12 and 15. Ms. Parkes objects to that portion of Mr. Schuman's declaration and this Court should disregard it.

23. Undisputed that Cathy Parkes clicked the box agreeing to Terms and Conditions, but the substance of the Terms and Conditions are disputed. See paragraph 22 above.

24. Disputed. This assertion relies on an unauthenticated document, Exhibit 33. This exhibit is referenced in Mr. Schuman's declaration but there is no indication that he has any personal knowledge, or is competent to testify, about the authenticity of the document or the meaning of the document. His declaration as it related to the authentication of Exhibit 33 violates Fed.R.Civ.P.

56(c)(4), Local Rule 56.1(d) and this Court's Summary Judgment Guideline Nos. 12 and 15. Ms. Parkes objects to that portion of Mr. Schuman's declaration and this Court should disregard it.

25.     Undisputed as to the first sentence. The second sentence is disputed because it is not supported by the cited testimony. See also paragraphs 22-24 above.

26.     Disputed as to the 2016 Review Module, "RN Pharmacology for Nursing Edition 7.0," which Ms. Parkes purchased on January 26, 2019. Undisputed as to the remaining facts asserted.

27.     Undisputed.

28.     Disputed for the same reasons as paragraphs 22 and 24 above.

29.     Undisputed as to the first sentence. Disputed as to the second sentence because the facts are not supported by the cited testimony, which does not refer to Doc. No. 28-1.

30.     Disputed. Chief Digital Advisors, LLC started using the "Pass the ATI" dba in 2017 and it created the YouTube Channel and Pass the ATI-branded study cards. (Exh. 801, W. Parkes Decl. at ¶ 3).

31.     Disputed. Chief Digital Advisors, LLC stopped using the dba "Pass the ATI" and started using the dba "Level Up RN." (Exh. 801, W. Parkes Decl. at ¶ 1, 8).

32.     Disputed. Chief Digital Advisors, LLC, not Cathy Parkes, used the dba Pass the ATI. (Exh. 801, W. Parkes Decl. at ¶ 1; Exh. 802, C. Parkes Decl. at ¶1). Otherwise undisputed.

33.     Disputed because it is not supported by the cited evidence. Section II of the hard drive contains Revised Videos, and this fact refers to an Initial Video. Furthermore, there is no folder II(001) on the hard drive.

34.     Undisputed that in the first video of each playlist of the Initial Videos, Ms. Parkes stated generally that in the videos, she will go over portions of the ATI Review Modules, and undisputed that in four of the cited videos, Ms. Parkes commented that individuals using either edition

of the Review Module book could follow along with the videos. The remaining facts are disputed because they are not supported by the cited evidence.

35. Disputed as to the first sentence because it is not supported by the cited evidence. Undisputed as to the second sentence.

36. Undisputed that Ms. Parkes used her ATI Review Modules, some of which included some highlighting done by her, to create the Initial Videos. Disputed as to whether all of the highlighting was done by Ms. Parkes because that fact is not supported by the cited testimony. Rather, Ms. Parkes testified that she purchased some of the books used and not all of the highlighting was done by her. (Exh, 819, Cathy Parkes Dep. at 230, 240).

37. Undisputed.

38. Disputed as to the use of the word "immediately" because it is not supported by the cited evidence. Ms. Parkes testified that the videos were recorded between May and September, 2019. (Exh. 819, C. Parkes Dep. at 201). Defendant further disputes that the hard drive submitted by ATI contains a §II(J). Undisputed as to the remaining facts asserted.

39. Undisputed.

40. Disputed. Chief Digital Advisors, LLC, not Cathy Parkes, used the dba "Pass the ATI". (Exh. 801, W. Parkes Decl. at ¶ 1; Exh. 802, W. Parkes Decl. at ¶1). Undisputed as to the remainder of the facts asserted.

41. Disputed. Chief Digital Advisors, LLC, not Cathy Parkes, changed its dba to Level UP RN. (Exh. 801, W. Parkes Decl. at ¶ 1; Exh. 802, W. Parkes Decl. at ¶1). Undisputed as to the remainder of the facts asserted.

42. Undisputed.

43. Undisputed.

44.     Undisputed, but deny that the ATI review modules were the only source for any of the study card decks.  Ms. Parkes used numerous other sources to create the study card decks.   (Exh. 802, C. Parkes Decl. at ¶ 9(a)-(i); Exh. 838-847).

45.     Undisputed, but deny that the ATI review modules were the only source for any of the study card decks.  Ms. Parkes used numerous other sources to create the study card decks.   (Exh. 802, C. Parkes Decl. at ¶ 9(a)-(i); Exh. 838-847).

46.     Undisputed, but deny that all highlights were made by Ms. Parkes and deny that the ATI review modules were the only source for any of the study card decks.  See paragraph 36 and 45.

47.     Disputed because the cited testimony does not establish what explanatory examples ATI claims plaintiff copied.  Ms. Parkes used numerous other examples that are different from ATI's examples. (Exh. 802, C. Parkes Decl. at ¶ 15(a), (b); Exh. 872, 873).   It is disputed, and not supported by the cited testimony, that any of these examples "were original to ATI."  To the contrary, these are common examples that are found in other sources as well.  (*Id.*).

48.     Disputed because the quoted material is taken out of context.  In response to ATI's Request for Admission, Parkes responded: "Parkes admits that some of the material in the ATI review modules are copyrightable but deny that most of it is copyrightable.  Most of the ATI review modules contain nursing facts that are not copyrightable. The remainder of the Request is denied."  (Plaintiff's Exh. 31 at 3; Exh. 802, C. Parkes Decl. at ¶ 9(a)-(i); 12(a)-(h), Exh. 838-853).

49.     Undisputed that Ms. Parkes took the ATI Proctored Exam in October 2015 and November 2015.  Disputed as to the remainder of the first sentence because it is not supported by the cited testimony and Ms. Parkes testified multiple times that she took the Proctored Exam a third time but did not recall when.  (Exh. 819, C. Parkes Depo. at 47-48, 54).  Disputed as to the second sentence because it is not supported by the cited evidence.  Also see responses to paragraphs 11, 13.

50.     Disputed.  The access log referenced in this assertion is not authenticated.  See paragraphs 22 and 24 above.

51.     Disputed.  The referenced citations do not show that Ms. Parkes was referencing any proctored exams, and ATI has not identified any such proctored exams that are referenced in those video clips.

52.     Disputed.  The cited reference does not support the claim that Ms. Parkes was referring to an ATI exam or that the statements she made were the same as in the previous videos.

53.     Disputed.  The Access Log is not authenticated and should not be considered by the Court.  See paragraphs 22 and 24 above.

54.     Ms. Parkes admits that, in a video, she said:

- "So just know those classifications [of head wounds] because I have seen questions on ATI about those."  (Exh, 819, C. Parkes Dep. at 167);

-  "ATI loves to ask questions about nursing interventions during a seizure."  (Exh. 819, C. Parkes Dep. at 191)(Initial video);

-  "So one of the things that ATI likes to ask about are the differences between a stone on the left side versus the right side. . . ."  (Exh. 819, C. Parkes Dep. at 194); and

- "And then one of the other questions that I've seen on ATI quite a bit is Hemianopsia."  (Exh. 819, C. Parkes Dep. at 195).

Disputed as to the remaining assertions of this paragraph because they are not supported by the cited testimony.   None of the other cited testimony supports the allegations.

## MS. PARKES' STATEMENT OF ADDITIONAL
## MATERIAL FACTS IN DISPUTE

### Background

1.     Bill Parkes is the Chief Executive Officer of Chief Digital Advisors, LLC ("CDA"), a California limited liability company headquartered at Carlsbad, California, which does business under the name Level Up RN.  He is Cathy Parkes' husband.  (Exh. 801, William Parkes Declaration at ¶ 1).  Before doing business as Level Up RN, CDA used the name "Pass the ATI."  CDA began doing

business using that name in the Fall of 2017. (Exh. 801, W. Parkes Decl. at ¶ 3). Cathy Parkes is the Chief Educator of CDA. (Exh. 802, C. Parkes Decl. at ¶ 1).

2.     Cathy Parkes has a Bachelor of Science degree in Nursing from California State University San Marcos. She graduated at the top of her class in California State University San Marcos' Accelerated Bachelor of Nursing program with a 4.0 GPA. Upon graduation, she was awarded two of three awards granted to students in her class: The Kristian Schlief Spirit of Nursing Award and Outstanding Leadership Award. Since graduation, Ms. Parkes accumulated over five years of experience as a practicing nurse. She is also a Certified Wound Care Nurse and a Public Health Nurse. She still practices as a wound care nurse part time. She has been highly successful in her nursing career within the Scripps Health Care System. She was selected as "Nurse of the Year" in 2019 for ~~my~~ exceptional service and outstanding patient care. (Exh. 802, C. Parkes Decl. at ¶ 3).

3.     While Cathy Parkes was in nursing school at California State University, San Marcus ("CSUSM"), she tutored other students to help them pass the ATI predictive exam, which the students were required to pass to graduate. After Ms. Parkes graduated, she continued to tutor students at the school. Her tutoring eventually morphed into a series of videos that CDA posted on YouTube. In the original videos CDA posted in 2017 and 2018, Cathy taught material from ATI's review modules and referred to the review modules in the videos, giving attribution to ATI. By October 12, 2018, CDA had posted over 270 videos on YouTube. (Exh. 801, W. Parkes Decl. at ¶ 4).

4.     In May 2018, CDA began selling flashcards on its website. By October 12, 2018, CDA was offering for sale four sets of study cards on its website: Pharmacology for Nursing Students, Community Health Nursing Cards, Nutrition for Nursing and Nursing Fundamentals. (Exh. 801, W. Parkes Decl. at ¶ 5).

ATI's Admissions and Communications With Parkes

5.     ATI's Test Security Team is responsible for scanning the Internet almost every day to find material that is substantially similar to ATI's intellectual property so that they can work with the legal department to take it down. (Exh. 803, Gorham Depo. at 34:9-17). The Test Security Team is also responsible for finding the improper disclosure of ATI's proctored exam material. Jeff Marsh is

the Director of Test Security and supervises Karen Wood, the Test Security Administrator. (Exh. 804, Marsh Depo. at 8:4-6; 11:22-12:3; 13:2-16).

6.      Becky Pontes is the Senior Corporate Paralegal and Intellectual Property Specialist for Ascend Learning, ATI's parent company. (Exh. 805, Pontes Depo. at 8:12-15, 9:5-7). Christine Erickson is in-house counsel for Ascend Learning responsible for the ATI business unit. (Exh. 805, Pontes Depo. at 14:4-11).





---

[1] ATI has stipulated that documents it produced with its ATI bates number are authentic. (ECF No. 293 at 5).



