IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASSESSMENT TECHNOLOGIES INSTITUTE, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 19-2514-JAR-KGG ) |
| CATHY PARKES, | ) ) |
| Defendant. | ) ) |

**DEFENDANT CATHY PARKES' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Defendant, Cathy Parkes ("Ms. Parkes"), and hereby submits her Sur-Reply in Opposition to Plaintiff Assessment Technologies Institute, LLC's ("ATI's") Motion for Partial Summary Judgment, pursuant to the Court's October 19, 2021 Order (ECF No. 349).

As set forth below, ATI's Motion for Summary Judgment on its trade secret misappropriation claims related to the practice exams should be denied for two separate and independent reasons. Either basis, on its own, precludes summary judgment. First, ATI failed to establish that Ms. Parkes disclosed any of the questions or answers on the 12 practice exams that it claims are trade secrets.[1]  Second, there is an issue of fact as to whether the 12 practice exams were deposited with the Copyright Office under the Secure Test Rule. If they were not deposited in that manner, they became a public record upon registration. (*See* ECF No. 335 at 45).

---

[1] ATI claims trade secret protection only in the 12 practice exams it claims were deposited with the Copyright Office under the secure test rule. (ECF No. 307-7 at 13).

1

### A. There is no evidence that Ms. Parkes disclosed any questions or answers from the 12 practice exams.

ATI has submitted no evidence to show that Ms. Parkes disclosed any of the questions or answers from the 12 practice exams at issue. For its Motion for Summary Judgment, ATI did not submit any practice exams to the Court so there was no way the Court could determine if Ms. Parkes had improperly disclosed anything in those exams. Since ATI did not even submit any of the practice exams with its motion for summary judgment, there was no reason for Ms. Parkes to address in her Memorandum in Opposition the question of whether any of the questions or answers from the practice exams were disclosed in any of Ms. Parkes' videos.

With its Reply Memorandum, ATI attached to Mr. Robins' declaration the 12 practice exams that it claims were filed under the Secure Test Rule. However, ATI still failed to identify the specific portions of the practice exams, or the particular questions or answers that it claims Ms. Parkes disclosed.

In response to an Interrogatory asking ATI to identify each trade secret disclosed by Ms. Parkes and to specify the specific video in which the trade secret was disclosed, ATI identified the 12 practice exams, claiming they were "filed confidentially with the Copyright Office." (ECF No. 307-7 at p. 13). ATI did not identify which questions, answers, or other specific information in the practice exams that it claimed to have been disclosed by Ms. Parkes.

In its Reply brief, ATI referenced a few portions of Ms. Parkes' deposition in which ATI claimed Ms. Parkes admitted to disclosing trade secrets. (ECF No. 346 at 53).[2]

---

[2] In its Reply, ATI relies on exactly the same deposition testimony that it cited in its initial Memorandum. (ECF No. 296 at 23, 39).

2

However, none of those deposition sections show that Ms. Parkes revealed in her videos any of the questions or answers in any of the 12 practice exams at issue, or that she admitted to doing so. Each deposition citation relied on by ATI is addressed below.

- ECF No. 301-18 at 150:1-23: Ms. Parkes admitted to stating in a video that ATI asks questions that are not specific to the community on the Community Health exam. The cited testimony makes no mention of specific questions or answers.

- ECF No. 301-18 at 145:23- 147:19: Ms. Parkes explained that when she says "you're likely to see this," she is referring to "certain key facts or concepts" that she thought there would be "a good chance that they may be tested on the proctored exam." The cited testimony makes no mention of any specific questions or answers, or even a particular subject.

- ECF No. 301-18 at 157:17 – 159:15: Ms. Parkes testified that she took practice exams to get "tuned up" on "key concepts." She also stated that she talked generally about ATI exams in some videos and did not specify whether she was referring to proctored or practice exams. This testimony does not discuss particular test questions or answers, or even a particular subject.

- ECF No. 301-18 at 166:19 – 167:20: Ms. Parkes testified that, in one of her medical surgical videos, she included an example of a "black tag situation" and stated to "know those classifications because I have seen questions on ATI about those." No specific question or answer was discussed. None of the 12 practice exams attached to Mr. Robins' declaration are medical surgical exams. (ECF No. 342-2 and exhibits thereto).

- ECF No. 301-18 at 176:23 – 179:11: Ms. Parkes testified that "when ATI does their leadership testing, they also like to ask questions that are not covered in this book." This testimony does not identify any specific question or answer from any practice exam.

- ECF No. 301-18 at 182:2 – 183:7: Ms. Parkes testified that she emphasized the importance of iron absorption because it is a key fact. She does not give any question or answer.

- ECF No. 301-18 at 184:2 – 186:21: Ms. Parkes was shown a clip of one of her videos, in which she held up an ATI Review Module, and stated that she would go over "key points from this book." The testimony does not mention practice exams or any questions or answers.