---

[2] Ms. Darigan refused to state who asked her to buy the study cards based on the attorney-client privilege, so it is a reasonable inference that she was asked to do so by the legal department.



18.     On October 12, 2018, Becky Pontes, ATI's Senior Corporate Paralegal and Intellectual Property Specialist sent a cease and desist email to Cathy Parkes.  (Exh. 818).  Ms. Parkes forwarded the email to Bill Parkes on October 15, 2018.  (*Id.;* Exh. 801, W. Parkes Decl. at ¶ 6).   Christine

Erickson, in-house counsel for ATI, approved Ms. Pontes' email before it was sent. (Exh. 805, Pontes Dep. at 24:8-17).

19.     Ms. Pontes' email contained the subject "trademark infringement." In the email, Ms. Pontes asserted that Ms. Parkes was infringing ATI's trademarks in its name "ATI," and she asked that Ms. Parkes stop using "passtheati.com" on the Internet and social media. Ms. Pontes did not raise any concerns about the study cards CDA was selling on its website, or about the videos that it had posted on YouTube. (Exh. 818; Exh. 801, W. Parkes Decl. at ¶ 7).

20.     On October 16, 2018, Bill Parkes replied to Ms. Pontes' e-mail and expressed CDA's intent to comply with all ATI's demands. (Exhibit 818). The day before, Bill Parkes had removed "Pass the ATI" from CDA's website's banner image and began the process of rebranding its Facebook, Instagram, and YouTube presences. By October 18, 2018, six days after Ms. Pontes' sent her email to Cathy Parkes, Mr. Parkes had rebranded CDA's website from www.passtheati.com to the domain name of www.leveluprn.com, and had included a footer on the new website disclaiming any affiliation with ATI. (Exh. 801, W. Parkes Decl. at ¶ 8).

21.     On October 18, 2018, Mr. Parkes left a voicemail for Ms. Pontes to confirm that she received his October 16, 2018 e-mail, asking for confirmation that the changes CDA had made resolved all ATI's concerns. After leaving the voicemail, Mr. Parkes e-mailed Ms. Pontes to memorialize its contents. In response, Ms. Pontes indicated approval of the changes CDA had made. (Exh. 820; Exh. 801, W. Parkes Decl. at ¶ 9).

22.     On October 19, 2018, Mr. Parkes had a phone conversation with Ms. Pontes for about 15-30 minutes. He took notes during the phone call, which is his practice. (Exh. 821; Exh. 801, W. Parkes Decl. at ¶ 10). During that call, Ms. Pontes told Mr. Parkes the following:

- ATI believed that Cathy Parkes was helping students greatly.

- ATI knew that Cathy Parkes was not using ATI's content.

- ATI thought what Ms. Parkes was doing was awesome.

- People like Cathy Parkes, who teach a curriculum are good, because she was not teaching to the tests.

- ATI had reviewed the study cards and had no copyright concerns.

- Ms. Pontes had listened to a dozen of Ms. Parkes videos and Ms. Pontes thought Cathy was great. ATI would love to have Cathy as an instructor.

- After ATI started looking at Ms. Parkes' work product, ATI concluded that Cathy was helping many people and she is wonderful.

- Ms. Pontes loved the new name "Level UP RN."

- ATI did not see any copyright issues.

- Ms. Pontes said to tell my wife that she is doing a "fantastic job."

(Exh. 821; Exh. 801, W. Parkes Decl. at ¶ 10). At her deposition, Ms. Pontes did not deny making any of the above statements. (Exh. 805, Pontes Dep. at 36:3-43:23, 45:12-46:14). Ms. Pontes kept Christine Erickson, in-house counsel for ATI, apprised of her communications with Mr. Parkes. (Exh. 805, Pontes Dep. at 31:3-15).

23. After Mr. Parkes got off the phone with Ms. Pontes, he copied his notes into a text message and sent them to Cathy Parkes. Ms. Parkes responded that she was relieved to hear that ATI did not have a concern with the content she had created. (Exh. 822; Exh. 801, W. Parkes Decl. at ¶ 11).

24. Mr. Parkes did not hear from Ms. Pontes again until December 3, 2018. On December 3, Ms. Pontes e-mailed Mr. Parkes to notify him that Level Up RN's Privacy Policy, Terms of Services, and YouTube channel still included references to "Pass the ATI," and she requested that he remove them. Mr. Parkes replied to Ms. Pontes on the same day to inform her that he had removed the remaining references to ATI in the Privacy Policy and Terms of Services. Mr. Parkes had missed those references in the initial rebranding. He further noted that he had reviewed the Privacy Policy and Terms of Service on CDA's YouTube channel and had not found any references to ATI. He requested that Ms. Pontes "let me know where any reference remains on YouTube." After December 3, 2018, Mr. Parkes did not receive any further communications from Ms. Pontes. (Exh. 823; Exh. 801, W. Parkes Decl. at ¶¶ 12-13).







35.     Four days after Mr. Marsh sent the email referenced immediately above, on May 10, 2019, Cathy Parkes received a letter from Lawrence Robins, outside counsel for ATI, alleging that CDA's YouTube videos were infringing ATI's copyrights.  Mr. Robins complained that Cathy was going through each ATI nursing book chapter by chapter and he demanded that she remove the videos from YouTube and CDA's website.   Mr. Robins did not make any complaint about CDA's study cards. (Exh. 801, W. Parkes Decl. at ¶ 16; Exh. 836).

37.     On June 27, 2019, to satisfy ATI's concerns raised by Mr. Robins, CDA removed all videos of concern from its YouTube channel.  Starting that same day, and continuing thereafter, CDA uploaded over 200 new videos created by Cathy Parkes that made no reference to ATI or any of its materials.  All videos posted by CDA on YouTube have always been available to the public at no charge.  (Exh. 801, W. Parkes Decl. at ¶ 17).

38.     The first time ATI made any complaint about the study cards created by Cathy Parkes was when it filed this lawsuit on August 27, 2019.  On December 9, 2019, after this Court enjoined seven of the nine study card decks created by Cathy Parkes, CDA ceased sales of those seven study card decks.  By July 2020, CDA ceased sales of the other two study card decks.  (Exh. 801, W. Parkes Decl. at ¶ 18).

<u>Parkes' Reliance on ATI's Statements</u>

39.     Between Mr. Parkes' October 2018 communications with Ms. Pontes and Mr. Robins' May 2019 cease and desist letter regarding the videos, Cathy Parkes created, and CDA sold, five more study card decks:  Medical Surgical Nursing, Maternal Newborn Nursing, Mental Health Nursing, Pediatrics Nursing and Nursing Leadership.  In addition, during that time, Cathy created an additional approximately 90 videos that CDA posted on its YouTube channel.  (Exh. 801, W. Parkes Decl. at ¶ 15).

40.     Cathy Parkes and CDA fully relied on ATI's statements, through Ms. Pontes, that ATI did not object to the content Ms. Parkes had created.  And, they relied on Ms. Pontes' statement that ATI approved of the content and encouraged Ms. Parkes to create more content.  (Exh. 802, C. Parkes Decl at ¶6, 7).  Neither Mr. nor Ms. Parkes had any prior experience with copyright issues, and they had no contrary advice from a lawyer or anyone else that they were violating any of ATI's copyrights or improperly disclosing test information.  (Exh. 802, C. Parkes Decl. at ¶ 7).  Based on Ms. Pontes' overwhelmingly positive feedback that "Cathy is doing a great job," "she is wonderful," and they loved the new name Level Up RN, Mr. and Ms. Parkes felt exceedingly confident that they were doing the right thing, and doing so with the full support of, and validation from, ATI.  (*Id.*)  Had Ms. Pontes told Mr. Parkes in 2018 that ATI viewed the study cards or videos as violative of ATI's intellectual property, Cathy Parkes and CDA would have immediately taken steps to remove any objectionable content.  They never had any intent to violate ATI's, or anyone else's, intellectual property.  (Exh. 801, W. Parkes Decl. at ¶ 13, Exh. 802 C. Parkes Decl. at ¶ 6, 7).  Instead, given that Ms. Pontes told Mr. Parkes, in no uncertain terms, that ATI fully approved of the videos and study cards that Ms. Parkes had created, Ms. Parkes moved forward to create more study cards and videos, and CDA invested hundreds of thousands of dollars to produce, market and sell those study cards.  (Exh. 801, W. Parkes Decl. at ¶¶ 14, 19).

41.     Between October 18, 2018 and August 27, 2019, CDA invested over $900,000 in creating, marketing, advertising, selling and fulfilling orders for the flash card decks created by Cathy Parkes.  That figure does not include any officer salaries.  During that period, Cathy Parkes spent

hundreds of hours creating the additional study cards and videos. (Exh. 801, W. Parkes Decl. at ¶ 15, 19; Exh. 802, C. Parkes Decl. at ¶ 6).

42.     Ms. Parkes created the Study Cards and videos because she has a passion for teaching, helping nursing students and nurses advance their knowledge and their ability to help others, and for improving nursing care overall. It is critically important to her that she is allowed to continue to teach the tens of thousands of nursing students and nurses that benefit from her study cards and videos. She did not intend, and has never intended, to violate ATI's intellectual property rights. (Exh. 802, C. Parkes Decl. at ¶ 4).

43.     Nursing school can be a brutal process, as nursing students are expected to learn and memorize a daunting amount of information in a very short amount of time. Ms. Parkes started her teaching journey by helping her fellow classmates while in nursing school, and she has continued to teach and help nursing students and nurses ever since. She has always been committed to teaching and lifting up those around her. She focuses on helping students understand new or difficult concepts, which in turn gives them the confidence they need to be successful in nursing school and as a practicing nurse. Knowing that she helps so many students on their journey to becoming nurses is why she creates content. (Exh. 802, C. Parkes Decl. at ¶ 5).

<u>The Differences Between ATI's Modules and Ms. Parkes' Content</u>

44.     LevelUpRN's flash cards and ATI's Review Modules contain virtually all nursing facts, that can be found in almost every nursing textbook. While Ms. Parkes used ATI's modules as a source for the study cards, the modules were not the only source of information. Ms. Parkes used many sources to create each deck of Study Cards, including her nursing school textbooks, her nursing school notes, her experience as a practicing nurse, and various online sources. Many of the online sources Ms. Parkes used are publicly available. (Exh. 802, C. Parkes Decl. at ¶ 9(a) – (i); Exh. 838-847).

45.     Virtually all the information in the videos are nursing facts that can be verified from well recognized sources. Ms. Parkes created the Revised Videos in 2019 extemporaneously, without a script. She relied on her study cards and her general nursing knowledge to create the videos and

included her own mnemonics and other tips and tricks to help students remember the nursing facts. (Exh. 802, C. Parkes Decl. at ¶ 11).