- ECF No. 301-18 at 190:22 – 196:2: Ms. Parkes testified that, in a medical surgical video, she said ATI likes to ask questions about the nursing interventions for seizures. She also testified that ATI likes to ask about the differences between a stroke on the left side versus the right side. Ms. Parkes testified that ATI asks

questions about hemianopsia. Ms. Parkes did not mention any specific questions or answers. None of the practice exams attached to Mr. Robins' declaration are medical surgical exams. (ECF No. 342-2 and exhibits thereto).

In its Reply, ATI did not even attempt to point out to the Court which specific practice test question or answer it claims ATI disclosed. ATI left it to this Court to try to decipher ATI's argument about the practice exams. However, none of the testimony that ATI relied upon shows that Ms. Parkes disclosed trade secrets contained in the 12 practice exams that ATI claims to be trade secrets. None of the testimony discusses specific questions, answers, or other specific information on those practice exams. ATI did not point out specific instances of Ms. Parkes' disclosure because there are no such instances.

Not only has ATI failed to meet its burden of proof of showing how Ms. Parkes disclosed alleged trade secrets from the Practice Exams, it has not even articulated which trade secrets were allegedly disclosed. Therefore, there is no basis for ATI to claim that any practice exam information was improperly disclosed, and ATI's motion for summary judgment must be denied.

**B. There is an issue of fact as to whether Robins deposited the Practice Exams with the Copyright Office using the Secure Test Rule.**

ATI claims that the 12 practice exams identified in its Answer to Interrogatory No. 5, and also attached to Mr. Robins' Declaration, were deposited with the Copyright Office utilizing the Secure Test Rule. The only evidence that the practice exams were submitted under the Secure Test Rule is Mr. Robins' declaration, in which he attests that he deposited each of the 12 practice exams under the Secure Test Rule. We deposed Mr. Robins on October 27, 2021, and his deposition testimony makes clear that his declaration is not based on personal knowledge.

4

Mr. Robins has no personal knowledge about the copyright applications that were submitted for the 12 practice exams attached to his declaration. Rather, his declaration and testimony are based on his vague recollection and assumption of what his practice was at the time the filings were made six or seven years ago, in 2014 and 2015. When asked to describe his general practice for filing under the Secure Test Rule at that time, Mr. Robins testified, "I don't have sufficient recollection to be able to testify under oath as to what I did." (Robins Draft Transcript, attached hereto as Exhibit A, 21:4 - 19).

To seek copyright protection under the Secure Test Rule, the Copyright Office procedures required submission of an application and a redacted copy of the secure test to be copyrighted. Before issuing the copyright, the Copyright Office compared the redacted copy and the complete unredacted copy of the test. Mr. Robins did not recall whether there was a procedure to designate to the Copyright Office that the filing was being made under the Secure Test Rule. (Exhibit A, 23:24 – 24:15). He does not know whether the Certificate of Registration issued by the Copyright Office indicates that the registration was made under the Secure Test Rule. (Exhibit A, 24:16-23).

Mr. Robins does not have any documents showing that ATI's Practice Exams were submitted to the Copyright Office under the Secure Test Rule. (Exhibit A, 41:4-15). All documents regarding the manner in which he deposited the practice exams were destroyed by his office. (Exhibit A, 27:1 – 28:2). Mr. Robins has no recollection of the particular registrations for the 12 practice exams. (Exhibit A, 29:7-16). He testified that, based on his practice, he did not complete the application documents or actually submit the filing himself. Rather, an associate or paralegal prepared the application, and either an associate, paralegal, or his firm's IT Department prepared the redacted test for submission. It was his practice to review the application materials before filing, and then

5

have the associate or paralegal submit the filing to the copyright office. (Exhibit A, 22:23 – 23:16, 23:13-26:5). He did not recall the manner in which he reviewed application materials. (Exhibit A, 23:13-16). Mr. Robins did not know whether his office generally kept copies of documents relating to such filings, or any documents which would show whether the filings were made under the Secure Test Rule. If they did, the documents were destroyed. (Exhibit A, 26:17 – 28:2).

Mr. Robins' statements in his declaration that the 12 practice exams were submitted to the Copyright Office under the secure test rule is based on what he *assumes* was his general practice in 2014 and 2015. Mr. Robins' testimony that the 12 practice exams were submitted in that manner is not based on personal knowledge, but rather, is speculative and based merely on Mr. Robins' assumed general practice at that time. As such, his declaration violates Fed.R.Civ.P. 56(c)(4), Local Rule 56.1(d), and this Court's Summary Judgment Guideline number 15, because it is not based on personal knowledge. Therefore, it should not be considered by this Court.