46.     The study cards and videos contain virtually all nursing facts, and the facts are presented in the study cards and videos in a standard format, which is not unique to ATI, but rather is used by many other nursing textbooks and resources.  (Exh. 802, C. Parkes Decl. ¶ 12 (a)-(f); Exh. 848 -853).

47.     There are substantial differences in the selection of material between ATI's 2013 and 2016 Review Modules, on the one hand, and LevelUpRN's study cards and videos, on the other hand. ATI's Review Module is a textbook, going into great detail about the nursing facts it covers. LevelUpRN's flashcards and videos contain only the key nursing facts that are most important for nursing students to know.  (Exh. 802, C. Parkes Decl. at ¶ 11, 14(a) – (r); Exh. 854-871). Ms. Parkes also includes nursing facts that are not included in ATI's Review Modules.  Finally, Ms. Parkes includes tips, tricks, and mnemonic devises to help students remember key facts.  (Id.).

48.     There are substantial differences in the organization and sequence of the material as well.  LevelUpRN's study cards present concepts in a simplified format that is easier to understand and remember than ATI's format.   (Exh. 802, C. Parkes Decl. at ¶ 14(a) – (r); Exh. 854-871).

49.     The examples used in Ms. Parkes' study cards and videos are common and practical examples based on her nursing experience, and therefore they are more likely to be helpful to students both in learning and in their future nursing practice.  Ms. Parkes uses numerous examples that are different from ATI's examples.  The examples that ATI uses are not unique to ATI.  (C. Parkes Decl. at ¶ 15(a), (b); Exh. 872, 873).

ATI's Practice Exams and Quizzes

50.     ATI makes its practice exams available online to nursing students and other members of the public, according to Mark Williams-Abrams, an ATI executive. (ECF No. 298-2, William-Abrams Depo. at 49:7-25).  The practice exams are not proctored or monitored in any way.  They can be accessed from any location.  (ECF No. 300 at ¶ 8; ECF No. 307-2, Gorham Dep. at 175:24-176:2).

When students take the practice exams, they are not prevented from taking notes to be studied later. (*Id.* at 176:3-7).

51.     ATI's practice exams going back to 2013 are still available on the ATI website.  (ECF No. 307-2, Gorham Depo at 139:16-19).

52.     ATI's practice exams at issue have been registered with the Copyright Office as copyrighted.  (ECF No. 1 at 12-13, ECF No. 1-3).

53.     ATI's practice exams that ATI does not claim to be trade secrets have been accessed ████████████████████████████ of times by students and other members of the public. (ECF No. 307-1; ECF No. 307-4; ECF No. 307-6, Supp. Answer to Interrogatory No. 11; ECF No. 298-6, Schwartz Decl. at ¶ 6).

54.     The 12 practice exams that ATI claims are trade secrets were accessed by students or other members of the public as much as ██████ times.  (ECF No. 307-4; ECF No. 307-6, Supp. Answer to Interrogatory No. 11; ECF No. 307-7, Supp. Interrogatory No. 5; ECF No. 298-6, Schwartz Decl. at ¶ 7).



56.     ATI also publishes quizzes within its nine copyrighted review modules that it sells to the public and are resold on Amazon.  ATI also includes quizzes in it Comprehensive NCLEX Review book that is also sold to the public and can be purchased on Amazon.  (*See* ECF No. 307-1 at 2, 5, 6,

8-11, 14, 19, 20, 24, 26 and 27, and exhibits referenced therein; ECF No. 298-2, Williams-Abrams Depo. at 50:20-51:8; ECF No. 300, Cathy Parkes Decl. at ¶ 12).

<u>ATI's Proctored Exams and CDA's Videos</u>

57.     Cathy Parkes had access to ATI's Proctored Exams only through the proctored administration of those proctored exams in nursing school from 2013 to 2015.  Ms. Parkes did not access ATI's Proctored Exams after she graduated from nursing school.  She did not access or obtain ATI's Proctored Exams through any other means.  (ECF No. 300, Parkes Declaration at ¶ 7).

58.     When Cathy Parkes took the proctored exams in nursing school, she was not allowed to, and did not, take any notes about the test items.  She was not allowed to, and did not, make copies of any ATI Proctored Exams.  (*Id.,* Parkes Decl. at ¶ 6.)  When she created the accused videos in 2019, Ms. Parkes did not remember any of the proctored exam questions from the proctored exams she took while in nursing school, four years earlier.  (*Id.,* Parkes Decl. at ¶ 13).

59.     The video clips accused in Dr. Gorham's Reply Declaration were all created in 2019.  (ECF No. 300, Parkes Decl. at ¶ 13.)  That year, Ms. Parkes posted over 200 videos on YouTube.  (*Id.,* Parkes Decl. at ¶ 13).  Ms. Parkes did not remember any proctored exam items when she created the videos at issue.  She did not remember what nursing facts or topics were tested in ATI's Proctored Exams when she created the videos at issue in 2019.  (*Id.,* Parkes Decl. at ¶ 13).

60.     For 13 of the 26 video clips alleged as proctored exam trade secret disclosures, ATI included quizzes in ATI's published books that disclose the same information as the proctored exam items.  Those quizzes teach the same information as what ATI claims Ms. Parkes disclosed in the video clips. (See ECF No. 307-1 at 2, 5-11, 19-20, 24, 26 and 27, and corresponding exhibits attached thereto).  Those ATI review books are resold on Amazon.  (ECF No. 300, Parkes Decl. at 12).

61.     For 22 of the 26 video clips alleged as proctored exam trade secret disclosures, ATI disclosed the same information in its practice exams or the rationales for the practice exams, including

Clip Nos. 1-5, 7-8, 10-19, 21-22, 24-25 and 27.  (*See* ECF No. 307-1 at 1-5, 7-8, 10-19, 21-22, 24-25 and 27, and corresponding exhibits attached thereto).[3]

62.     In 20 of the 26 clips, Ms. Parkes did not mention anything about the subject matter being on any test or exam.  (ECF No. 307-1 at 1-2, 6-18, 20-23, 25 and 27).

63.     In nine of 26 video clips, in addition to not mentioning that the subject was on a test or exam, Ms. Parkes did not highlight the issue by using words like "key," "important" or "super important." (*See* ECF No. 307-1 at 16-18 and 20-25).

64.     Ms. Parkes used the words "important," "super important," and "key" in many of her videos, not just those video clips alleged as trade secret disclosure.  In just 18 of the over 200 videos Ms. Parkes posted on YouTube in 2019, she used those terms close to 70 times.  (*See* ECF No. 300, Parkes Decl. at ¶ 14; *see, e.g.*, ECF No. 300-1 at 3:15-23; ECF No. 300-2 at 4:3-8; 5:20-23; Exhibit 4, at 4:3-9; ECF No. 300-5 at 4:25-5:04; ECF No. 300-6 at 3:1-8; ECF No. 300-7 at 4:1-9; 6:15-20; 7:16-22; ECF No. 300-8 at 3:1-7; 4:21-5:1; 7:9-15; 7:21-8:3; 8:4-12; 8:19-23; 9:24-10:2; 10:13-17; 11:1-7; ECF No. 300-9 at 5:2-8; 5:9-21; 6:11-16; 7:06-8:2; 9:13-21; 10:17-23; ECF No. 300-10 at 3:16-21; 3:22-4:5; 4:6-11; 6:5-15; 6:20-7:5; 7:6-11; ECF No. 300-11 at 4:5-10; 4:11-18; 6:12-16; 7:7-13; 7:23-8:5; 8:10-20; ECF No. 300-12 at 4:3-10; 4:21-5:3; 5:14-21; 6:23-7:2; 7:3-15; ECF No. 300-13 at 3:1-4; 3:5-9; 3:14-21; 3:22-4:14; 5:9-18; 7:16-25; 8:15-21; ECF No. 300-14 at 4:1-10; 5: 12-20; 6:2-6; 6:14-25; 7:6-11; 7:12-20; ECF No. 300-15 at 5:12-20; 7:12-20; ECF No. 300-16 at 4:23-5:3; 5:25-6:12; ECF No. 300-17 at 4:16-24; 6:11-20; 7:6-12; ECF No. 300-18 at 3:10-14; 3:25-4:7; 4:16-21).

---

[3] Each of the proctored exam questions at issue were disclosed either in a practice exam or a quiz, or both.  As can be seen from ECF No. 307-1, for some of the video clips, ATI disclosed the same information in both its practice exams and its published review books.  None of the practice exams listed on ECF No. 307-1 and exhibits attached thereto include the 12 practice exams that ATI claims are trade secrets in the Amended Pretrial Order and its Supplemental Interrogatory answer.

**Objection to Portions of Schuman Declaration and Exhibits 21-30 and 33**

Pursuant to this Court's Summary Judgment Guideline Nos. 12 and 13, Defendant objects to the portions of the Declaration of Brett M. Schuman in Support of Plaintiff Assessment Technologies Institute, LLC's Motion for Partial Summary Judgment ("Schuman Declaration")(Doc. # 297), filed with ATI's Motion for Summary Judgment in which he purports to authenticate Exhibits 21-30 and 33. The Schuman Declaration purports to authenticate those exhibits by stating that each exhibit is a true and correct copy of documents produced in the lawsuit. The Schuman Declaration violates Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d), and this Court's Summary Judgment Guideline number 15.

With respect to Exhibits 21-30 and 33, Mr. Schuman's declaration does not describe how he has personal knowledge of the facts asserted therein, as required by Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d), and Summary Judgment Guideline number 15, and therefore defendant's objection is proper under Summary Judgment Guideline number 12. Mr. Schuman is outside counsel for ATI and, therefore, apparently does not have personal knowledge with regard to the authenticity of Exhibits 21-30 and 33.

Objection to Exhibit 21:

In Paragraph 6 of his Declaration, Mr. Schuman identifies Exhibit 21, as ATI's Answers to Defendant's Second Interrogatories. ATI's Interrogatory Answer was not signed under oath by anyone who is competent to testify to the facts contained therein, or who has personal knowledge of the facts. Therefore, it is not admissible in support of summary judgment.

Objection to Exhibits 22, 23, 24, 25, 26, and 27:

Similarly, Defendant objects to Exhibits 22, 23, 24, 25, 26, and 27 because they are not authenticated. The Schuman Declaration merely states that these documents were produced by ATI. The Schuman Declaration does not demonstrate that Mr. Schuman has personal knowledge, or is

competent to testify about the authenticity, meaning, or use of any of these exhibits. Therefore, Defendant objects to these exhibits and they should not be considered by the Court.

Objection to Exhibits 28, 29, 30:

In Paragraph 13, Mr. Schuman states that Exhibits 28, 29, and 30 were produced by ATI, and identifies them as three versions of ATI's Terms and Conditions, as of 2013, as of June 2018, and as of December 2018. Mr. Schuman, as outside counsel for ATI, does not claim to, and does not have, personal knowledge of the authenticity of the documents, of the time period during which ATI purportedly used each version of its Terms and Conditions, or whether Exhibits 28, 29, and 30 are actually true and correct copies of the Terms and Conditions used during the time stated. Therefore, Exhibits 28, 29, and 30 would not be admissible at trial and cannot be considered for summary judgment purposes, pursuant to Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d), and this Court's Summary Judgment Guideline number 15.