If ATI did submit the practice exams to the Copyright Office under the Secure Test Rule, it violated the copyright rules by doing so because ATI's practice exams do not meet the requirements to be registered as a secure test. The definition provides:

> A secure test is a **nonmarketed** test **administered under supervision** at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration. For these purposes a test is not marketed if copies are not sold but it is distributed and used in such a manner that ownership and control of copies remain with the test sponsor or publisher.

37 C.F.R. § 202.20(b)(4)(Effective November 8, 2012 to March 7, 2017)(Emphasis added). It is undisputed that ATI did not treat the practice exams as secure tests. They were available online, for students to take, re-take, and to access at any time. They were

6

not "administered under supervision," or "at specific centers on specific dates," and "all copies of which" were not "accounted for and either destroyed or returned to restricted locked storage following each administration." Rather, the practice exams are available to students and members of the public to view online, at any time. (ECF No. 298-2 at 49:7-25). The practice exams are not proctored or monitored in any way. They can be accessed from any location. (ECF No. 300 at ¶ 8; ECF No. 307-2 at 175:24-176:2). When students take the practice exams, they are not prevented from taking notes to be studied later. (*Id.* at 176:3-7).

Despite the fact that Mr. Robins has represented ATI for at least a decade, Mr. Robins testified that he had no personal knowledge as to whether the practice exams met the requirements of the Secure Test Rule. (Exhibit A, 6:7-10, 35:8 – 36:1). He was not aware that the practice exams are available on the internet, or that they are not administered in a proctored environment. (Exhibit A, 37:21 – 38:15). Mr. Robins explained that all applications to the Copyright Office are certified as true and accurate by the party making the submission, and he admitted, "I would not file a test under the Secure Test Copyright Registration process if I knew that the test was not a Secure Test." (Exhibit A, 12:24-13:8, 43:3 – 18).

If ATI did not submit the practice exams under the Secure Test Rule, and instead submitted them under the usual method for tests, ATI made the practice exams a public record. (*See* ECF No. 335 at 45). Mr. Robins testified that the "principle benefit" of registering a test under the secure test rule is that "the Copyright Office would not retain a complete unredacted copy of the tests that anyone could order from the Copyright Office and copy." (Exhibit A, 42:5-14). In the case of non-secure tests, the Copyright Office requires that a complete unredacted copy be deposited, which the Copyright Office retains

7

in its records, which are available to the public.  (*See* ECF No. 335 at 45; Exhibit A 42:5-14).  If the practice exams are public records, by definition, they cannot also be trade secrets.  Even if ATI did submit the practice exams under the secure test rule they still would not qualify as trade secrets for the reasons explained in our Memorandum in Opposition to the Motion for Summary Judgment.

ATI has submitted no admissible evidence to establish that the practice exams were submitted under the Secure Test Rule.  Mr. Robins' declaration, based only on his assumed general practice and not on any actual memory or document, does not cure this deficit.

An issue of fact exists as to whether the practice exams were properly submitted under the Secure Test Rule.   If they were not submitted under the Secure Test Rule, they are in the public domain and cannot be a trade secret.  This issue of fact precludes summary judgment on ATI's trade secret misappropriation claim regarding the practice tests.

## Conclusion

ATI's Motion for Summary Judgment on its claim that Ms. Parks misappropriated trade secrets contained in its practice exams must be denied for two separate, and independent, reasons.

ATI did not identify what specific practice exam questions or answers it claims Ms. Parkes disclosed, or when and how she disclosed them.  None of the testimony that ATI relies upon to establish that Ms. Parkes disclosed questions or answers from practice exams supports ATI's allegations, and ATI has not pointed out any instance in which Ms. Parkes identified a question, answer, or other specific material from the 12 practice exams

it claims to be trade secrets. ATI has not met its burden on this issue, much less presented any evidence in support of its claims.

Furthermore, an issue of fact exists as to whether ATI's practice exams are trade secrets, as ATI has not established that its copyright registrations of the 12 practice exams were issued under the Secure Test Rule. If those registrations were not made under the Secure Test Rule, the practice exams are public records and therefore cannot be trade secrets. If ATI's Practice Exams were deposited with the Copyright Office under the Secure Test Rule, the filings were made in violation of the Copyright rules and the requirements of a secure test.

For the foregoing reasons, Ms. Parkes respectfully requests that the Court deny ATI's Motion for Partial Summary Judgment.

BROWN & JAMES, P.C.

/s/ Steven H. Schwartz
Steven H. Schwartz,   KS Fed #78879
sschwartz@bjpc.com
Elizabeth S. Silker,   KS Fed #78988
esilker@bjpc.com
800 Market Street, 11th floor
St. Louis, Missouri 63101
314.421.3400

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of October, 2021, a copy of the foregoing was served upon all counsel of record through the Court's electronic filing system.

/s/ Steven H. Schwartz

:mlc
26806850.2

9