Objection to Exhibit 33:

In Paragraph 16 of his Declaration, Mr. Schuman again attempts to authenticate a document about which he has no personal knowledge. He states that Exhibit 33 is a true and correct copy of "a log of user activity on ATI's website for the ATI user 'Cathy A Parkes,'" and that it was produced by ATI in this action. Once again, as outside counsel for ATI, Mr. Schuman does not have personal knowledge regarding the authenticity of the document, how ATI tracks or records online activity of its users, how Exhibit 33 was created or maintained, or how to interpret the information in Exhibit 33. Exhibit 33 cannot be properly considered for this summary judgment motion pursuant to the rules cited above.

## ARGUMENT

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016), *citing Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).  In reviewing summary judgment pleadings, the court must view the evidence provided in the light most favorable to the nonmoving party.  *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012).

As set forth below, ATI has not met its burden of proof to establish the lack of factual disputes as to any of its claims.  The evidence in this case, when viewed in the light most favorable to Ms. Parkes, shows that a genuine issue of material fact exists as to each of ATI's claims  ATI's Motion ignores the fact that ATI made multiple admissions of non-infringement and stated that it approved of Ms. Parkes' videos and study cards.  These admissions create an issue of fact as to all of ATI's claims, and give rise to Ms. Parkes' defenses of equitable estoppel and implied consent by waiver and acquiescence.  Issues of fact regarding the fair use defense, as well as whether Ms. Parkes' products copied any protectable elements of ATI's Review Modules, preclude summary judgment on the copyright claim.  Issues of fact as to whether ATI's exams qualify as trade secrets and whether Ms. Parkes disclosed trade secrets preclude summary judgment on that claim.  Similarly, issues of fact exist as to ATI's breach of contract and unfair competition claims.

I.    **ATI's Multiple Admissions of Non-infringement and Lack of Disclosure of Test Material Create Issues of Fact that Preclude Summary Judgment.**

As shown by the Statement of Additional Material Facts ("SAMF") above, ATI has made multiple admissions regarding the issues in this case which preclude summary judgment.  ATI is well aware of these admissions, but it ignored them in its Motion for Summary Judgment in violation of this Court's Summary Judgment Guideline No. 10.  The admissions apply to all ATI's claims.  The



On October 19, 2018, Becky Pontes, ATI's Senior Corporate Paralegal and Intellectual Property Specialist, told William Parkes (Cathy Parkes' husband) that ATI had no copyright concerns with any of the study cards or videos created by Cathy Parkes. In fact, Ms. Pontes told Mr. Parkes that what Cathy Parkes was doing was awesome and she was helping students greatly.   (SAMF No. 22).   Ms. Pontes kept ATI's in-house counsel, Christine Erickson, apprised of her communications with Mr. Parkes.  (*Id.*).

Given the above multiple admissions, a reasonable fact finder could conclude that Cathy Parkes did not violate any intellectual property or disclose any information that she was not authorized to disclose. In fact, the communications between the Legal Department and Mr. Parkes show that ATI approved of Cathy Parkes' content. If it was completely authorized, it cannot support any of ATI's claims. For these reasons alone, ATI's entire summary judgment motion should be denied.

## II.    Issues of Fact Regarding the Defense of Equitable Estoppel Preclude Summary Judgment.

Equitable estoppel is available as a defense to a copyright infringement action and it "may deprive a plaintiff of an otherwise meritorious copyright infringement claim." *Viper Nurburgring Record, LLC v. Robbins Motor Co., LLC,* 2019 WL 4256372, *10 (D. Kan. September 9, 2019) (*quoting Serv. & Training Inc. v. Data Gen. Corp.,* 963 F.2d 680, 689 (4th Cir. 1992); *see also* 4 Nimmer on Copyright § 13.07[A]; *Cooper v. NCS Pearson, Inc.,* 733 F.3d 1013, 1018, n. 3 (in a copyright case, equitable estoppel prevents a party from taking a legal position inconsistent with an earlier statement that places his adversary at a disadvantage). The elements of estoppel as a defense to copyright infringement are:

> (1) the plaintiff must know the facts of the defendant's infringing conduct;
> (2) the plaintiff must intend that its conduct shall be acted on or must so act
> that the defendant has a right to believe that it is so intended; (3) the
> defendant must be ignorant of the true facts; and (4) the defendant must rely
> on the plaintiff's conduct to its injury.

*Viper Nurburgring Record* at *10, *citing Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003). The plaintiff's copyright claim may be estopped if the plaintiff induced or caused the defendant to perform

the act of infringement. *Viper Nurburgring Record* at *10, *citing* 4 Nimmer on Copyright § 13.07[A]. Estoppel may occur by the plaintiff's silence or inaction. *Id.*; *see also Carson*, 344 F.3d at 453.

Estoppel is also a general equitable defense that applies to Kansas breach of contract and other claims. *See, e.g., Bettis v. Hall,* 852 F.Supp.2d 1325, 1339-1340 (D. Kan. 2012) (Robinson, J.) (estoppel is a defense to breach of contract); *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.,* 305 Kan. 761, 769 388 P.3d 84, 91 (Kan. 2017) (equitable estoppel is a defense to breach of contract); *Radiologix, Inc. v. Radiology and Nuclear Medicine, LLC,* 2017 WL 5007143, *39 (D. Kan. November 2, 2017) (the doctrine of equitable estoppel is "well established" under Kansas law). In this case, ATI's trade secret claim arises out of its breach of contract claim. It asserts that Cathy Parkes misappropriated its trade secrets because she allegedly agreed to keep its test information secret. Thus, equitable estoppel should work as a bar to all ATI's claims in this case.

### (1) ATI Was Aware of Cathy Parkes' Conduct

The facts of this case fit perfectly into the elements of equitable estoppel.



(*See, e.g.,* SAMF Nos. 25, 27, 34). All Ms. Parkes' activities were open and available to anyone with Internet access. ATI was well aware of her actions.

**(2) ATI Told Cathy Parkes That She was Not Infringing, Encouraged Her to Continue to Create Content and Intended Cathy Parkes to Rely on Its Statements.**

After reviewing those study cards and videos, ATI's legal department contacted Ms. Parkes to ask her to change the name of her business from passtheati, but the legal department did not ask her to take down any videos or study cards. (SAMF Nos. 18 and 19). Instead, after consulting with in-house counsel, Becky Pontes, ATI's Senior Corporate Paralegal and Intellectual Property Specialist told Ms. Parkes (through her husband, Mr. Parkes) that ATI did not see any copyright issues with Ms. Parkes' videos or study cards, ATI knew that she was teaching the material and not teaching to the test, and ATI encouraged Ms. Parkes to continue her activities. Ms. Pontes had absolutely no complaint with any of Ms. Parkes' content. (SAMF No. 22). Given that Mr. Parkes was diligent in following up with Ms. Pontes and offered to make any other changes ATI requested, it is clear that Ms. Pontes intended that Mr. and Ms. Parkes rely on Ms. Pontes' statements. Ms. Pontes, ATI's Intellectual Property Specialist, had to know that by telling Mr. Parkes that Cathy Parkes was "helping students greatly," she was "wonderful," and she was doing a "fantastic job," Ms. Parkes would be encouraged to keep her content available on the Internet and would continue to create more content. Indeed, ATI itself had concluded that Ms. Parkes was not infringing any copyrights and was not disclosing test information, so it had no reason to tell Ms. Parkes to change her actions.

**(3) Ms. Parkes Was Ignorant of Contrary Facts**

Neither Ms. nor Mr. Parkes are lawyers and they had no prior experience with intellectual property issues before hearing from Ms. Pontes. (SAMF No. 40). They had no reason to believe that Ms. Pontes was not representing the position of ATI since she introduced herself as a representative of the legal department for ATI's parent company. They had no contrary advice from a lawyer or anyone else that they were violating any of ATI's copyrights or improperly disclosing test information. (SAMF No. 40). Indeed, Ms. Parkes could not have known that she was violating any of ATI's rights

because ATI itself did not believe she was doing so, as evidenced by its numerous emails discussed above, that were sent within the company and to customers.

### (4) Ms. Parkes and Her Company Relied on ATI's Statement to Their Injury

Cathy Parkes and CDA relied on Ms. Pontes' statement to Mr. Parkes.  They continued to keep the videos on YouTube believing that they were approved by ATI.  (SAMF No. 40).  Between the conversation with Ms. Pontes in October 2018 and the first time ATI complained about the study cards by filing this lawsuit, Ms. Parkes spent hundreds of hours to create more study cards and videos.  CDA spent over $900,000 to print, market, sell and promote the study cards.[4]  (SAFM No. 41).

Equitable estoppel is an equitable defense intended to create equity among the parties.  In this case, ATI is seeking disgorgement of the very profits it encouraged CDA to pursue by telling Ms. Parkes that the content she created was approved by ATI.  It would be horribly inequitable for ATI to collect profits from content that it encouraged Ms. Parkes to create and encouraged CDA to continue to sell and promote. The equitable estoppel defense is compelling but, at minimum, it creates issues of fact that preclude summary judgment on all ATT's claims.

### III.    Issues of Fact Regarding the Defense of Implied Consent by Waiver and Acquiescence Preclude Summary Judgment.

When a copyright holder manifests consent to use copyrighted material, it grants an implied nonexclusive license to the alleged infringer.  *MidlevelU, Inc. v. ACI Information Group,* 989 F.3d 1205, 1216 (11th Cir. 2021).  A copyright holder can provide an implied license by waiver or acquiescence. To prove waiver, a defendant must show that the plaintiff "relinquished a right with both knowledge of the existence of the right and an intent to relinquish it."  *Otto v. Hearst Communications, Inc.*, 345 F.Supp.3d 412, 434 (S.D.N.Y. 2018), *quoting Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 685 (2d Cir. 1983).  *See also Price v. Fox Entertainment Group, Inc.,* 2007 WL 241387, *4

---

[4] While CDA is not a party to this case, ATI is seeking to recover CDA's profits for its disgorgement claim.

(S.D.N.Y. January 26, 2007) (a waiver may arise by conduct or failure to act that shows an intent not to claim the purported advantage). Consent, express or implied from acquiescence with knowledge of the infringement will prevent relief. *H.M. Chandler Co., Inc. v. Penn Paper Products, Inc.,* 88 F.Supp. 753, 754 (S.D.N.Y 1950). The waiver defense also applies to breach of contract and other claims. *See, e.g., Bettis,* 852 at1340 (waiver is a defense to breach of contract); *Steckline Communications*, 388 P.3d at 91 (applies to Kansas state law claims). Thus, the waiver defense applies to all ATI's claims.

In this case, ATI clearly waived and relinquished any right to sue Cathy Parkes for copyright infringement and for alleged disclosure of test material because it told her that her videos and study cards were perfectly acceptable to ATI and did not disclose any test information. In fact, ATI had concluded internally that Ms. Parkes was not violating any of ATI's rights. Thus, ATI waived any rights it had against Cathy Parkes related to the content at issue, and ATI acquiesced in her continued creation of similar materials.

## IV.     Issues of Fact Regarding the Fair Use Defense Preclude Summary Judgment

Fair use of a copyrighted work, including use for purposes of "teaching . . ., scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. To determine whether a particular use of a work is a fair use, the court must consider various factors, including:

> **(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> **(2)** the nature of the copyrighted work;
> **(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> **(4)** the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* Fair use is a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560 (1985). The factors enumerated in Section 107 above are not meant to be the exclusive factors considered. The doctrine is an equitable rule of reason and no generally applicable definition is possible. Each case must be decided on its own facts. *Id.*

"[T]he "fair use" defense allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances. . . . The fair use defense affords considerable "latitude for scholarship and comment, . . ."

*Eldred v. Ashcroft*, 537 U.S. 186, 219–20 (2003) (citations omitted). *See also Golan v. Gonzales,* 501 F.3d 1179, 1195 (10th Cir. 2007). The fair use defense allows scholars and teachers to quote extensively from a book and even reproduce entire sections for the purpose of commenting on the book. *Id.* The videos and study cards at issue here qualify under the fair use doctrine.

**(a) The Purpose and Character of the Use**

The purpose of Ms. Parkes' works is to teach nursing students to help them pass their nursing exams and become good nurses. (SAMF Nos. 42-43). The videos are provided to the public on YouTube free of charge. (SAMF No. 37). The works contain almost exclusively nursing facts with additional added mnemonics and tips and trips to help the students remember the material. (SAMF Nos. 44-45, 47).

**(b) The Nature of the Copyrighted Work**

The copyrighted work is also for educational purposes. It is intended to help students understand the material. Almost all of the copyrighted works are merely facts that are available from multiple sources. (SAMF No. 44).

**(c) The Amount and Substantiality of the Portion Used**

As discussed more fully below, while Cathy Parkes used ATI's modules as a source, she did not copy ATI's materials in her study cards or associated videos. There are numerous differences between the two works in organization and presentation. (SAMF No.47, 48).

**(d) The Effect of the Use Upon the Potential Market for, or Value of, the Copyrighted Work.**

ATI admittedly has no damages in this case. It cannot identify a single lost sale resulting from Cathy Parkes' works. Indeed, when her works were brought to ATI's attention, for over a year, ATI

had no concerns with the videos and ATI employees recommended that Ms. Parkes materials be used as a study tool for students.  ATI clearly did not believe that the videos or the study cards were affecting the market for ATI's materials.  ATI believed that the videos were fair use and merely like Cliff's Notes.[5]

At minimum, there are issues of fact with respect to the fair use defense that prevent a finding of copyright infringement.

### V.       Summary Judgment on the Copyright Claim Must be Denied because ATI Failed to Meet its Burden of Proof.

ATI claims that Ms. Parkes infringed its copyrights in the 2013 and 2016 Review Modules with her Initial Videos, her Study Cards, and her Revised Videos.  However, ATI did not meet its burden of proof for summary judgment because it has not presented any evidence that Ms. Parkes copied **protectable elements**, as opposed to merely nursing facts.

To prove copyright infringement, ATI must prove (1) ownership of a valid copyright and (2) "copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991).  The second element requires proof "that defendants copied plaintiff's work and that the elements copied were protected."  *TransWestern Pub. Co., LP v. Multimedia Marketing Assoc., Inc.*, 133 F.3d 773, 775 (10th Cir. 1998), citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

ATI's Review Modules are factual compilations.  To be copyrightable, a compilation must be "a [1] work formed by the collection and assembling of preexisting materials or of data that [2] are selected, coordinated, or arranged in such a way that [3] the resulting work as a whole constitutes an

---

[5] At the preliminary injunction hearing, ATI presented hearsay testimony from some employees showing that some customers had written emails to ATI inquiring about the Cathy Parkes videos.  However, no customer testified that the videos affected their decisions about doing business with ATI, and the hearsay testimony is not admissible for the summary judgment motion.  Also, during the preliminary injunction hearing, ATI did not disclose that virtually every time a customer inquired, ATI determined that the videos were not actionable or a concern.  (SAMF Nos. 7, 8, 9, 10, 11, 14, 17, 25, 29, 30, 31, 34, 36).

original work of authorship." 17 U.S.C. § 101; *Feist*, 499 U.S. at 356-357, 111 S.Ct. at 1293. "A factual compilation is copyrightable but the facts themselves are not." *Feist*, 499 U.S. at 345, 111 S.Ct. at 1287. In *Feist*, the Supreme Court explained the difference between facts and protectable elements: "a compilation of facts or preexisting data is only protectable insofar as it features original selection, arrangement or coordination of facts as they appear in the 'work as a whole.'" *TransWestern*, 133 F.3d at 776, citing *Feist*, 499 U.S. at 358, 111 S.Ct. at, 1294; 17 U.S.C. §101. The protection available for a compilation is "thin." *Feist*, 499 U.S. at 349, 111 S.Ct. at 1289.

"No author may copyright facts or ideas." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002)(quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985)). The idea that a copyright does not extend to facts is a "most fundamental axiom of copyright law." *Feist*, 499 U.S. at 344-345. The copyright of a work protects only "those aspects of the work – termed 'expression' – that display the stamp of the author's originality." *Jacobsen.*, 287 F.3d at 942 (quoting *Harper & Row*, 471 U.S. at 547 (1985)). "[A] copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original – for example . . . facts, or materials in the public domain – as long as such use does not unfairly appropriate the author's original contributions." *Id.*, *Harper & Row*, 471 U.S. at 548. *See also, Kindergarteners Count, Inc. v. Demoulin*, 249 F.Supp.2d 1214, 1224 (D. Kan. 2003).

Ms. Parkes has every right to create original works utilizing the same facts that appear in ATI's modules. ATI has not met its burden of proving that Ms. Parkes copied **protectable elements** of its Review Modules, and not just nursing facts. Without carrying this burden, ATI cannot prevail on its copyright claim and the court need not consider the remainder of the arguments on this issue. *See, e.g., Savant Homes,* 809 F.3d at 1137, 1140-1143 (upholding summary judgment in favor of defendant where plaintiff "failed to carry its summary judgment burden" because it had not shown that its

architectural plan "included any protectable content," which precluded a finding of substantial similarity).

ATI's motion does not even acknowledge that its Review Modules are full of non-protectable nursing facts and does not identify what aspects of its Review Modules it claims qualify for copyright protection. ATI's motion did not present any evidence that Ms. Parkes copied anything but non-protectable nursing facts. ATI did not submit testimony from a nurse or any other medical professional to testify about what content in ATI's Modules and Ms. Parkes' study products constitutes nursing facts. *See, e.g., Well-Made Toy Mfg. Corp. v. Goffa Int'l. Corp.*, 210 F.Supp. 2d 147, 167-168 (E.D.N.Y. 2002)(the court relied on the testimony of a professor teaching soft toy design at the Fashion Institute in New York City to determine what components of ragdolls are basic and "commonly used pattern pieces," or "widely used manufacturing technique[s]" in determining what elements of plaintiff's ragdoll were protectable). Furthermore, Ms. Parkes has submitted evidence that ATI's Review Modules contain nursing facts, presented in a standard, typical order and structure used by other nursing textbooks. (SAMF No. 44, 46, 49). For instance, it is standard to present the vaccination schedule for newborns in chronological order. (SAMF No. 46).

ATI cannot establish copyright infringement by arguing that Ms. Parkes and ATI both teach standard nursing facts. Rather, ATI must prove that Ms. Parkes copied the **protectable portions** of its Review Modules. The material covered in the videos and study cards is virtually all nursing facts, which can be found in almost every nursing textbook. (SAMF No. 44, 45,46, 49).

Since ATI did not provide testimony from a nurse or any other qualified witness to testify that the portions of its modules that it claims Ms. Parkes copied are not merely nursing facts, ATI did not meet its burden of proof with respect to the copyright claim, and the Court need not consider any other copyright issues briefed by the parties.

## V.     There Are Fact Disputes that Preclude Summary Judgment on the Copyright Claim.

### A.  ATI Has Not Shown Direct Copying

ATI incorrectly argues that it has proven direct copying, and therefore, it is entitled to summary judgment.  As set forth below, issues of fact exist as to direct copying.  ATI argues, mistakenly, that this is an "open and shut" case of direct copying with respect to the initial videos, study cards, and revised videos.  ATI essentially argues that Ms. Parkes used ATI's Review Modules as one of her sources, that she admitted to "direct copying."  This is not true.  ATI ignores substantial factual evidence that Ms. Parkes did not directly copy ATI's Review Modules.  ATI also fails to show that any elements ATI claims were directly copied are protectable elements, as opposed to non-protectable nursing facts.

Some of ATI's exhibits present a side-by-side comparison of one of LevelUpRN's study cards, an excerpt from a transcript of LevelUpRN's Revised Video, and an excerpt from ATI's Review Module.  ATI has highlighted certain text in the video transcript, presumably to indicate text that ATI claims was copied from its Review Module.  However, there are several instances in which ATI highlighted text in the video transcript that was not included in its Review Module.  (Ex. 802, ¶ 17; Ex. 874).  ATI's highlighting is not accurate and should not be accepted by this Court as evidence of copying.  ATI's inaccurate highlighting brings into question all ATI's assertions.

While Ms. Parkes used ATI's Review Modules to create her initial videos, Ms. Parkes covered only some of the nursing facts in the Review Modules, "jumping around" to cover only material she believed was most important.  (Exh. 819 at 166).   ATI acknowledges that Ms. Parkes also added her own material, including her own tips, tricks, and hints for remembering the information.  (Plaintiff's Exhibit 35, at 2-3).  ATI approved of, and even encouraged the videos.  (SAMF No. 22; Ex. 802, ¶ 6, 7).

Ms. Parkes used many sources to create her study cards, which, like her videos, include only some of the facts in the ATI Review Modules, include facts that are not in ATI's Review Modules, and include her own tips, tricks, and mnemonic devices for remembering information. (SAMF No. 44, 45, 47, 48). Ms. Parkes created the Revised Videos extemporaneously, without a script, in reliance on her Study Cards and her general nursing knowledge. (SAMF No. 45). As with the study cards upon which they are based, an issue of fact exists as to whether the Revised Videos are a direct copy.

Not only does an issue of fact exist as to whether Ms. Parkes directly copied its Review Modules, ATI makes no effort to establish that any such direct copying involved protected elements of its work, as opposed to non-protectable nursing facts.

### B. ATI Has Not Shown Substantial Similarity

ATI's motion asserts that substantial similarity exists between its Review Modules, on the one hand, and Ms. Parkes' study cards and videos, on the other hand. However, ATI failed to set forth the applicable standard for determining whether substantial similarity exists.

The issue of substantial similarity is generally determined by the trier of fact: "Because no easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity, whether works are substantially similar is a classic jury question." *Jacobsen* 287 F.3d at 943 (10th Cir. 2002), citing 4 *Nimmer on Copyright* §13.03[A][2], at 13-46 and n.96 (2001). For this reason alone, summary judgment on ATI's copyright claim should be denied. However, if the Court is inclined to undertake an analysis of substantial similarity, it will find a genuine issue of fact as to whether a reasonable jury could find for the defendant on the issue of substantial similarity, and therefore, summary judgment must be denied. *See, e.g., Craft Smith, LLC v. EC Design, LLC*, 388 F.Supp.3d 1385, 1402 (D. Utah 2019), aff'd 969. F.3d 1092 (10th Cir. 2020).

ATI failed to acknowledge that a heightened standard of "supersubstantial similiarity," or "virtual identity" applies in this case because ATI's Review Modules are a factual compilation. Because

the copyright is "thin" for factual compilations, "It would seem to follow analytically that more similarity is required when less protectible matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with 'thin' works." *TransWestern.*, 133 F.3d at 776, citing *Nimmer on Copyright*, § 13.03[A] at 13-28 (1997), see also *Apple Computers, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir, 1994)("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.").

The supersubstantial similarity test has been applied by courts, both in the Tenth Circuit and in other circuits, examining various types of factual compilations. *See, e.g., TransWestern,* 133 F.3d at 776-777 (applying the supersubstantial similarity test to two telephone directories and finding that "no one would mistake defendants' directory for that of plaintiff"); *Craft Smith,* 388 F.Supp.3d at 1401-1405 (applying the supersubstantial similarity test to daily planners, and finding that defendant did not copy "substantially the entire" compilation at issue, "nor could an 'ordinary reasonable person' conclude that the compilations are 'virtually identical'"); *The Pampered Chef, Ltd., v. Magic Kitchen, Inc.*, 12 F.Supp.2d 785, 792-93 (N.D. Ill. 1998)(examining catalogs for kitchen tools and holding that "Pampered Chef's copyright infringement could only lie if the photographs complained of were almost perfectly identical to those in its own catalog").

Courts have acknowledged that the supersubstantial similarity test does not apply to all fact-based works, however, because "the measure of how substantial a 'substantial similarity' must be may vary according to circumstances." *Jacobsen*, 287 F.3d at 944 (quoting 4 *Nimmer* § 13.03[A], at 13-28 (2000). Tenth Circuit Courts have declined to apply it where the work at issue was not sufficiently fact-based to warrant application of the heightened standard. *See, e.g., Jacobsen*, 287 F.3d at 943-944 (noting that "fact-based works differ 'as to the relative proportion of fact and fancy,' and declining to apply the supersubstantial similarity where the subject work was a memoir, concluding that a memoir

"involves more creative effort and original expression than the telephone directories at issue in *Feist* and *TransWestern*"); *Kindergartners Count,* 249 F.Supp.2d at 1228-1229 (D. Kan. 2003)(declining to apply the supersubstantial similarity standard to a personalized children's book, which the Court found to be a hybrid of fiction and non-fiction, where it "incorporates numerous personalized facts about a child into real-life situations involving kindergartners, told in a storybook scenario – a factual basis set in a fictional scenario."). Both of these cases are distinguishable from the present case, in which ATI's Review Modules contain almost exclusively nursing facts and no aspect of fiction or storytelling.

Even if the Court were to determine that the supersubstantial similarity test is not appropriate in this case, the traditional "ordinary observer" test would apply and there still would be issues of fact preventing summary judgment.

> Whether the accused work is so similar to plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. The essence of this test is whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same. The touchstone of the analysis is the overall similarities rather than the minute differences between the two works.

*Kindergartners Count*, 249 F.Supp.2d at 1229 (quotations omitted). In such a circumstance, the Tenth Circuit employs the "abstraction-filtration-comparison" test, which "excludes from protection expression that is in the public domain, otherwise unoriginal, or subject to the doctrines of merger and scenes a faire." *Id.* at 1224, citing *Mitel v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997). The Tenth Circuit summarized the test as:

> At the abstraction step, we separates the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then we filter out the nonprotectable components of the product from the original expression. Finally, we compares the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Country Kids*, 77 F.3d at 1284-1285. In short, the trier of fact compares only the protectable elements in determining whether substantial similarity exists. ATI provided no analysis to the Court under either potentially applicable test.

Ms. Parkes used many sources to create her study cards, including her nursing school textbooks, her experience and knowledge as a practicing nurse, and numerous websites, many of which are publicly available. (SAMF No. 44). Many of the nursing facts that are included on the Study Cards are also included in other research sources that Ms. Parkes used to create the Study Cards. (SAMF No. 44, 46, 49).

ATI argues that Ms. Parkes' study card decks correspond to the subjects of ATI's Review Modules. However, those nine subjects of nursing facts are not unique to ATI or Ms. Parkes. Those are standard subjects, to which entire textbooks and nursing courses are devoted. (SAMF No.44). Similarly, the general order of ATI's presentation of nursing subjects or of nursing facts does not constitute original expression and is not protectible. In many instances, the facts presented in the study cards and ATI's modules are also presented in other sources in the same order or structure. (SAMF No. 44, 46). For example, both ATI and Ms. Parkes present nursing facts about the vaccination schedule for newborns. Both sources (as well as a third-party nursing textbook and the CDC's website) present this information in chronological order. (SAMF No. 46; Ex. 802, ¶ 12(a); Ex. 848). There are many other examples where ATI ordered its information in the same manner as other materials. (SAMF No. 46).

ATI also claims that Ms. Parkes copied certain explanatory examples which were original to ATI. Ms. Parkes used numerous examples, in both her study cards and videos, that ATI did not use. (SAMF No. 49). Furthermore, the examples used by ATI are not unique or original to ATI. For instance, ATI used standard examples of defense mechanisms, which are found in multiple other sources, including publicly available websites and other nursing textbooks. (*Id.*).

The case of *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999), is instructive.  In that case, the Second Circuit considered copyrighted news articles published by plaintiff and accused news abstracts sold by defendant.  The court applied the ordinary observer test, noting that where the copyrighted work contains both original and unprotected elements, "a higher quantity of copying is required to support a finding of substantial similarity than when the infringed work is wholly original."  *Id.* at 70-71.  In so doing, the court found substantial similarity existed as to protectable elements of 22 news abstracts where defendant used "the same structure and organization, followed the same chronological and substantive grouping of facts, and resulted in the same conclusions or resolutions, and in addition often employed identical phraseology and word choice." *Id.* (internal citations omitted).  The court further observed that the abstracts "track the information in the articles sentence by sentence, in sequence; only occasionally do the abstracts combine two . . . sentences, divide a sentence, or rearrange facts among different sentences."  *Id.* at 71.  However, the Court found that, in two instances, substantial similarity did not exist.  In one non-infringing abstract, the "only similarities between these two works are their use of the same facts," but report the facts in a different arrangement, with a different sentence structure, and different phrasing.  *Id.*  The second non-infringing abstract copied only the first paragraph of a six-paragraph article, which the court found was not substantially similar in a quantitative sense.  *Id.*

LevelUpRN's study cards and videos are like the first abstract in *Nihon*, because while Ms. Parkes used some of the same facts, she presented them in a different format, organization, and structure.  Ms. Parkes' study cards and videos present information in the most efficient manner, so that she did not repeat certain topics throughout the deck of study cards.  (SAMF No. 47, 48).  For instance, ATI's Pharmacology Review Module organizes its coverage of medications by body system, then by disorder, then by drug class.  With this organization, ATI repeats the same drug classes and medications multiple times throughout the review module.  LevelUpRN's flash cards and videos organize medications by body system, then by drug class.  This way, LevelUpRN covers each drug

class only one time in the flashcard deck or video.  (SAMF No. 47, 48, Ex. 802, ¶14(a), (b); Ex.  854, ¶A(1); Ex. 855, ¶ A(1)).  The fact that LevelUpRn's study cards cover some of the same nursing facts as ATI's review modules does not make them substantially similar.  To the contrary, the way in which the facts are presented is not substantially similar.  There are many other examples where Ms. Parkes used a different organization than ATI.  (SAMF No. 47, 48).

There are also differences in the selection of material.  (SAMF No. 47, 48).  ATI's Review Module is a textbook, going into great detail about the nursing facts it covers.  LevelUpRN's flashcards and videos contain only the key nursing facts that are most important for nursing students to know.  (*Id.*).  Ms. Parkes also included material that is not included in ATI's Review Modules.  For instance, LevelUpRN devoted an entire flash card in its Nutrition deck to nursing interventions for anorexia nervosa and bulimia.  ATI's nutrition module does not cover these topics at all.  (Ex. 802, ¶14(l); Ex. 865, ¶(B)(11)).  It its Mental Health flashcards, LevelUpRN included a key characteristic of patients with OCD, which is adherence to a rigid set of rules.  ATI did not include this fact in its Mental Health module.  LevelUpRN also included specific treatment and nursing interventions that are not included in ATI's mental health module.  (Ex. 802, ¶ 14(h); Ex. 861, ¶ (B)(4)).   Finally, Ms. Parkes included her own tips, tricks, and mnemonic devices to help nursing students remember key facts.  (SAMF No. 45, 47; Ex. 802, ¶ 14(a), (b), (e) – (r); Ex. 854, 855, 858 – 871).

There are significant differences in the selection of material, as well as in its organization and sequence, between both ATI's 2013 and 2016 Review Modules, on the one hand, and LevelUpRN's study cards and videos, on the other hand.  The study cards and revised videos present concepts in a simplified and more efficient format, that is easier to understand and remember than ATI's format.  The study cards and videos also include information that is not included in ATI's Review Modules, as well as tips and tricks for remembering key information.  (SAMF No. 45, 47, 48).  There are issues of fact as to whether ATI's Review Modules and Ms. Parkes' study products are substantially similar.  Since ATI has not established that no reasonable juror would find for defendant on the issue of substantial similarity, therefore, summary judgment must be denied.

###### C. Issues of Fact Exist as to Whether Defendant Created an Unlawful Derivative Work

ATI argues that, because "Defendant admitted to copying the ATI Review Modules to create all of her products," the videos and study cards are all unlawful derivative works.  As set forth above, ATI's legal and factual arguments suffer from the same inaccuracies as their argument for copyright infringement.  Ms. Parkes did not copy ATI's Review Modules and has provided substantial evidence as to other sources she used to create her products and ways in which her products are different from ATI's Review Modules.  ATI has not met its burden of establishing that Ms. Parkes' products are a copy of protectable elements of its Review Modules, rather than independently created works. For the same reasons set forth above, issues of fact preclude summary judgment on ATI's claim that Ms. Parkes's study cards and videos are unlawful derivative works.

##### VI.   ATI Has Not Established the Lack of Factual Disputes Regarding Trade Secrets.

Ms. Parkes fully briefed the trade secret issue in her Memorandum in Support of her Motion for Summary Judgment and the Court is referred to that briefing, and the exhibits referenced therein, including Cathy Parkes' declaration, for a more detail discussion of this issue.  (ECF No. 306 at 7-27; ECF No. 300).

###### A. As a Matter of Law, the Practice Exams are Not Trade Secrets

The elements required to establish a claim for trade secret misappropriation are essentially the same under both the federal and Kansas trade secret statutes.  To establish such a claim, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means.  18 U.S.C. § 1836(b)(1); K.S.A. § 60-3321; *API Americas Inc. v. Miller*, 380 F. Supp. 3d 1141, 1147–48 (D. Kan. 2019).  To qualify as a trade secret, ATI needs to prove that:  (1) the information has independent economic value, (2) the

information derives its value from not being generally known and not readily ascertainable by proper means, and (3) its secrecy was maintained by reasonable efforts. *Dodson Int'l. Parts, Inc. v Altendorf*, 347 F. Supp. 2d 997, 1010 (D. Kan. 2004); 18 U.S.C. § 1839(3); K.S.A. § 60-3320(4).

ATI registered copyrights in its practice exams. (SAMF No. 52). ATI sued for copyright infringement of the practice exams. Registration was a prerequisite to filing suit. 17 U.S.C. § 411(a). When it filed its applications for registration, ATI had to deposit two copies of the practice exams with the Copyright Office. 17 U.S.C. § 408(a) and (b)(2). The copies deposited with the Copyright Office are available for use by the Library of Congress (17 U.S.C. § 704(b)), but those that are not selected by the Library of Congress are retained under control of the Copyright office "for the longest period considered practicable and desirable by the Register of Copyrights and the Librarian of Congress." 17 U.S.C. § 704(d). The deposited copies are required by law to be open for public inspection. 17 U.S.C. § 705. Thus, as a matter of law, the practice exams at issue in this case, which are all registered with the Copyright Office, cannot be trade secrets because they are part of the public record with the Copyright Office. *See William A. Graham Co. v. Haughey,* 430 F.Supp.2d 458, 477 (E.D. Pa.. 2006) (when the copyright owner deposited his works with the copyright office, they were no longer confidential because the Copyright Office allows public inspection of all materials deposited in connection with copyright registrations).

In the Amended Pretrial Order, ATI asserted that it deposited the practice exams with the Copyright Office under the secure test rule. 37 C.F.R. § 202.20. (ECF No. 293 at 6). In its supplemental Interrogatory Answers that were served on the last day of discovery, ATI claimed trade secrets in only 12 of its practice exams that it claims were deposited under that rule. (ECF No. 307-7 at 13). However, in support of its Motion for Summary Judgment, ATI did not mention anything about utilizing the secure test rule, and it did not submit any evidence to show that it deposited any practice exams under that rule.

Even if the practice exams were not available to the public in the Copyright Office, they still would not qualify as trade secrets. ATI claims that its proctored exams are stored in secure servers but said nothing about how it stored the practice exams. (ECF No. 304 at 5-6). ATI claims the proctored exams are administered in a secure testing environment (*Id.* at 6), but the practice exams are available online to nursing students and other members of the public. (SAMF Nos. 50-51). The practice exams are not proctored or monitored in any way. When students take the practice exams, they are not prevented from taking notes to be studied later. (SAMF No. 50).

The only "evidence" that ATI relies upon to establish that it has used reasonable means to keep the practice exams secret is its assertion that anyone who accesses the practice exam must agree to ATI's terms and conditions. (ECF No. 304 at 9). However, that alone is not enough to make those practice exams trade secrets because, if they have been seen by ▮▮▮▮▮▮▮▮▮▮ of people, they are, by definition, "generally known" and "readily ascertainable by proper means." Moreover, ATI did not prove the content of those terms and conditions in its motion for summary judgment with properly authenticated documents. (*See* Parkes' Objection to Portions of the Schuman Affidavit and Exhibits Thereto, above).

Nevertheless, merely having ▮▮▮▮▮▮▮▮▮▮[6] of customers click a checkbox online is not enough to prove that the practice exams are trade secrets because there is no evidence that ATI ever enforced those terms and conditions against people who disclose the practice exams. As discussed in Ms. Parkes' Memorandum in Support of Motion for Summary Judgment, we asked ATI for all documentation showing it enforced its intellectual property rights against other and it produced nothing. Thus, ATI has no evidence that it ever enforced the terms and conditions which are the only basis for it to claim trade secrets in the practice exams. (*See* ECF No. 306 at 12).

---

[6] The practice exams that ATI claims to be trade secrets were seen by as many as ▮▮▮ people. (SAMF No. 54).

To establish trade secret rights, it is not enough that ATI had the ██████████ of people who took the practice exams click a box online. "The law is clear that the mere existence of a confidentiality agreement is insufficient to establish that the covered information is a trade secret." *Bison Advisors LLC v. Kessler*, 2016 WL 4361517 at *4 (D. Minn. Aug. 12, 2016) (*citing Coyne's & Co. v. Enesco, LLC*, 2010 WL 3269977 at *16 (D. Minn. Aug. 16, 2010) (rejecting trade secret claim, in part, because plaintiff failed to establish that it took measures beyond a non-disclosure agreement to maintain the confidentiality of the information)); *Electro–Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 901–02 (Minn. 1983) (concluding that plaintiff undertook insufficient effort to maintain secrecy even though it screened handbooks and publication for confidential information and required key employees to sign a confidentiality agreement); *RING Computer Systems, Inc. v. ParaData Computer Networks, Inc.*, 1990 WL 132615 at *2 (Minn. Ct. App. Sept. 18, 1990) (holding that "signing of a confidentiality agreement, without more, is not enough"). "While 'an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret,' such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011). *See also Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 831 (E.D. Wis. 2012) (*citing Maxpower Corp. v. Abraham*, 557 F.Supp.2d 955, 961 (W.D. Wis. 2008)); *Opus Fund Services (USA) LLC v. Theorem Fund Servic*es, LLC, 2018 WL 1156246 at *3 (N.D. Ill. 2018).

### B. ATI Has Not Established that Cathy Parkes Disclosed Any Trade Secrets in Practice Exam Questions.

In response to an Interrogatory in which we asked ATI to identify all the trade secrets it claims were misappropriated by Cathy Parkes, ATI identified 12 practice exams but did not specify which questions on those practice exams it claims were disclosed. (ECF No. 307-7 at 13). In its Motion for Summary Judgment, to prove Cathy Parkes disclosed test questions, ATI relied upon statements from her deposition, but ATI did not file with the Court any of the practice exams it claimed as trade secrets in response to the Interrogatory. ATI should not be allowed to now claim trade secret

47

misappropriation for practice test questions other than those ATI identified in response to the Interrogatory. Since ATI has not shown that the particular practice exams identified as trade secrets in its Interrogatory answers were disclosed by Cathy Parkes, it has not proven that she disclosed any practice exams it claims as trade secrets. ATI should not be allowed to gloss over the fact that its trade secret claim as to practice exams is limited to the 12 practice exams listed in response to the Interrogatory answer.

### C. ATI Has Not Established That Cathy Parkes Disclosed Trade Secrets in the Proctored Exams Items.

To establish trade secret misappropriation, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. 18 U.S.C. § 1836(b)(1); K.S.A. § 60-3321. To establish trade secret misappropriation as to the proctored exams, ATI relies entirely on an exhibit used in the preliminary injunction hearing, ECF No. 34-28. However, neither that exhibit, nor any other admissible evidence was submitted by ATI to show that Cathy Parkes took the proctored exams with the questions listed on that exhibit. Thus, ATI has not shown that Cathy Parkes even knew about the proctored exam questions it claims she improperly disclosed. No witness has submitted a declaration that shows that the declarant had first-hand knowledge of which proctored exams Cathy Parkes took. ATI relied on a spreadsheet that it claims shows the exams that she took but that document was identified only by ATI's counsel, Mr. Schuman, who has no apparent first-hand knowledge about the spreadsheet he identified. (*See* Declaration of Brett Schuman, ECF No. 297 at ¶ 24; Exh. 33 to Schuman Declaration).

As discussed at pages 13-27 of Ms. Parkes' Memorandum in Support of Motion for Partial Summary Judgment, and the exhibits referenced therein, Cathy Parkes did not disclose any trade secrets from the proctored exams. ATI does not even claim that Ms. Parkes disclosed complete questions and answers to any exam. At most, Cathy Parkes discussed standard nursing knowledge

and concepts which cannot be trade secrets. When she made the accused videos in 2019, she did not remember, and could not remember, any of the questions she was asked on the proctored exams she took while she was in nursing school in 2015. (SAMF No. 58-59). When she took those exams, she did so in front of a proctor, and she was prevented from making any notes or making copies of the exams. She had no other access to the Proctored Exams after she graduated from nursing school, and ATI does not allege otherwise. (SAMF Nos. 57-58).

Of the 26 video clips accused by ATI, there are only six instances where Ms. Parkes mentioned that the subject matter could be on a test or exam, but she did not mention anything about an ATI exam. (SAMF No. 62). As explained in her prior declaration (ECF No. 300), she referenced the importance of the material because it was emphasized in nursing school and in ATI's review modules. In nine of the 26 video clips, in addition to not mentioning that the item may be on a test, Ms. Parkes did not mention that the items were "important" or "key" or "super important" so there is no basis for claiming that Ms. Parkes did anything wrong with respect to those videos. (SAMF No. 63). For those, instances, ATI does not even have an argument, much less evidence, that Ms. Parkes was tipping test information.

As discussed in Ms. Parkes Memorandum in Support of Motion for Summary Judgment and in Cathy Parkes' Declaration submitted therewith (ECF Nos. 300, 306), in the video clips, when Ms. Parkes did use words like "important" "super important" or "key," she did so because the information was important for nursing students and nurses to know, not because it was on any exam. In any event, ATI presented no evidence that any nursing student assumed that the use of those terms signaled that the information would be on an ATI proctored exam. In fact, Ms. Parkes used those terms so often in her videos that no one could possibly have assumed that she used the terms to signal an issue was going to be on an ATI exam. As an example, in just 18 of the over 200 videos Ms. Parkes posted on YouTube, she used those terms close to 70 times, mostly to refer to facts that ATI does not claim

were on its proctored exams.  (SAMF No. 64).  It is not logical to conclude that a viewer of those videos would assume that she was disclosing 70 proctored exam questions because she used those terms, and ATI has nothing beyond speculation that any viewer ever perceived that those terms were signaling exam items.  To prove that students perceived that Ms. Parkes was tipping test information, ATI would need testimony from someone who viewed the videos and believed that she was tipping answers in one of the 26 video clips asserted by ATI.  ATI submitted no such evidence.  Without that evidence, it would be complete speculation to conclude that anyone thought Ms. Parkes was giving out test information when she used words like important or super important.  In fact, at his deposition, Dr. Gorham admitted that he could not surmise that students assumed Ms. Parkes was disclosing ATI proctored test information when she used words like "first of all," "super important" or "key." (*See, e.g.,* ECF No. 307-2 at 169:20-170:12; 194:12-20; 248:15-24, 250:20-25).

ATI cannot claim standard nursing knowledge to be trade secrets.  However, by arguing that Ms. Parkes cannot discuss factual material that happened to be tested on proctored exams she took, that is exactly what ATI is attempting to do.  When viewed in context, it is clear that Ms. Parkes was not disclosing any proctored exam content when she was discussing standard nursing knowledge.  In fact, it appears that no matter how Ms. Parkes discussed the nursing facts, if they had been on an exam she took, ATI would claim it was an improper disclosure.  At his deposition, Dr. Gorham could not even suggest how Ms. Parkes could have reworded her videos discussing nursing facts to avoid what he claimed was an improper disclosure.  (ECF No. 307-2 at 180:20-25; 204:22-25; 211:22-212:12; 235:11-17).

### D. ATI Publicly Disclosed the Information it Claims was Disclosed by Cathy Parkes

For each of the proctored exam items asserted as trade secrets, ATI disclosed substantially similar, if not verbatim, test items in publicly available practice exams and quizzes. For 13 of the 26 video clips alleged as proctored exam trade secret disclosures, ATI included quizzes in ATI's published books that disclose the same information as the proctored exam items. Those quizzes teach the same information as what ATI claims Ms. Parkes disclosed in the video clips. Those ATI review books are resold on Amazon. (SAMF No. 60). For 22 of the 26 video clips alleged as proctored exam trade secret disclosures, ATI disclosed the same information in its practice exams or the rationales for the practice exams. (SAMF No. 61).[7] Each proctored exam item was disclosed either in the practice exams or the quizzes, or both. As can be seen from ECF No. 307-1, for some of the video clips, ATI disclosed the same information in both its practice exams and its published review books.

According to ATI's Chief Measurement and Testing Officer, the practice exams are intended to alert students to the type of information that will be on the ATI proctored exams, and to prepare them for the proctored exams. (SAMF No. 55). ATI expects students who take the practice exams to understand that the topics or nursing facts tested on the practice exams are **important** topics for them to know for the proctored exams. (*Id.*).

Since ATI publicly disclosed the same information that it claims Cathy Parkes disclosed, or ATI disclosed test items very similar to its claimed trade secrets, the information that Cathy Parkes disclosed cannot be claimed as trade secrets.[8]

---

[7] None of the practice exams listed on ECF No. 307-1 and exhibits attached thereto include the 12 practice exams that ATI claimed as trade secrets in the Amended Pretrial Order and its Supplemental Interrogatory answer.

[8] We expect ATI to argue that it did not disclose the proctored exams in the practice exams or quizzes because the practice exams and quizzes do not have the exact same question/answer sets and distractors. However, Cathy Parkes did not disclose any question/answer sets or distractors. ATI's practice exams and quizzes disclose much more than anything Cathy Parkes disclosed.

### E. ATI Has Not Established that Cathy Parkes Knew or Should Have Known the Trade Secret Was Acquired by Improper Means.

To prove trade secret misappropriation, ATI needs to prove that Cathy Parkes knew or should have known the trade secret was acquired by improper means. 18 U.S.C. § 1836(b)(1); K.S.A. § 60-3321. ATI does not even claim that Cathy Parkes acquired the trade secret by improper means. Instead, ATI claims that Cathy Parkes knew or should have known that she was improperly disclosing test information because she agreed to terms and conditions on the website. (ATI's Memorandum at 33-34). However, as discussed above, ATI has not proven the content of those terms and conditions because it did not properly authenticate any documents regarding the terms and conditions or proctored exam terms.

In addition, it is illogical for ATI to claim that Ms. Parkes knew she was violating ATI's terms and conditions when ATI itself did not believe that she was doing so, and ATI told Cathy Parkes that it completely approved of her videos and it encouraged her to make more. In her telephone call with Mr. Parkes, ATI's Senior Corporate Paralegal, Becky Pontes, told Mr. Parkes that Cathy Parkes was teaching the material and not teaching to the test and what she was doing was helping students greatly. Under these circumstances, it is quite disingenuous for ATI to claim that Cathy Parkes knew, or should have known, she was doing something wrong.

ATI did not establish that Ms. Parkes disclosed any trade secrets but, at minimum, there are issues of fact that preclude summary judgment in ATI's favor on this issue.

### VII. Factual Disputes Preclude Summary Judgment on Breach of Contract

The elements for a breach of contract claim are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach. *Ice Corp. v. Hamilton Sundstrand Inc.,* 444 F. Supp. 2d 1165, 1169 (D. Kan. 2006). Under Kansas law, causally related damages is an essential element of a breach of contract claim. *Gateway Financial Group,*

*Inc. v. Mission Bank,* 1997 WL 567791, * 3 (D. Kan. August 15, 1997); *see also Pipeline Productions, Inc. v. Madison Companies, LLC,* 446 F.Supp.3d 733, 738 (D. Kan. 2020).

ATI claims Ms. Parkes breached a contract with ATI because she violated ATI's terms and conditions. However, as discussed above, ATI has not established the terms of the alleged contract because it did not properly authenticate any of the documents it purports to contain the terms and conditions.

As discussed above, there are issues of fact with regard to whether Ms. Parkes misused any of ATI's products. There are also issues of fact as to whether Ms. Parkes disclosed any of ATI's alleged trade secrets. The terms and conditions could not prohibit Ms. Parkes from teaching nursing facts.

ATI claims that it is not required to prove monetary damages because it is merely seeking an injunction for the breach of contract claim. For this argument, ATI relied upon *API Americas Inc. v. Miller,* 380 F.Supp. 3d 1141 (D. Kan. 2019). The *Miller* case held that, if damages at law cannot adequately compensate the injury, then the remedy at law is inadequate and injunctive relief may be appropriate. *Id.* at 1152. **Thus**, the court held, to prove breach of contract, in lieu of proving damages, the plaintiff could establish that it suffered harm that cannot be adequately measured like loss of customers, loss of goodwill and loss of brand recognition. *Id.* at 1152-1153. To support its summary judgment motion, ATI has not shown that it suffered harm that is too hard to measure in damages. It has not submitted any evidence of loss of customers, loss of good will or loss of brand recognition. Indeed, this Court denied ATI's request for preliminary injunction on the breach of contract claim because damages for breach of contract can generally be calculated in money damages. (ECF No. 59 at 34). The fact that ATI has not provided evidence of damages does not mean the damages cannot be calculated.

Since ATI has not established damages to support it breach of contract claim and it has not presented any evidence of loss of customers, loss of good will or other loss for which damages would

not be an adequate remedy, ATI has not shown that it is entitled to any remedy for the alleged breach of contract and, therefore, it is not entitled to summary judgment on this claim.

### VIII. Factual Disputes Preclude Summary Judgment on the Unfair Competition Claim

ATI's bases for its Kansas unfair competition claim are identical to its bases for its copyright and trade secret claims. As discussed above, there are issues of fact as to the copyright and trade secret claims so there are issues of fact as to the unfair competition claim. In addition, the unfair competition claim is preempted by the Copyright Statute and the Kansas trade secret statute.

Kansas' trade secret statute is the exclusive remedy for misappropriation of trade secrets under Kansas law. K.S.A. 60-3326; *Wolfe Elec., Inc. v. Duckworth,* 293 Kan. 375, 399-402, 266 P.3d 516, 531-32 (Kan. 2011). To argue otherwise, ATI relies on a Kansas Supreme Court case decided in 1980, a year before Kansas' trade secret statute was passed by the legislature. *Koch Eng'g Co. v. Faulconer,* 227 Kan. 813 (1980). The statute itself and the *Wolfe* case make it clear that the statute is the exclusive remedy for misappropriation of trade secrets. Thus, ATI cannot recover for trade secret misappropriation under its unfair competition claim.

To the extent ATI's unfair competition claim falls within the ambit of copyright law, it is preempted by the Copyright statute. 17 U.S.C. § 301(a).

> Under Section 301(a), a state common law claim is preempted if: (1) the work is within the scope of the "subject matter of copyright" as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.

*Ehat v. Tanner,* 780 F.2d 876, 878 (10th Cir. 1985).

ATI argues that its unfair competition claim is not preempted by the copyright statute because, according to ATI, Cathy Parkes was in a confidential relationship with ATI by virtue of her agreeing to its terms and conditions. (ECF No. 304 at 36). However, as discussed above, there are issues of fact that regarding the content of the terms and conditions. In addition, ATI's argument is just another

way of saying that Cathy Parkes misappropriated its trade secrets, a claim that is preempted. Cathy Parkes could not have had a duty under a confidential relationship not to disclose information that is already available to the public, like ATI's modules that are sold on Amazon, or ATI's practice exams that are available for public inspection at the Copyright Office. As a matter of law, that information is not "confidential" and ATI's exclusive method to protect that information is through the copyright law. As discussed above, there are issues of fact as to whether the proctored exams at issue are trade secrets or are confidential because ATI disclosed the same information in it publicly available practice exams and review modules. Regardless, ATI did not even assert in its motion that Cathy Parkes infringed ATI's copyrights in its proctored exams or practice exams and, to the extent that it claims she misappropriated trade secrets in any of the exams, that claim is preempted by the Kansas trade secret statute. Thus, the unfair competition claim is preempted.

## CONCLUSION

For the foregoing reasons, Defendant prays this Court to deny Plaintiff's Motion for Summary Judgment and grant all other just and appropriate relief.

BROWN & JAMES, P.C.

/s/ Steven H. Schwartz
Steven H. Schwartz,   KS Fed #78879
sschwartz@bjpc.com
800 Market Street, 11th floor
St. Louis, Missouri 63101
314.421.3400
Fax: 314.421.3128

**Attorneys for Defendants**


## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2021, a copy of the foregoing was served on all counsel through the Court electronic filing system.

/s/ Steven H. Schwartz

:mlc